UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AT DALLAS

---

3:02-CV-1145-B

---

DAVID LYNN CARPENTER,

Applicant,

VS.

NATHANIEL QUARTERMAN, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION

Respondent.

---

SUPPLEMENTAL APPLICATION FOR RELIEF
PURSUANT TO 28 U.S.C. 2254

---

BRUCE ANTON
State Bar No. 01274700

Sorrels, Udashen, & Anton
2301 Cedar Springs Rd.
Suite 400
Dallas, Texas 75201
(214) 468-8100
(214) 468-8104 (fax)

ATTORNEY FOR APPLICANT

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................... ii

Claim IV (A)

      THE DISTRICT COURT DENIED CARPENTER A HEARING
      ON HIS CLAIM OF NEWLY DISCOVERED EVIDENCE
      BASED UPON AN UNREASONABLE APPLICATION OF
      EXISTING LEGAL PRECEDENT ...................................1

Claim IV(B)

      THE DISTRICT COURT ERRED IN DENYING CARPENTER'S
      CLAIM FOR RELIEF BASED UPON NEWLY DISCOVERED
      EVIDENCE DUE TO AN UNREASONABLE
      DETERMINATION OF OBJECTIVE FACTS ..........................1

    Overview ........................................................ 1

       A.    Introduction ............................................. 1
       B.    Post Trial Proceedings, Procedural History .................... 3
       C.    Newly Discovered Evidence ................................. 5
       D.    The significance of recantations ............................. 6
       E.    Three-Step Determination .................................. 7
       F.    Application of law to Facts ................................. 8
       G.    Need for a hearing ....................................... 10
       H.    Objectively unreasonable factual determinations ............... 11
       I.    A careful review of the findings show their inadequacy,
            Improper conduct findings ................................. 12
            1.
            2.    Finding that one affiant is inherently more credible
                than another ..................................... 14
            3.    Finding that Smith had an unimpeachable alibi ............ 14
            4.    Finding that Smith's knowledge of the crime, as relayed to
                the affiants, was based solely on media accounts and not
                personal knowledge .............................. 15
            5.    Finding that a knife owned by Carpenter was positively
                identified as the murder weapon ...................... 15
            6.    Finding that Smith lacked the physical strength to break
                into Henin's home ................................. 16

i

|   |   | 7.  | Finding that Smith is credible . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16 |
|   |   | 8.  | Finding that Rainey's identification was accurate . . . . . . . . . . . 17 |
|   |   | 9.  | Finding that Smith's recantation is insignificant in light of other evidence of guilt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18 |
|   |   | 10. | Findings that Carpenter's affidavits are incredible because they are not consistent with every other piece of evidence submitted.  (The State court nitpicks the affidavits) . . . . . . . . . 19 |
|   |   | 11. | The findings that an amended affidavit is inherently incredible . 21 |
|   |   | 12. | The findings that the affiants have conspired with Carpenter to present false testimony . . . . . . . . . . . . . . . . . . . . . 21 |
|   |   | 13. | The findings that post-conviction confessions are not "newly discovered" evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . 21 |
|   | J. | | The ultimate irony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22 |
|   | K. | | Harm . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22 |

Prayer for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## TABLE OF AUTHORITIES

**<u>FEDERAL CASES</u>**                                                                                               <u>Page</u>

*Brown v. Johnson,* 224 F.3d 461, 466-67 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Donnelly v. United States,* 228 U.S. 243, 278 (1912) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gacy v. Welborn,* 994 F2d 305, 316 (7th Cir. 1993) cert. denied, 510 U.S. 889 (1993) . . . . . . . . 6

*Guy v. Cockrell,* 343 F.3d 348, 354 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Holt v. United States,* 342 F.2d 163, 165 (5th Cir. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Johnson v. United States,* 552 A.2d 513, 516 (D.C. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Oliver v. Dretke,* _____ F.3d _____, 2005 WL 2403751 at 5 (E. D. Tx. 2005) . . . . . . . . . . . . . 11

*Revels v. Diguglielmo,* 2005 WL 1677951 at 7 (E. D. Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Taylor v. United States,* 287 F.3d 658, 660 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Alanis,* 88 Fed. Appx. 15, 19-20 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Carmichael,* 269 F. Supp.2d 588, 598 (D.N.J. 2003) . . . . . . . . . . . . . . . . . . . . 6

*United States v. Castro,* 2003 WL 1922967 (5th Cir. 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Hall,* 165 F.3d 1095, 1113 (7th Cir. 1999) cert. denied, 527 U.S. 1029 (1999
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Phillips,* 2006 WL 1117882 at 16 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Saada,* 212 F.3d 210, 216 (3rd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Stevens,* 935 F.2d 1380, 1402 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Wallach,* 935 F.2d 445, 456 (2nd Cir. 1991 . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wiggins v. Smith,* 539 U.S. 510, (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**STATE CASES**                                                           **PAGE**

*Boyd v. Puckett*, 905 F.2d 895, 896-7 (5th Cir. 1990), *cert. denied* 498 U.S. 988 (1990 . . . . . . . 5

*Chambers v. Mississippi*, 410 U.S. 284 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-9, 19, 20

*Commonwealth v. O'Brien*, 736 N.E.2d 841 (Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cunningham v. Peters*, 941 F.2d 535, 540 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 19

*Davis v. State* 872 S.W.2d 743, 749 (Tex. Crim. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ex Parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Graham v. Texas Board of Pardons & Paroles,* 913 S.W.2d 745, 751 (Tex. Civ. App. Austin 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*People v. Hall*, 718 P.2d 99, 103 (Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Spence v. State*, 795 S.W.2d 743, 754-5 (Tex. Crim. App. 1990) . . . . . . . . . . . . . . . . . . . . . . . 7

*State v. Sturdivant*, 155 A.2d 771 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Williams v. State,* 375 S.W.2d 449, 451 (Tex. Crim. App. 1964) . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Woods v. State*, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004 . . . . . . . . . . . . . . . . . . . . 8, 19, 20

**FEDERAL REGULATIONS**

28 U.S.C.§ 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**STATE CODES**

Tex. Code Crim. Proc. Ann. Art. 11.071 §5a(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**PUBLICATIONS**

Journal of Memory and Cognition, Vol. 10, page. 318-323, 1982 . . . . . . . . . . . . . . . . . . . . . . 20

## CLAIM IV(A).

**THE DISTRICT COURT DENIED CARPENTER A HEARING ON HIS CLAIM OF NEWLY DISCOVERED EVIDENCE BASED UPON AN UNREASONABLE APPLICATION OF EXISTING LEGAL PRECEDENT.**

## CLAIM IV(B).

**THE DISTRICT COURT ERRED IN DENYING CARPENTER'S CLAIM FOR RELIEF BASED UPON NEWLY DISCOVERED EVIDENCE DUE TO AN UNREASONABLE DETERMINATION OF OBJECTIVE FACTS.**

## OVERVIEW

These claims, having been exhausted in the state court system, replace Claim IV of the original application for relief.

### A.     Introduction

There can be no question that, on August 28, 1991, Nelda Henin was gruesomely murdered. Someone broke into her house and slit her throat with a sharp knife. Ms. Henin managed to stagger into the street and attract attention. Her blood was everywhere. Fingerprints, shoe prints, and biological material, including hair and blood samples were found. Significantly, the State was never ever able to tie David Carpenter ("Carpenter") to the murder scene by any physical evidence–no weapon, clothing, DNA, nor fingerprint. All comparison tests exonerated Carpenter.

While there is significant question as to whether Carpenter played any role in the murder, there is no question that Evrin Smith ("Smith") bore responsibility. She admitted her dislike and jealousy of Henin. (R26.16-17) She stalked both Henin and her boyfriend, Gary Hall. Smith was obsessed with breaking up that relationship. (R24.122) Indeed, Smith had requested assistance in finding someone to murder Henin for her. (R24.127, 129)

The crime was unresolved for more than six years.  When the facts of Smith's relationship to Henin came to light, Smith repeatedly denied complicity until it became apparent that she could not escape blame. (R.26:34-36)[1]  Realizing the investigation already centered on Carpenter as a suspect, Smith admitted soliciting capital murder and named Carpenter as her accomplice.  In return for her testimony, she received only a twenty-year sentence.

Smith's statements, coupled with the testimony of a vindictive ex-spouse/girlfriend named Mandee McBay ("McBay"), implicated Carpenter.  When Carpenter's picture in a highly suggestive photo line-up was shown to a teenager who happened to be in the vicinity of the murder, Tessica Rainey ("Rainey"), she picked Carpenter out.  The State obtained a capital murder conviction.

Smith was incarcerated in the Woodman Unit of the Texas Department of Criminal Justice. Smith bragged to her cell mates, including Dana Chamberlain ("Chamberlain") and Debra Lebourney ("Lebourney"), that she committed the murder and that Carpenter was innocent.

Smith made statements admitting her complicity in the murder.  She confessed that Carpenter played no role.  Her account of the murders is extremely detailed.  *See* affidavits of Lebourney and Chamberlain. (Exhibits A and B)

Now, the State contends that Smith's admissions never happened–based largely on Smith's current denials.   In seeking the truth, this Court must be ever mindful of the overarching fact that Smith, the State's star witness, is an admitted perjurer, liar, and deceiver.  Her mendacity permeates every line of the lower court's findings.  She stalked her rival, murdered her or had her murdered with the aid of an unknown third party, and then married her rival's lover.   Smith was cold and

---

[1]Not coincidently, Smith is tall and thin with brown hair, a description which more closely resembles the suspect then does Carpenter's. (See Affidavit of Chamberlain)

calculating enough to live with this man for the better part of a decade and never even hint at her role in the offense. She is so deceitful that she is capable of misleading even her most intimate acquaintances perpetually. Once caught, and under oath, she told at least three or more different stories. Yet, the State has absurdly taken her denials at face value without the need for further investigation.

The State has never compared the physical evidence at the scene to Smith. In the interest of justice, the State ought to conduct a hearing and investigation regarding the truth of Smith's third-party confession to assure that the right person was convicted. The State has chosen a different path. Carpenter has been denied a proper investigation in support of his claims. In fact, the district court judge presiding over the case has refused Carpenter even the opportunity for a hearing, even though there is no showing that the district court has familiarized itself with Carpenter's trial or the other evidence submitted in the case. Instead, the district court adopted wholesale the argumentative, speculative and disingenuous contentions of the State's case. This constitutes an egregious denial of Carpenter's due process rights for the reasons set out below.

**B.** **Post Trial Proceedings**
**Procedural History**

Originally, Carpenter alleged that Smith's recantations were overlooked by the State court. By agreement, this claim was remanded to the state court for an adjudication on the merits on April 13, 2004. Subsequent to Carpenter's filing, (April 19, 2004), the District Attorney's office requested that the court delay appointing counsel and an investigator until the State's response had been filed, even though Carpenter was, at all times, indigent. When the District Attorney filed her response (March 21 ,2005), Carpenter immediately filed for an evidentiary hearing and a motion for

-3-

discovery (May 10, 2005). The court delayed ruling upon Carpenter's request for a hearing until February 8, 2006, some nine months later. At that time, the District Attorney filed an amended response further objecting to the appointment of an investigator or an attorney. Carpenter's renewed request to have counsel was granted in March 2006, but, his request for an investigator to pursue his State court claims was not simultaneously granted. On April 17, 2006, the State district court judge, the Honorable Susan Hawk, signed an order, denying Carpenter all requested relief, including discovery and an investigator. Her order adopted verbatim all of the State's findings. In no fashion did the order acknowledge any of Carpenter's objections. When Carpenter received this order, an *ex parte* request for appointment of an investigator was renewed and granted.

The State filed its proposed findings on May 10, 2006, which, *inter alia*, suggested that Carpenter be denied all relief without a hearing. On May 23, 2006, the trial court agreed that Carpenter was entitled to an investigator. The Court permitted Carpenter to conduct a limited investigation to gather affidavits from his witnesses. Carpenter was then to select a hearing date with the District Attorney for consideration of any unresolved evidentiary matters. In the interim, on June 28, 2006, a mere one month after the formal appointment of an investigator, the Court of Criminal Appeals set a deadline for resolution of all matters in this case by September 28, 2006. This prompted Judge Hawk to sign another boilerplate order adopting the State's findings verbatim, again denying Carpenter all requested relief. On the July 17, 2006, the state district court issued an order in which the trial judge granted Carpenter a mere twenty (20) days to submit his evidence and his findings of fact and conclusions of law. That order did not rescind the trial court's previous adoption of the State's findings of fact and conclusions of law. On August 8, 2006, Carpenter filed affidavits obtained by his investigator and renewed his hearing request. In response, the State filed

supplemental findings of fact on August 22, 2006. Carpenter immediately renewed his objections, (August 25,2006), and renewed his request for a hearing. Nonetheless, on October 18, 2006, the court once again adopted the State's findings verbatim and denied all relief. Carpenter took his objections to the Court of Criminal Appeals, where they were ignored. Relief was denied on March 7, 2007.

### C.    Newly Discovered Evidence

The recantation of false testimony constitutes newly discovered evidence when the evidence was unknown at the time of his trial if the evidence could not have been discovered at that time with the exercise of due diligence, if the new evidence is material, and if the new evidence is probably true and would bring about a different result. *Ex Parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1992); *Williams v. State,* 375 S.W.2d 449, 451 (Tex. Crim. App. 1964). The failure to consider newly discovered evidence constitutes a violation of the Due Process Clause if the perjured testimony at trial was material and the reviewing court is left with the firm belief that, but for the perjured testimony, the accused most likely would not have been convicted. *Boyd v. Puckett*, 905 F.2d 895, 896-7 (5th Cir. 1990), *cert. denied* 498 U.S. 988 (1990). *See also United States v. Wallach*, 935 F.2d 445, 456 (2nd Cir. 1991).

Newly discovered evidence is cognizable by a subsequent writ if the claims could not have been presented previously because the factual basis for the claim was unavailable on the date a movant filed the previous application. Tex. Code Crim. Proc. Ann. Art. 11.071 §5a(1). *Graham v. Texas Board of Pardons & Paroles,* 913 S.W.2d 745, 751 (Tex. Civ. App. Austin 1996). Smith's confessions were not made until she was incarcerated in prison many months after the conclusion

of the trial. The affidavits were not obtained until July 20, 2001, almost a year after the filing of the State writ. Therefore, by definition, the evidence is newly discovered.

### D.     The significance of recantations

Justice Oliver Wendell Holmes has stated that "No other statement is so much against interest as a confession of murder." *Donnelly v. United States*, 228 U.S. 243, 278 (1912) (dissenting opinion).   Exculpatory evidence is never more probative than the confession of a third party, if believed. *United States v. Carmichael,* 269 F. Supp.2d 588, 598 (D.N.J. 2003) The courts have uniformly held that the accused must be allowed to produce reliable third party confessions, despite any hearsay rules, when necessary to assist in separating the guilty from the innocent. *United States v. Hall*, 165 F.3d 1095, 1113 (7th Cir. 1999) cert. denied, 527 U.S. 1029 (1999).   *See also, Gacy v. Welborn*, 994 F2d 305, 316 (7th Cir. 1993) cert. denied, 510 U.S. 889 (1993), (citing *Chambers v. Mississippi*, 410 U.S. 284 (1973)).[2]  Since the accused need only create a reasonable doubt of guilt in order to obtain an acquittal, the courts have determined that any doubts concerning relevance should be resolved in favor of admission of third party perpetrator evidence. *Holt v. United States*, 342 F.2d 163, 165 (5th Cir. 1965).  No higher showing than simple relevance is required for admissibility.  *United States v. Stevens*, 935 F.2d 1380, 1402 (3rd Cir. 1991), *see also State v. Sturdivant*, 155 A.2d 771 (1959) (requiring "some thread capable of inducing reasonable men to regard the event as bearing upon the state's case.")  The courts have eschewed any suggestion that

---

[2] Third party confessions are never, by definition, merely impeachment evidence, contrary to finding of fact 86.  Newly discovered evidence is merely impeaching when there is no exculpatory connection between it and the underlying case.  New evidence that calls into question the validity of Carpenter's guilt is by definition not merely impeachment. *United States v. Saada*, 212 F.3d 210, 216 (3rd Cir. 2000); *Carmichael, supra* at 598.  By the same token, third party confessions are not inadmissible hearsay.  Compare tr. finding of fact number 9.

the proffer must prove or even raise a strong probability that someone else committed the act. *Johnson v. United States*, 552 A.2d 513, 516 (D.C. 1988), *see also People v. Hall*, 718 P.2d 99, 103 (Cal. 1986); *State v. Sturdivant*, 155 A.2d 771 (1959). "To be admissible, the third party evidence need not show 'substantial proof of a probability' that the third person committed the act;  it need only be capable of raising a reasonable doubt of defendant's guilt."    If the evidence shows an opportunity for the third party to commit the crime and tie the third-party perpetrator to the crime, Texas courts have favored admissibility. *Spence v. State*, 795 S.W.2d 743, 754-5 (Tex. Crim. App. 1990)  *See also, Williams v. State*, 643 S.W.2d 477, 483 (Tex. Crim. App. 1982) (Some evidence linking third-party perpetrator to crime is only requirement.)   In sum, as long as the proffer is relevant, not confusing to the jury, and links the perpetrator to the crime, the courts should favor admissibility. *Commonwealth v. O'Brien*, 736 N.E.2d 841 (Mass. 2000).

**E.      Three-Step Determination**

Case law suggests a three-step process to determine the validity of such claims.  First, Carpenter must produce affidavits that, on their face, show a clear statement against penal interest and some corroborating details.  Secondly, an in-court hearing is to determine the veracity of the witnesses to the third party confession.  Finally, if the court deemed the confession believable, the finder of fact must be allowed to consider the confession in ascertaining Carpenter's guilt.

The first step is to analyze the affidavits.  The corroboration requirement is not an exercise in minute scrutiny, as suggested by the court below.  Indeed, there is no definitive test to determine whether corroborating circumstances exist and any number of factors may be considered.   *Davis v. State* 872 S.W.2d 743, 749 (Tex. Crim. App. 1994).  Initially, in *Chambers v. Mississippi*, the factors were identified as follows: 1) the statement was made to a close acquaintance shortly after

the crime was committed; 2) the statement was against the declarant's interest; 3) the statement was corroborated by other evidence; and 4) the declarant was available for cross-examination. These factors are not exhaustive or absolute. *Cunningham v. Peters*, 941 F.2d 535, 540 (7th Cir. 1991).

In *Woods v. State*, 152 S.W.3d 105, 113 (Tex. Crim. App. 2004), the Court of Criminal Appeals identified the following factors:  1) whether the guilt of the declarant is inconsistent with the guilt of the accused; 2) whether the declarant was so situated that he might have committed the crime; 3) the timing of the declaration; 4) the spontaneity of the declaration; 5) the relationship between the declarant and the recipient of the statement; and 6) the existence of corroborative facts. Reviewing courts have stressed that the sheer number of statements, coupled with the knowledge that disclosure would subject the declarant to criminal prosecution, weigh heavily in determining admissibility. *Chambers,* 410 U.S. at 310; *Revels v. Diguglielmo,* 2005 WL 1677951 at 7 (E. D. Pa. 2005).

**F.      Application of law to facts**

As Carpenter's affidavits demonstrate, Smith's confessions are clearly against penal interest and are corroborated by the facts of the case. Debra Sue Curry's ("Curry") affidavit[3] states that Evrin used a knife to kill the female victim. Curry's affidavit states that Carpenter was not involved in the crime. Clearly, the affiant knew that a female victim was killed with a knife. The affiant also knew that Carpenter was accused of this murder. These are all indisputably objectively true and corroborate Curry's affidavit.

---

[3] Exhibit C attached hereto.

Likewise, Athena Burdick's ("Burdick") affidavit[4] contains a statement by Smith exculpating Carpenter. Smith referred to Carpenter as her fall partner. Both Carpenter and Smith were convicted of Henin's murder and that Carpenter received a death sentence. These facts are objectively true and corroborate Smith's confession.

Finally, the affidavit of LeBourney contains an unredacted statement that blood was everywhere, that Smith was at the scene of the murder and saw children on their way to school, that the clothes and murder weapon were not found, and that Carpenter was wrongfully convicted of the murder. These facts are all objectively true and corroborate Smith's confession.

Additionally, Smith was, by her own admission, involved in the murder. She had an opportunity to commit the crime. The record indicates that she stalked the deceased and had been to her house often. Thus, Smith was uniquely situated to commit the crime. Her statement acknowledging guilt inherently carried the risk of further prosecution. Compare *Chambers,* 410 U.S. at 300-01. Smith's statements were spontaneous acknowledgments of guilt. As the court is aware, jailhouse informant evidence is prevalent because so many people discuss their cases while incarcerated. Further, at the time Smith's statements were made, several of the affiants were close acquaintances. The sheer number of confessions buttresses their reliability because the confessions corroborate each other. *Id.* at 301. Finally, and most importantly, Smith is available for cross-examination so that the court may ascertain her credibility. When properly analyzed, all of these factors favor a new trial, or, at a minimum, a hearing on their probity.

---

[4] Exhibit D attached hereto.

### G.      Need for a hearing

Carpenter strongly and repeatedly objected to the court's ruling that the conflict in the affidavits could be resolved without a hearing in a capital case as an objectively unreasonable application of prevailing Supreme Court precedent.

The State's findings, as adopted by the district court, seem to suggest that all credibility determinations can be made in the absence of a hearing. Such a finding is unprecedented. The credibility of witnesses presents an "in court" issue for the finder of fact. *Cunningham,* 941 F.2d at 312. An evidentiary hearing on the reliability of a third-party confession is a prototypical instance in which an evidentiary hearing is appropriate. This is particularly true when the reviewing judge did not preside over the trial. *United States v. Phillips,* 2006 WL 1117882 at 16 (11th Cir. 2006). Clearly, the State courts were required to conduct a hearing and to determine the credibility of the affiants in court subject to cross-examination. Some form of evidentiary hearing is required to fully and fairly adjudicate Carpenter's claims. *Brown v. Johnson,* 224 F.3d 461, 466-67 (5th Cir. 2000) A live hearing is not required if the district court has sufficient facts before it to make an informed decision. As a rule, however, and contrary to the court's findings, if the record contains an evidentiary conflict on a material issue of fact, a judge must hold an evidentiary hearing to decide who is telling the truth. *Taylor v. United States,* 287 F.3d 658, 660 (7th Cir. 2002); *United States v. Alanis,* 88 Fed. Appx. 15, 19-20 (5th Cir. 2004). This is particularly true when the trial judge's personal knowledge does not conclusively negate the facts set out in the claim. *See United States v. Castro,* 2003 WL 1922967 (5th Cir. 2003). When faced with conflicting affidavits, an evidentiary hearing is ordinarily required, particularly when as in this case there is no tribunal from which the

court can measure testimony. Appellate review of these disputed issues can be better performed followi1 g the district court's credibility assessment of the live witnesses. *See Wiggins v. Smith,* 539 U.S. 510, (2003). (relying on the state trial judge's credibility determinations based on live testimony); *Guy v. Cockrell,* 343 F.3d 348, 354 (5th Cir. 2003)(the summary judgment procedure did not suffice here because the affidavits and evidence on file raised genuine, material fact issues that could not be resolved without adversarial testing) *Oliver v. Dretke,* ____ F.3d _____, 2005 WL 2403751 at 5 (E. D. Tx. 2005).      Carpenter's trial judge was the Honorable Gerry Meier. The current state judge, the Honorable Susan Hawk, did not hear *any* evidence regarding this case.   While it may be appropriate, under rare circumstances, for a trial judge to rule upon the credibility of affidavits in the absence of live testimony, such a procedure has never been condoned when the judge was not the trial judge. Whether Smith's recantation is believable is a determination that cannot be made from mere affidavits.  This is particularly true because, even excising the contested portions of the affidavits, the remainder clearly establish a recantation. Secondly, whether the remaining evidence (the testimony of Tessica Rainey and Mandee McBee), still coalesce to establish guilt is a determination that can only be made by a fact finder who is thoroughly familiar with the trial record.

### H.    Objectively unreasonable factual determinations

The common thread between Smith's recantation and the viability of the remaining evidence, is the factual credibility of the affidavits.  This issue should have been determined by the state court. The state court found that the affidavits were not true simply because the affidavits contradicted the statements originally given in the investigation. Under this standard of review, no recantation would ever be considered credible.  Since the district judge did not observe Smith testify at trial, her

credibility cannot be determined by a cursory review of conflicting affidavits.  A live hearing was required.  *Guy v. Cockrell,* 343 F.3d 348, 354 (5th Cir. 2003)

In a two page order, the trial court simply adopted again all of the State's findings and overruled Carpenter's submissions.  Carpenter has repeatedly and persistently complained that the state court has not made an adequate review of the record, particularly since the current judge did not preside over the trial of the underlying case.  Even worse, the court in this instance has merely adopted the findings submitted by the State's attorney wholesale. The order provides no explanation for its failure to even mention Carpenter's objections or proposed findings.  In a death penalty case, such matters are due at least minimal consideration.

I.     **A careful review of the findings show their inadequacy improper conduct findings**

Primarily and initially, Carpenter contends that Judge Hawk never reviewed the record and had no justification for the wholesale adoption of the State's findings.  The adoption of additional findings 104-110 from the State's submission underscores Carpenter's belief that his cause has not received meaningful review.   In these  findings, the State's attorney accuses Carpenter's attorney, and, by implication, Judge Hawk, of engaging in improper ex parte communications concerning the appointment and utilization of an investigator.  As Carpenter pointed out in his proposed findings, he is under no obligation to notify the State of such request.  Further, Carpenter specifically rejects the notion that the trial judge did anything wrong in granting an ex parte request for an investigator or the time to utilize the services of same.

In effect, the trial judge has entered findings that the court implicitly violated the code of judicial conduct. Nothing could be further from the truth. The trial court acted properly in this respect.

However, that the trial judge would sign off on findings that impugn her integrity, demonstrates that no meaningful review has been undertaken.

In light of this, no comfort can be taken in finding 113, that recites the court actually read the record. Carpenter contends that the court adopted a finding that the judge had read the record without actually reading the finding that stated same. The inference that the record was not read can be gleaned from the following inaccuracies in the findings.

### 1.    Finding that Smith did not drive the car observed at the scene

The State contended, and the judge found, that Smith's recantation is not credible because she could not have driven the vehicle described by Tessica Rainey and her brother as the one seen driving from Henin's address.

Carpenter objected to proposed findings, numbers 68-70, that Smith did not drive a car which matched the description given by the eyewitnesses and, therefore, could not have been the murderer. The mere fact that the State proved ownership of a smaller vehicle does not preclude Smith's involvement in the murder. In fact, Carpenter alleged that he did not own a vehicle similar to the one described by the witnesses. The State dismissed his contention by noting that he could have used other transportation. *See* finding of fact 620 on Carpenter's original 11.071 submission.

That explanation, though, also fits Smith. The trial record shows that she had Rebecca Crisler ("Crisler") drive her to stalk the deceased in Crisler's vehicle, (R26.121) which Smith did not own. Therefore, Smith had an established practice of using other vehicles. Common sense

-13-

would indicate that, in planning the murder, she did not wish to be identified by her car because she had expressed similar concerns to Crisler. Nonetheless, the court "found" that Smith was not present based solely on her alleged ownership of a dissimilar vehicle.

### 2.      Finding that one affiant is inherently more credible than another

The State contended, and therefore the judge "found," that Chamberlain's affidavits are not credible because a member of the District Attorney's office allegedly obtained contrary information. Carpenter objected to the trial court's endorsement of the affidavit of an investigator, Espinoza (Finding of Fact 6). That affidavit is hearsay.

Mr. Espinoza has never been subject to examination in court. His credibility cannot be ascertained from a written submission. This is particularly true since he is an agent of the State who did not testify at trial. His boss, the District Attorney, is a party against interest in this matter. The court cannot logically credit his assertions and discount affidavits to the contrary without having met, much less heard from, any of the witnesses. Still, that is what happened below.

### 3.      Finding that Smith had an unimpeachable alibi

The State alleged that Smith was at work, and her alibi was unassailable. This finding was likewise rubber-stamped.   Carpenter objected to the trial court's finding that the State has conclusively established an alibi for Smith. (Findings of Fact 8, 24-28). Crisler saw Smith at work as late as an hour and ten minutes after the murder.  (R26.84, 102).  Crisler is deceased and, thus, not available as a witness.

Adrian Cook's ("Cook") affidavit was obtained some twenty years after the murder.  He did not testify at trial. An affidavit asserting knowledge of a twenty-five year old event, without more, is inherently suspect and highly improbable.

-14-

Further, Cook cannot say where Smith was after 7:00 a.m. and does not know when she left work. At the very least, Cook's recollection should be subjected to cross-examination. Carpenter knows nothing of his background, his relationship to Smith, or his motivation for providing an affidavit based on an event that occurred approximately fourteen years earlier.

Carpenter asserts that ProSet Press was a business that employed time cards to document work hours. These time cards, if they exist, would be a better demonstration of Evrin's whereabouts. Needless to say, Carpenter is unwilling, in a death penalty case, to accept the alibi of a complete stranger without a face-to-face meeting and an in-court testing of his credibility. Apparently, the trial court entertained no such misgivings.

### 4.   Finding that Smith's knowledge of the crime, as relayed to the affiants, was based solely on media accounts and not personal knowledge

The State contended that the particularized details of the murder that Smith disclosed to the affiants came from media accounts, not from Smith's personal observations. Carpenter objected to the court's finding that Smith knew about the murder from reading newspapers and watching television. (Findings of Fact 21, 22). The findings are no more than speculation and conjecture. Smith has admitted some direct knowledge of the offense, having been convicted as a party. Her self-serving denials of liability cry out for closer scrutiny. The court, at the behest of the State, did not provide any scrutiny.

### 5.   Finding that a knife owned by Carpenter was positively identified as the murder weapon

Carpenter objected to the court's finding that his knife was the murder weapon. (Findings of Fact 29, 30). The medical examiner testified that the murderer used a sharp knife. He/she noted that any knife - including a small kitchen knife - could have been the murder weapon.

-15-

Thus, contrary to the assertion that only a buck knife could have been used, anyone with

kitchen utensils, including Smith, could have been the murderer. These findings demonstrate the

lack of candor prevalent throughout the State's submission as adopted by the trial court. These

findings are not a reasonable deduction from the evidence and are, in fact, a direct misstatement of

the record. They therefore strongly indicate that the findings were adopted without an independent

review of the record.

### 6. Finding that Smith lacked the physical strength to break into Henin's home.

The State alleged that Smith could not have committed the murder because the murderer

kicked down Henin's door – an act requiring massive power. Carpenter objected to the finding that

Smith could not have broken into the deceased's house. The court faulted Carpenter[5], who has been

denied discovery, for failing to produce scientific evidence that Smith could kick in a door. Without

going into the impossibility of obtaining such evidence, the State presented **no** evidence that Smith

was too weak to force open the door. The issue cannot be determined by a mere reading of

conflicting affidavits. Still, the judge found that a witness she had never laid eyes on and had never

heard from was too weak to commit the murder.

### 7. Finding that Smith is credible

Carpenter objected to the trial court's findings 58-59, that Smith's affidavit is credible in the

absence of a hearing. The record shows that Smith repeatedly lied about her involvement and made

---

[5] In making this argument, the finding implicitly contrasts Evrin Smith as a small person
with Carpenter, a large person. Elsewhere, the State argues that Carpenter was the murderer
because he matched Tessica Rainey's description of a skinny person. In these findings, the State
lacks no compunction in submitting internally inconsistent and self-contradictory claims. The
State's findings, as adopted by the trial court, show no regard for the adage that "the truth never
changes."

efforts to minimize her guilt. She is part and parcel of the murder. It is hardly surprising, based upon her previous denials, to learn that she is once again minimizing her involvement in order to escape liability. It is impossible for the district court to determine that Smith is an honest person without ever having seen her or heard her testify.

In her affidavit Smith denies that any disciplinary charges were filed against her by Carpenter's affiants. Smith suggests that Carpenter has sent two attorneys to visit her. To Carpenter's knowledge, no attorneys have visited her. The prison records, on information and belief, do not substantiate these allegations. In light of the impossibility of disproving a negative, the court should have conducted a hearing on Smith's allegations. Yet, the court simply deemed all of the State's evidence credible and all of Carpenter's evidence incredible.

### 8.    Finding that Rainey's identification was accurate

In its submission, the State persists in casting the high school student description of the assailant in a false light. The person that Rainey saw had long brown hair and was skinny. Carpenter is a large man of great girth who is not and can never have been even remotely characterized as skinny.

To side step this glaring discrepancy, the State suggests that Carpenter met this description at the time of the offense. The inaccuracy and unreliability of this identification is the basis of an independent claim already on file with the court. Carpenter had blond hair and was large, if not obese. Smith was tall, skinny and had dark hair. In fact, she can pass for a man.

The issue of identification is thus far from settled. Still the court unhesitatingly adopted this highly argumentative assertion without seeking any proof or evidence to substantiate this finding.

9.      **Finding that Smith's recantation is insignificant in light of other evidence of guilt.**

Carpenter objected to findings 45, 71-85, 92-94, that knowledge of Smith's confessions would not have resulted in an acquittal. These findings, deeply rooted in misstatements of the record, speak most loudly to the need of an independent review and live testimony.

There is no physical evidence whatsoever linking Carpenter to the murder. The available physical evidence, including a shoe print, hair fibers, fingerprints, bodily fluids and tissue have all been compared to Carpenter and have all been found <u>not to match</u> Carpenter.

Rainey's eyewitness identification was thoroughly impeached at trial and does not meet the standards of admissibility.[6]   Likewise, the State's other witness, McBay, was the former girlfriend/spouse of Carpenter. Her account of the murder, including her claim that Carpenter had virtually no blood on him, was patently incredible.   Even though Henin had been "nearly decapitated" and there was a large "pool of blood" in her living room, McBay's testimony indicates that she merely saw one drop of blood on the knife and a couple of small droplets of blood on Carpenter's shoe, an impossible factual scenario. As noted in the writ application, page 6, McBay is an admitted mendicant whose account of the incident changed based upon the testimonial needs of the State at trial.

McBay has repeatedly denied that Carpenter was involved in the murder, has admitted a motive to seek revenge against Carpenter and has given numerous conflicting accounts. The strength

---

[6] In fact, as set out in Carpenter's federal claim, attached hereto and incorporated herein for all purposes as Exhibit A, the trial court's finding on the reliability of Rainey's identification are flawed for the same reason that its findings in the initial 11.071 application are deficient. The findings constitute an objectively unreasonable application of prevailing Supreme Court precedent concerning the criteria for reliability.

of this evidence has not been finally resolved in light of Smith's confessions of what allegedly occurred.  Even the Court of Criminal Appeals' affirmation of the conviction does not suffice as a fair determination that Smith's recantation is inconsequential.  If Smith's statements are true, then Carpenter is innocent.

**10.     Findings that Carpenter's affidavits are incredible because they are not consistent with every other piece of evidence submitted. ( The State court nitpicks the affidavits)**

The State faults Carpenter's affidavits because Smith's confessions, while numerous, were not detailed.  The State seizes upon this lack of detail in arguing that the statements are not worthy of admission.   That contention begs the question of whether the statements are worthy of consideration in a hearing.  Clearly, they are.   This is a capital murder case where <u>none of the physical evidence </u>obtained from the crime scene, including DNA evidence, matches or even implicates Carpenter.

Further, Carpenter is aware of no rule that a third party confession must be dramatically detailed in order to be admissible.   Since Smith is available for testimony, as are the affiants, the trial court needs to hear from each in person to determine the truth of the matter.

By the same token, the State has cherry-picked minute details from the trial record to impeach the affidavits. By claiming that these details are inconsistent with Smith's guilt, the State suggests that the third party confessions are not credible.  However, this approach directly conflicts with the approach set out in *Chambers* and *Woods* above.  The confessions must be reliable, not bulletproof and unassailable.  All of the State's contentions relate to the credibility of the witnesses, a matter that must be determined in court.  Compare *Cunningham,* 941 F.2d at 312.

All of the State's authority suggests that, after an appropriate hearing, if the statements are not corroborated, they should not be admitted before the finder of fact. Nowhere can the State cite a case supporting the proposition that a hearing can be denied simply on written review of submitted affidavits conducted by a judge who did not preside at the trial, has no familiarity with the witnesses, and has not reviewed the record.

The State's findings, as adopted by the trial court, fail to address any of the other factors mentioned in *Chambers* or *Woods*, including the number of statements, whether Smith was so situated that she might have committed the crime, whether her statement is inconsistent with Carpenter's guilt, the relationship between Smith and the affiants, and whether Smith is available for cross-examination.

Carpenter objected to findings 16, 21, 38-44, that the affidavits are incredible because they are not consistent with the other eyewitness testimony. According to Lebourney, Smith saw the deceased collapse on the sidewalk outside. The State faults this account because other witnesses did not see the deceased fall. It is well understood that recollections of startling events differ dramatically. Compare "Mental Shock Can Produce Retrograde Amnesia", Loftis and Burns, Journal of Memory and Cognition, Vol. 10, page. 318-323, 1982. That Smith's recollection is slightly different from the other witnesses does not make the statement to Lebourney incredible. It merely shows that Smith's recollection is different.

Secondly, the State faults Chamberlain's affidavit because she quotes Smith as having seen a small girl outside at the time of the murder. The murder occurred in a residential neighborhood while children were on their way to school. The finding rests on the assumption that only three people could have witnessed the event. There is no support in the record for this contention. Smith

-20-

saw a small child not mentioned by the other witnesses. The validity of Smith's account to Lebourney can only be determined by live, in-court testimony.

### 11. The findings that an amended affidavit is inherently incredible

After Chamberlain submitted an affidavit, she was approached by the State to verify it. Chamberlain made minor alterations. Carpenter objects to findings 6-7, 49-51, that Chamberlain's redactions to her 2001 affidavit completely discredit that affidavit. The redactions are minimal. Even in the absence, Chamberlain's affidavit is clear that Smith framed Carpenter, that Smith personally witnessed the murder scene noting the blood and gore, that Carpenter is innocent, and that Smith knew it was wrong to implicate Carpenter. Even the redacted affidavit constitutes a third party admission exculpating Carpenter, and one that is consistent with the crime scene.

### 12. The findings that the affiants have conspired with Carpenter to present false testimony.

Carpenter objected to findings 61-67, that the affiants are not credible because the affiants corresponded with Carpenter. Any such contact only occurred <u>after</u> Smith had made her confessions. The affiants corresponded with Carpenter merely to advise him that they had learned of evidence confirming Carpenter's innocence. Apparently, the only way that the affiants would be deemed credible by the court is if they had told no one of Smith's statements. Such a finding is absurd. Revelation of a crime does not constitute an inherent bias.

### 13. The findings that post-conviction confessions are not "newly discovered" evidence

Carpenter objected to findings 89-91, that the tendered affidavits do not constitute newly discovered evidence. These affidavits concern statements made while Smith was incarcerated.

They did not exist at the time of trial. They were, however, brought to light at the first opportunity. Once the affiants heard the statements, they contacted Carpenter, who, in turn, sent an investigator to interview the witnesses. By definition, this is new evidence.

### J.    The ultimate irony

Notwithstanding over 120 findings of fact that were premised upon the uncompromising truth of Smith's denials, the State hedged its bets in finding of fact 60. In that finding of fact, the State assumed that Smith had indeed made all of the false statements which the State has so painstakingly denied. However, in this finding, Smith's lies were ultimately dismissed as puffery. In other words, Smith indeed admitted the killings but did so only to impress her cellmates. Obviously, it is impossible to ascertain that Smith's statements were tongue-in-cheek without having seen her or without having heard her express that explanation. Still, the trial court found it appropriate to adopt that finding of fact as well, without questioning it. Therefore, the District Court found that Smith is completely honest and that she never confessed to the murder. The District Court also found that Smith was a liar who confessed to the murders, but didn't mean it. The District Court made both these findings without ever having met Smith in person. There is no way in the world that these findings are objectively reasonable.

### K.    Harm

Smith's testimony was the only testimony providing motive for the offense. As the co-indictee, she was one of the most prominent witnesses at trial. Her physical description more closely resembles the perpetrator observed by eyewitness Rainey, than it does Carpenter. Had Smith told the police that Carpenter was not at all involved in the offense, he likely would never have been prosecuted since the investigators did not seek to charge Carpenter until after obtaining Smith's

statement. Under these circumstances, Smith's recantation of her perjured trial testimony and her exculpation of Carpenter is critical. It is a textbook example of the kind of evidence that would have probably resulted in an acquittal.

As noted throughout this motion, there is <u>no physical evidence</u> linking Carpenter to the crime scene. The eyewitness testimony of Rainey was irredeemably impeached, and the testimony of Carpenter/McBay was riddled with inconsistencies, and transparently manipulated by the prosecution team. Without Smith's statement that she hired Carpenter, the evidence before the jury would consist of the identification of a skinny white male with dark hair and the testimony of an embittered ex-wife.[7]

Because the trial court failed to conduct a meaningful inquiry into the proffered evidence, and failed to fairly evaluate the submission through live testimony, its findings and determinations are unreasonable determinations of fact and should be accorded no deference.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Applicant respectfully requests this court to order the following:

1.      That all relief requested herein, including the request pursuant to 28 U.S.C.§ 2254 to set aside Applicant's sentence of death in the underlying cause and remand the case for a new trial be GRANTED.

---

[7] The State and therefore, the trial court did not perceive any weakness in the prosecution case. The trial court adopted the State's contention that these women were "highly persuasive" and their testimony was unrefuted. (Finding of Fact 647) In light of all the inconsistencies presented at trial, that rubber-stamped observation is the most amazing Finding of Fact in the record.

2.    Or, in the alternative, that an evidentiary hearing providing Applicant with further opportunity to establish the claims set forth in this application be GRANTED.

3.    And, to grant all additional relief, not specifically requested herein, to which Applicant is or may be lawfully entitled.

Respectfully submitted,

_____
BRUCE ANTON
State Bar No. 01274700

SORRELS, UDASHEN & ANTON
2301 Cedar Springs, Suite 400
Dallas, Texas 75201
(214) 468-8100
(214) 468-8104 (fax)

CERTIFICATE OF SERVICE

I, Bruce Anton, do hereby certify that a true and correct copy of Applicant's Supplemental Petition for Writ of Habeas Corpus and attached records excerpts were sent to counsel of record for the State of Texas, _____, by placing same in a United States Mail Repository on this the _____ day of June, 2007.

_____
BRUCE ANTON

-24-