IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID LYNN CARPENTER, | § | |
| Petitioner | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:02-CV-1145-H |
| | § | "ECF" |
| NATHANIEL QUARTERMAN, Director | § | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal Justice, | § | Death Penalty Case |
| Correctional, Institutional Division | § | |

**PETITIONER'S REPLY BRIEF AND REQUEST FOR HEARING**

**Overview**

The case against David Carpenter is entirely circumstantial. There is no physical evidence whatsoever connecting Carpenter to the crime. Although biological material, including hair and fibers, were found on the victim's body, this material did not come from Carpenter. No fingerprints from the scene belong to Carpenter. Although a shoe print was found outside the home, the shoe was never matched to Carpenter. Even Respondent must acknowledge that the imposition of the death penalty in a case absolutely devoid of physical evidence linking the condemned to the crime is unheard of.[1] Carpenter requests that this court keep those deficiencies uppermost in mind while reviewing his claims.

Respondent has been forced to take evidence out of context or ignore obvious shortcomings in proof by engaging in a kind of shell game. The shell game is played in the following fashion: the Respondent examines the eyewitness identification and argues that, even

---

[1] Respondent's brief at 20 "Carpenter was not convicted on physical evidence as he repeatedly asserts..."

if it is faulty, Smith's confession, coupled with Mandee McBay's testimony, are unassailable. Therefore, the eyewitness identification is not crucial. Next, the State looks at Smith's testimony and argues that even if it is flawed, the eyewitness testimony and Mandee McBay's testimony are unassailable. Likewise, if McBay's testimony is flawed, the court can rely upon the eyewitness testimony and Smith's statement. Rather than discussing the evidence in context, the Respondent continues to divert attention away from each problem by asking the court to look aside.[2]

Carpenter maintains that whether examined individually or as a whole, the components of the State's case do not withstand scrutiny. Further, Carpenter maintains that a hearing on several of these evidentiary matters is essential to the development of Carpenter's claims.

### Adequacy of State Court Findings

Before the individual components of the State's case are examined, Carpenter asks the court to scrutinize the validity of the fact-finding process in the lower court. The state court judge adopted, *in toto*, the State's submitted findings. To Carpenter's knowledge, not one single correction was made. In doing so, the state court judge adopted some egregious misstatements of the record, misstatement of Carpenter's claims and erroneous citations of applicable law.

Carpenter concedes that ordinarily the state court judge is presumed to have reviewed the submissions of the parties and taken appropriate notice of the record. Those assumptions are not

---

[2]Respondent's brief contains the following examples. Page 25 (Tolbert's third-party confession harmless because of Rainey's identification; Page 27, (brevity of Rainey's view inconsequential because of "other factors"; Page 29, (suggestive line-up harmless because Rainey's identification was based on an adequate crime scene view); Page 41, (Rainey's inaccuracies in describing Carpenter "inconsequential" because Rainey not a trained observer); Page 45, (Rainey's testimony corroborated by McBay and Smith).

unrebuttable.  When Carpenter makes a compelling showing that many of the trial court's findings on crucial aspects of his claims misstate the record, it stands to reason that the fact-finding process was not conducted in a reasonable fashion.

Instead of conceding that the state court judge's findings on Carpenter's claims were frequently erroneous, the Respondent attempts to justify this practice by asserting that to require that state judges should do their own findings would constitute impermissible " second guessing" by the federal courts.  (Respondent's brief p. 12)   Carpenter is not asking that this court require state judges to draft their own findings word for word.  Rather, Carpenter argues that allowing the state judge to sign off on the prosecutor's findings without reading them, correcting them, or modifying them, is *per se* an reasonable and inadequate approach to fact finding.

Whatever flaws were found in the findings of Carpenter's 11.071 state writ, the flaws were exacerbated in Carpenter's supplemental writ.  The trial judge who conducted that proceeding was not the state court judge who conducted the original trial.  Therefore, she would not have been in a position to draw upon her personal observations of the credibility of the witnesses who testified at trial.[3]  The reasonableness of her determinations presuppose that, at the very least, she read the pertinent portions of the original trial record and that she reviewed the State's proposed findings on the supplemental claim.   However, the findings entered on the

---

[3]*Rudd v. Johnson* cited by respondent, does not stand for the proposition that such judges findings are entitled to equal deference. In passing, that court observed that findings made by a judge who heard both phases are particularly compelling.

supplemental claims cast into doubt whether even these rudimentary steps were taken by the state court judge[4].

Contrary to the statements made in Respondent's brief, no court has ever held the wholesale adoption of a prosecutor's findings to be an acceptable practice.  Carpenter agrees with the Respondent's contention (as set out on page 12 of its brief in support of supplemental answer) that infirmities in the state habeas proceedings do not state an independent basis for relief.  *Trevino v. Johnson*, 168 F.3d 173 (5th Cir. 1999); *Nichols v. Scott*, 69 F.3d 1255 (5th Cir. 1995).  However, that statement does not even begin to address Carpenter's concerns.

## Unreasonable Determination of Identification Issues

The standard for determining the reasonableness of an identification are set out in the *Wade/Biggers* line of cases.  As Carpenter submitted in his second claim, the state court utterly failed to correctly weigh the factors necessary to determine the propriety of an identification.  Even worse, the trial court failed to consider all of the factors required. [5]  These factors are set out at length in Claim II at 34-36 and are incorporated herein for all purposes.

Two of the factors omitted from both the state court's findings and the Respondent's brief are the adequacy of the view and the witness's emotional state. The state court findings, as

---

[4]Somehow, these findings are not important because they are just "historical" (Respondent's Supplemental Answer at 16). That argument misses the point. The judge signed off on a statement that she engaged in an improper "*ex parte*" communication.  That finding is factually incorrect and impugns the dignity of the court.  It raises a serious concern that the state court judge did not read the State's proposed findings before adopting them.

[5]Respondent, at page 40, deems it "insulting" to suggest that the trial judge did not know the *Biggers/Wade* criteria. According to Respondent's argument, even when the trial judge misstates the law, the findings are not questionable.  Of course, this nonsensical construction is bereft of legal citation.  If the judge does not correctly apply constitutional authority, the findings are unreasonable.

adopted by the Respondent, do not discuss the adequacy of Rainey's view at all. (Criterion two) She saw only the head and shoulders of the driver as he passed her in a moving vehicle. Coupled with the short opportunity to observe the driver, courts and experts have held that the identification could not possibly be deemed adequate. Secondly, neither the state court nor the Respondent address Ms. Rainey's emotional state. (Criterion Five) The State contends that Rainey heard a house alarm. Rainey's attention would be more focused on her view of the driver, even though the experts suggest the contrary: that an alarmed emotional state diminishes the accuracy of the view.

The state court fared no better in analyzing the remainder of the criteria. As noted above, Rainey's description of the driver (Criterion Three) as skinny with brown hair did not match Carpenter. This factor weighs heavily against the identification, yet is overlooked by both the state court and Respondent. In an effort to bolster the state court's findings, the Respondent cites Rainey's level of certainty (Criterion Seven) as determinative even though authorities have deemed this the least reliable indicator. Further, regarding the opportunity for view (Criterion One) Respondent attempts to argue that the time and conditions under which her observations were made suggests reliability even though elsewhere the Respondent is forced to acknowledge that the opportunity to view was too brief. (Respondent's brief p. 27) Finally, the Respondent overlooks entirely another of the most important factors: the lapse of time between the crime and the identification.( Criterion Eight)

Consider, in context, the eyewitness testimony of Tessica Rainey. On the day of the murder, a teenaged girl and her brother, driving to school, drove by a stranger in a car. At the time, Rainey described the person as six feet tall, light brown, ratty hair, who was skinny.

(R23.76)  The view lasted 5 to 10 seconds at most.  (R23.69) The person was driving a brown, four-door sedan, a vehicle description which did not match the car Carpenter drove at the time.  (R23.80)  Evidence submitted at trial establishes that Carpenter's hair was light colored, even blond, (R23.90) and that he was extremely heavy-set, and nowhere near skinny.  (R23.98-99)

Carpenter further asserts, as set out in Pendergraff's affidavit appended to the writ, that the line-up procedure was extremely suggestive.  Moreover, no credible expert witness could possibly contend that Rainey's identification, which took place some six years before the trial, was possibly valid.   In its response, the Respondent does not make an argument to the contrary.  Instead, the Respondent claims that the state court's findings: 1) the line-up was not suggestive and 2)  Rainey's identification was not tainted, were valid.  These assertions were made without any supporting analysis.  In other words, the identification procedures were valid because the trial judge said they were.

At the state court level, Carpenter requested the opportunity to conduct a hearing on the validity of the identification process in order to flesh out his claim.   This request was denied.  Now, at the federal level, Respondent claims that the identification procedures were proper and that the record, as it now exists, fails to overcome this presumption.  However, Respondent does not address Carpenter's attempt to make a record at the state court level.   A hearing on this matter is crucial to Carpenter.   Carpenter is prepared to show, based upon the testimony of experts in the field of eyewitness identification, including Mr. Pendergraff, that no reasonable jurist could find either that Rainey's identification was the least bit reliable or that the line-up procedure was properly conducted.

The criteria for establishing the proper identification are firmly cemented in constitutional law.  The Respondent failed to discuss all the criteria or give them their proper weight, as did the state court judge.  Thus, the methodology used is patently unreliable.  Since Carpenter's attempt to present evidence in the state court proceedings was completely rebuffed without justification, Respondent should not now be heard to contend that the record fairly establishes a proper identification procedure.

### Smith's Recantation

Evrin Smith, who admittedly played a role in the offense[6] implicated Carpenter in the murder at his trial.  Subsequently, she told her cell mates that Carpenter was not involved.  The state court and Respondent have likewise failed to acknowledge established precedent on the resolution of Carpenter's recantation claim.  Precedent requires that the court consider 1) whether the guilt of the declarant is inconsistent with the guilt of the accused;   2) whether the declarant was so situated that he might have committed the crime; 3) the timing of the declaration; 4) the spontaneity of the declaration; 5) the relationship between the declarant and the recipient of the statement; and 6) the existence of corroborative facts.

The Respondent does not directly deny the appropriateness of that methodology.  Instead, Respondent, like the prosecutor at the state court level, choose to divert attention away from the main issues by focusing on irrelevant and collateral concerns.  Ironically, when examined closely, the Respondent is contending that the court had every reason to believe Evrin Smith's version because Evrin Smith says it's true.  However, Evrin Smith cannot enjoy the role of judging her

---

[6] But only after repeated false denials.

own credibility. That job should rest with the court. To do the job, the court must properly evaluate the credibility of competing documents.

The state court attempted to resolve a credibility issue between conflicting affidavits without considering live testimony and without having seen any of the witnesses testify at trial. All of the cases Respondent cites deal with issues other than the resolution of competing affidavits. *Henderson v. Cockrell*, 333 F.3d 592, 606 (5th Cir. 2003)(inadequacy of writ counsel); *Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir. 2001)(disregard of late filed materials); *Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001)(shortened filing schedule); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997)(prison discipline not cognizable by writ); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995)(wholesale adoption of findings); *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)(failure to issue subpoenas); *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir. 1987)(no hearing before abuse of writ found).

Lacking any authority to rebut that cited by Carpenter, (establishing that a live hearing is necessary to resolve contradictory affidavits), the State cites cases for the general proposition that a hearing in the state court is not the *sine qua non* of reasonable determination. Again, as far as it goes, that statement is true. A hearing is not always required. That proposition does not gainsay Carpenter's contention that a hearing is required to resolve conflicting affidavits. The bottom line is that the state trial court is required to get it right, i.e. to make factual determinations that are supported by the record. Carpenter contends that was not done in this case. As set out in *Guy v. Cockrell,* 343 F.3d 348, 354 (5th Cir. 2003), this procedure did not suffice because the affidavits and evidence on file raised genuine, material fact issues that could not be resolved without adversarial testing.

The Respondent attempts to divert attention from this requirement by contending that other, collateral matters act as a substitute judicial observation. They cannot in theory, and do not in practice, as the following discussion establishes:

1. Dana Chamberlain, one of the witnesses to the recantation, gave an affidavit attesting to it. A state court investigator, employed by the District Attorney's office, filed an affidavit, the substance of which was complete hearsay, stating that Charmberlain's affidavit was false. There is no reasonable way for any court to determine which of the two written statements is true. The judge has observed neither person. No intrinsic matter in either statement provides grounds for its adoption or rejection. Either Chamberlain's statement is adopted on its face or Investigator Espinoza's statement is adopted on its face. In any event, the fact-finding process is inherently unreliable. A state court judge's findings may be presumed to be correct but that presumption must be based on more that the trial courts *ipse dixit* conclusions.

2. Smith says she could not have been the murderer because she did not own a car matching the description of the vehicle seen by Rainey. Ironically, Carpenter claimed that he could not have been the killer for the same reason: he did not own that type vehicle. In disposing of that claim, the Respondent suggests that Carpenter could have borrowed a car. However, that very reasoning applies with equal force to Smith. Carpenter repeatedly asked for the opportunity to conduct a hearing and present evidence regarding this issue. Carpenter was denied a hearing and now the Respondent faults Carpenter's failure to present additional evidence. Moreover, the collateral issue of car ownership bears no role in assessing Chamberlain's or Smith's credibility. Smith is an admitted

mendicant. Bolstering her credibility on car ownership is only one of six factors to be considered. The remaining five all weigh strongly against Respondent.

3. Likewise, Smith claims that she was at work and could not have committed the murder. In support of that contention, the State submitted an affidavit from an unknown person, Adrian Cook, that Carpenter was given no opportunity to rebut. Carpenter asked for the opportunity to investigate this affidavit and to establish by hearing that the alibi was false. The state court denied both a hearing and an investigation. Respondent faults Carpenter for failing to produce rebuttal evidence even though the opportunity for an adequate investigation and hearing was denied. Under these circumstances, crediting the alibi is patently unreasonable.

4. Smith claims that her cell mates could have learned of the murder from other sources. This explanation is nothing more than a bald assertion by Smith, unsupported by the record. Respondent is arguing that Smith's affidavit is true because she says it is. By that reasoning, Carpenter should be allowed to claim that Chamberlain's version is the truth because she says so. At some point, the court, and not the affiants, must decide the issue and must do so in accord with firmly established precedent.

5. The state court found that Carpenter owned the murder weapon. This is a flat out misstatement. The medical examiner indicated that any kind of a knife could have been the murder weapon. Any kind of knife includes a buck knife, and buck knives are hardly a rarity. There is no finding that Carpenter owned the murder weapon. At best, as the owner of a knife, he could have possessed the murder weapon (as could any of us who own kitchen utensils). The assertion that Carpenter possessed "the" murder weapon is

      ridiculous and represents the extent to which the Respondent seems willing to go to distort the record.

6.    Smith could not have broken down the door to Henin's house. The Respondent claims that Smith could not have broken into Henin's home, *ipse dixit*. Actually, this assertion represents the shell game at its best. When Rainey identifies the person she saw driving away, he is skinny, but when it comes to kicking in a door, Carpenter is miraculously a "very large person." Somehow, both of these findings are reasonable. Again, this finding is credible only because the State suggests it is. Without giving Carpenter the opportunity to adduce testimony relevant to this claim in a hearing, Respondent faults Carpenter for lack of evidence. It is not possible to assess this contention based on the mere reading of an affidavit. Even the Respondent cannot point to any fact that precludes Smith from breaking into the house.

The second leg of the State's evidence is the testimony of Evrin Smith, implicating Carpenter. Like a stool without this third leg, Carpenter's guilt cannot stand. The prosecution cannot rest upon Rainey's inadequate identification and the inherently unreliable and inconsistent statements of McBay, the ex-wife. This claim was presented to the lower court in a supplemental filing by Carpenter and is now ripe for federal review. As set out in the supplemental claim, Smith's statement implicating Carpenter in the murder has been recanted. She has told other inmates where she is imprisoned that Carpenter was not involved in the murder. The constitution requires consideration of such a third-party statement, and the case law has set out a methodology for its evaluation. The State did not utilize the appropriate tests in its findings so the trial judge did not either. Instead, to rebut this contention, the State produced

affidavits addressing, at best, one aspect of the test -- corroborating details.  Even in that, the facts have been twisted to justify the result.

Mindful that the trial judge who heard the supplemental writ did not hear the original trial testimony and had no independent basis for judging the credibility of any of the witnesses, Carpenter asked for a hearing on the matter.  In fact,  Carpenter repeatedly and strenuously asked the court to require the attendance of the affiants at formal hearing so that the state court judge could determine whether Smith had indeed recanted.  The state court judge refused these requests without explanation.

The Respondent's position concerning the need for a hearing is that, in  the absence of such evidence, the state court judge's findings are unreasonable.  Without explanation as to how a state court judge can determine, from reading affidavits, where the truth lies, the Respondent simply asserts that a hearing is not required.   Apparently, the Respondent's notion of the deference afforded the state court judge is that state court findings are unreviewable.  That is clearly not the law.   State court findings must be reasonable.  Importantly, the Respondent cannot cite a single case supporting the proposition that a  credibility determination can be made by a habeas judge who did not conduct the trial and who, by simply reading conflicting affidavits, enters findings.  Carpenter now requests that he be afforded a hearing where the affiants are produced for live testimony so that the district court may make a final determination concerning Smith's recantation.

WHEREFORE, PREMISES CONSIDERED, Petitioner David Carpenter requests this court to grant a hearing, and after consideration of the evidence, grant Carpenter relief as requested above.

RESPECTFULLY SUBMITTED,


/Bruce Anton/
BRUCE ANTON
TSB #10274700

SORRELS, UDASHEN & ANTON
2301 Cedar Springs Rd., Suite 400
Dallas, Texas 75201
214/468-8100
214/468-8104 (fax)

ATTORNEY FOR PETITIONER


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above entitled reply brief and request for hearing was mailed to Ms. Ellen Stewart-Klein, Assistant Attorney General, P.O. Box 12548, Austin, Texas, on this the 12th day of November 2007.


/Bruce Anton/
BRUCE ANTON