UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID LYNN CARPENTER, | § | |
| Petitioner, | § | |
| | § | |
| V. | § | CIVIL ACTION No. 3:02-CV-1145-B |
| | § | |
| RICK THALER, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## ORDER ON MOTION TO STAY AND ABATE PROCEEDINGS

On December 29, 2009, Petitioner filed his second Motion to Stay Proceedings and Hold Them in Abeyance ("Motion", doc. 65). Respondent filed his Response in opposition to this motion on January 15, 2010 ("Response", doc. 75). On February 8, 2010, Petitioner tendered a Rebuttal ("Rebuttal", doc. 77, 81), which included additional evidence and was later filed on February 14, 2010. On February 11, 2010, Respondent tendered a "Sur-Reply" ("Surreply", doc. 78) addressing the additional evidence presented in the Rebuttal. The Court finds that the motion to stay and abate should be and hereby is **DENIED** (doc. 65) without prejudice to its refiling after further evidentiary development as stated below.

### I.

### NEW CLAIMS

Petitioner requests that this Court stay and abate these habeas-corpus proceedings so that he may return to the state court to present new unexhausted claims related to an affidavit from and

recent psychological testing of Mandee McBay Cloud (Cloud), a witness at his trial.[1] Petitioner points to three areas of potential claims arising from the newly-discovered evidence attached to his pleadings:[2] (1) *Brady* claims arising from undisclosed agreements between prosecutors and this witness (Motion at 1; Response at 7, 15, 33-34); (2) *Brady* claims arising from the prosecution's failure to disclose alleged mental impairments of a critical witness (Motion at 2; Response at 7, 9, 35-36; Rebuttal at 1-3); and (3) other claims under the Due Process Clause and the Cruel and Unusual Punishments Clause arising from the prosecution's use of witness that is alleged to have been incompetent to testify (Motion at 1-3; Rebuttal at 1-3).  Respondent asserts that these claims, as stated, are not sufficient to warrant a return to state courts to further develop and exhaust these claims. (Response at 13-16, 32-37.)  Petitioner acknowledges that these claims are not developed, but asserts that the appropriate forum to develop these claims would be the state court. (Rebuttal at 3-4.)

## II.

## STANDARD

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court held that a district court has discretion to stay a petition containing unexhausted claims so that the habeas petitioner may return to state court to exhaust such claims in limited circumstances.

---

[1]The affidavit states her name as "Mandee Cloud," but she was identified as "Mandee Rae McBay" at trial.  Therefore, both names are included in this order, but her affidavit will be referred to as the "Cloud Affidavit."

[2]Respondent asserts that there are only two *Brady* claims being presented, claims 11 and 12, and includes all of the allegations of mental competency of this witness in the second of the two new claims (claim 12).  Petitioner's pleadings are capable of this interpretation, but it appears that Petitioner has also attempted to plead a claim distinct from *Brady*.  This analysis intends to consider any possible claims that Petitioner is seeking to develop.

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

*Id.*, at 277 (citing 28 U.S.C. § 2254(b)(2)). The Supreme Court further cautioned against the undue refusal to allow development of such claims.

> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Id.*, at 278. Extra caution is also appropriate in the disposition of this case in which the death penalty has been assessed, so that any potentially meritorious claim may be properly considered before an execution is allowed to proceed and that any unwarranted delay is avoided. *See Rhines*, 544 U.S. at 277-78 (expressing caution about the special danger of delays in death-penalty cases). This Court must determine (1) whether good cause exists for Petitioner's failure to exhaust, (2) whether the unexhausted claims are potentially meritorious, and (3) whether Petitioner intentionally failed to bring these claims earlier in order to prolong this litigation.

## III.

## ANALYSIS

### A.  Good Cause

The meaning of "good cause" under *Rhines* is not settled. In his concurring opinion in *Rhines*, Justice Stevens noted that " 'good cause' for failing to exhaust state remedies more promptly ... is not intended to impose the sort of strict and inflexible requirement that would 'trap the unwary pro se prisoner.' " *Rhines*, 544 U.S. at 279 (Stevens, J., concurring) (quoting *Rose v. Lundy*, 455 U.S. 509

(1982)). In discussing this term, this Circuit has determined that the Supreme Court did not intend it to mean "good excuse" in the technical sense, but rather "good cause" in the equitable sense. *See Ruiz v. Quarterman*, 504 F.3d 523, 529 n.17 (5th Cir. 2007).

The United States Court of Appeals for the Ninth Circuit has held that "good cause" under *Rhines* is less stringent than their "extraordinary circumstances" standard, *Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir.2005), but that a habeas petitioner's "impression" that his counsel had exhausted an unexhausted claim would still not constitute "good cause" for failure to exhaust that claim. *See Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008). The United States Court of Appeals for the First Circuit has held that "ignorance of the law does not constitute good cause," *Josselyn v. Dennehy*, 475 F.3d 1, 5 (1st Cir. 2007), and that a habeas petitioner's strategic decision to omit some claims from his state court application for leave to obtain further appellate review could not amount to "good cause" under *Rhines*. *See Clements v. Maloney*, 485 F.3d 158, 169-71 (1st Cir. 2007).

Pointing to a lack of "consensus among federal courts on what constitutes 'good cause' within the meaning of *Rhines*," one court has concluded that "it is analogous to the external 'cause' required to excuse a procedural default." *Brawner v. Epps*, 2008 WL 1745541 (N.D. Miss., Apr. 11, 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 755 (1991) (requiring petitioner to demonstrate some "objective factor external to the defense" that made it impossible to bring the claim earlier in State proceedings)). This appears to be a more stringent standard than applied by most courts, but even this requirement includes factors that prevent counsel's efforts to discover the claim.

> Cause for a procedural default can exist when "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." A

"showing that the factual or legal basis for a claim was not reasonably available to counsel" is such an external factor.

*Graves v. Cockrell*, 351 F.3d 143, 154 (5th Cir. 2003) (citations omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  While this more stringent standard would exclude claims that were not discovered merely because a prosecution witness refused to speak to the defense, unless accompanied by some interference by law enforcement officials, *see Johnson v. Puckett*, 176 F.3d 809, 816 (5th Cir. 1999), Petitioner also alleges *Brady* violations.  The prosecution's withholding of *Brady* evidence from the petitioner's attorneys qualifies as a "substantial reason for the default that is external to [the petitioner]." *Jamison v. Collins*, 291 F.3d 380, 386 (6th Cir.2002).  Therefore, even under the more stringent cause-and-prejudice standard, Petitioner's allegations could support a finding of good cause.

Petitioner claims that the new evidence shows an agreement with the prosecution "to not pursue the death penalty against Carpenter and to not take away her children in exchange for her testimony" that was withheld from Petitioner at trial. (Motion at 1.)  Petitioner also claims that the prosecutors suppressed evidence of the witness' mental health and medication at trial which would have been impeaching and even shown her to be incompetent to testify. (Motion at 1; Rebuttal at 2-3; Marshall Report at 7-8.)  Petitioner further alleges that Cloud's testimony was material in that outside of the questionable testimony of an accomplice and the identification of an eyewitness that saw the assailant for only seconds, Cloud's testimony is all that tied Petitioner to this crime. (Rebuttal at 1-2.)  If true, these allegations would support habeas relief under *Brady*.

It is undisputed that this witness refused to speak with the defense team prior to trial. (23 State Reporter's Record "SRR", 16-18; 25 SRR 57-61).  The Cloud affidavit indicates that this refusal continued until shortly before she gave the affidavit in June of 2009. (Cloud Aff. at 1.)  After

these matters were discovered, Cloud submitted to a psychological examination resulting in the report of February 5, 2010, from Dr. Rycke Marshall concluding that the witness was incompetent to testify at the time of trial. (Marshall Report at 9.) Therefore, this evidence was not available to Petitioner prior to Cloud's decision to cooperate in 2009, and good cause exists for Petitioner's failure to exhaust.

### B. Potential Merit

As stated above, Petitioner alleges an undisclosed agreement in exchange for testimony and suppressed mental health evidence which, if true, would authorize relief under *Brady*. Respondent challenges the quality of the evidence produced and whether it is capable of supporting Petitioner's allegations. Respondent argues that the language of the Cloud affidavit does not establish the existence of any agreement or exchange between the prosecutors and this witness, and that any threats regarding the custody of her children came from someone who was not part of the prosecution team. (Response at 33-34.) Respondent also points out that the Marshall report contains multiple hearsay and argues that it fails to establish Dr. Marshall's credentials as an expert. (Surreply at 6-8.) Respondent also argues that Petitioner's prior relationship with this witness and opportunities to observe her at trial should have alerted him to any of her undisclosed mental health problems. (Response at 10, 36; Surreply at 3-5, 9-10.) In light of other evidence, including Petitioner's own condition, lack of expertise, and the lapse of time between Petitioner's cohabitation with Cloud and the trial, it is not clear what Petitioner should have, or could have, recognized about Cloud's mental health prior to or at the time of trial. Petitioner acknowledges that these claims are not yet fully developed, and makes this motion in order to develop these claims in the state courts. While Petitioner's allegations, if true, would support relief, the evidence is not yet developed

sufficiently to show whether these potential claims will provide the necessary support to establish a right to relief.  In light of the prior stay and abatement of these proceedings, this Court would prefer to allow a minimal amount of evidentiary development in this court to avoid a greater delay that may result from the stay and abatement of these proceedings if it is unnecessary.

### C.  Dilatory Tactics

Respondent claims that Petitioner has engaged in dilatory tactics that should prevent this Court from granting a stay under *Rhines*.  He has produced correspondence between the petitioner, this witness, and other members of Petitioner's family in an attempt to show that this newly-discovered evidence is the result of a long campaign by Petitioner to persuade this witness to cooperate with his counsel and investigators. (Response at 16-32.)  This would not show the kind of dilatory tactics that the Supreme Court cautioned against in *Rhines*, but the contrary.  While this Court does not condone any attempts to manipulate witnesses, it cannot fit this evidence comfortably within the exclusion set forth in *Rhines*.

Respondent also complains of the prior delays in this case, specifically including the prior stay and abatement and the delay between the time that Cloud gave the affidavit in and the filing of the motion to stay and abate these proceedings. (Response at 5-6, 38.)  However, Petitioner also arranged for a psychological examination of this witness and filed his motion before the expert report was provided. (Rebuttal Exh. 1.)  While this Court recalls that Respondent agreed to the prior stay and abatement (doc. 39), it remains concerned about the length of these proceedings and the need to avoid further delay.  Further evidentiary development in this Court may resolve the need to stay and abate these proceedings and avoid a greater delay in the resolution of these issues.

## IV.

## CONCLUSION

Petitioner's allegations, if true, could support the grant of habeas relief. He has identified claims that, when fully developed, may prove these factual allegations, and has shown good cause for failing to exhaust these claims in the state courts. Respondent asserts that the claims as presented are not adequate to warrant the extraordinary remedy of a stay and abatement, and complains of the delay in these proceedings and the further delay that would result from granting the stay and abatement. This Court does not wish to cut off a potentially-meritorious claim without allowing appropriate evidentiary development, but is mindful of the greater delay that would result in granting another stay and abatement of these already-lengthy proceedings. In order to balance these competing needs, the Court finds that leave to conduct the deposition of Mandee McBay Cloud expeditiously will allow a measure of evidentiary development that is appropriate to address the matters raised by Respondent before abating these proceedings. Therefore, the motion to stay and abate these proceedings is denied without prejudice to the refiling of same if the deposition shows sufficient potential merit to warrant the extraordinary remedy of another stay and abatement of these proceedings.

## V.

## SCHEDULE

Leave of Court is granted to conduct the deposition of the witness, Mandee McBay Cloud, to ascertain the potential merit of Petitioner's new claims. Petitioner's counsel shall conduct this deposition forthwith, and not later than 60 days from the date of this order in accordance with Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Court, and Rule 30

of the Federal Rules of Civil Procedure. Petitioner shall file any amended or supplemental pleadings or briefs in support of this motion to stay and abate within 30 days of the conclusion of that deposition. Respondent shall file any amended or supplemental pleadings or briefs in opposition to the motion to stay and abate within 10 days of the date that Petitioner has filed his amended pleadings or briefs in support of such motion. Petitioner's second Motion to Stay Proceedings and Hold Them in Abeyance (doc. 65) is hereby **DENIED** without prejudice to the refiling of same following the deposition of Mandee McBay Cloud.

SO ORDERED.

SIGNED March 22nd, 2010.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE