ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAVID LYNN CARPENTER, § | |
| Petitioner § | |
| § | |
| v. § | No. 3:02-CV-1145-B-AH |
| § | |
| RICK THALER, § | **DEATH PENALTY CASE** |
| Director, Texas Department of § | |
| Criminal Justice, Correctional § | |
| Institutions Division, § | |
| Respondent § | |

**PETITIONER'S SUPPLEMENT TO REBUTTAL TO
RESPONDENT'S RESPONSE IN OPPOSITION TO PETITIONER'S
SECOND MOTION TO STAY PROCEEDINGS AND HOLD THEM IN ABEYANCE**

Comes now David Carpenter, by and through undersigned counsel and files this Supplement to his Rebuttal to the Respondent's Opposition to Abatement and would show the Court as follows:

I.

On December 29, 2009, Petitioner Carpenter filed a motion to stay and abate proceedings. In the motion, Carpenter alleged that newly discovered evidence revealed three meritorious claims: 1) a Brady claim concerning a promise from the prosecution team to witness Mandee McBay/Cloud, not to seek the death penalty against Carpenter; 2) a Brady claim arising from the prosecution's failure to disclose that witness Mandee McBay/Cloud was mentally impaired at both the time of the event and the time of trial; and 3) a due process claim arising from the prosecution's use of McBay/Cloud as a witness when she was incompetent to testify.

Respondent, in reply, argued that the factual bases for the claims were not sufficiently developed. Thereafter, on March 22, 2010, the District Court ordered that Mandee McBay/Cloud's deposition be taken in order to evaluate the evidentiary bases for Carpenter's claims. Specifically, the District Court's order sought clarification on a number of issues: First, whether, in fact, McBay/Cloud was incompetent at the time of the event and the time of trial. Second, whether the prosecution team was aware of McBay/Cloud's incompetency. Third, whether Carpenter was aware of McBay/Cloud's competency prior to 2009. Fourth, whether or not a member of the prosecution team promised not to seek the death penalty if McBay/Cloud cooperated.

In addition to McBay/Cloud's testimony, Carpenter has provided an affidavit from Dr. Rycke Marshall, a psychiatrist who examined McBay/Cloud. That affidavit set out in detail McBay/Cloud's mental health problems and the time frames in which they arose. Dr. Marshall's curriculum vitae have been provided to the court, and her expertise should not be in question.

On May 5, 2010, the oral deposition of Mandee McBay/Cloud was taken. That deposition, which is on file with the court, fully addresses the District Court's concerns as follows:

1. The statements to Dr Marshall

McBay/Cloud reviewed the affidavit she had given to Rycke Marshall line by line and affirmed everything in the affidavit was correct. (P. 33-80) She did correct the affidavit to say that Penrod, and not Judin, had promised not to seek the death penalty. (P. 35) She also clarified that it was John Cloud, and not the police, who led her to believe that her children would be taken away. (P. 41)

She met with Rycke Marshall for three or four sessions before giving the affidavit. (P. 42) McBay/Cloud insisted she was truthful with Rycke Marshall. (P. 44) She affirmed that her parents were divorced when she was age two, and she rarely saw her father. (P. 44) Her father was a drug addict, an alcoholic who physically abused his children and sexually abused Mandee's sister. (P. 45) Her mother was an alcoholic, a junkee, and a prostitute. (P. 46) Her childhood was extremely unstable and rife with abuse. (P. 46) Often, there was no food or electricity. (P. 46) Her mother frequently abandoned her children for days. (P. 47) From an early age she was exposed to alcohol, drugs, sex, pornography, and violence. (P. 47) McBay/Cloud began abusing alcohol and drugs at age 5. (P. 47) She was sexually abused by a stepfather. (P. 48) She was the victim of child pornography by her mother's boyfriend. (P. 48) She became sexually active at age 12. The family moved frequently. (P. 48) She did not do well in school and dropped out in seventh grade. (P. 49) She had only two long-term relationships - - Carpenter and Cloud. (P. 49-50)

2. McBay/Cloud's mental condition

McBay/Cloud testified that throughout her life she had suffered panic attacks, mood swings and depression (Deposition p. 8) as well as suicidal ideation, anxiety, and substance abuse. (P. 51) In retrospect, McBay/Cloud believes that she had been bipolar her whole life. (P. 19) Around the time of the murder, McBay/Cloud was having hallucinations, like hearing people call her name while she was in the shower. (P. 68) She had these hallucinations whenever she was not taking drugs. (P. 68) McBay/Cloud also stated that certain noises, like scratching a nail on a chalkboard, would "set her off." (P. 100-101)

Prior to trial, McBay/Cloud was diagnosed with depression and was given Zoloft and

Buspar. (Deposition p. 10,54-55) She first received medication in 1997. (P. 51) According to McBay/Cloud, the Klonopin results in memory loss and impairs her ability to recall events. (P. 12) She acknowledged that she had such memory problems in 1997. (P.13) She told Kim Judin about her extreme depression and the medications she was taking at the time of trial. (P. 78-79) Kim Judin acted as if that wasn't important. (P. 79-80)

After the trial, McBay/Cloud was diagnosed with a bipolar disorder (P.18) and was given a number of medications whose names she did not fully recall. (P. 19) She told Rycke Marshall that she was taking antidepressants such as Zoloft, Gabapentin, and Klonopin (P. 43), as well as Seroquel, and Ambien. (P. 54) She was treated by Dr. Rayburn, a psychiatrist, from 1997-2000. (P. 51) She next saw another psychiatrist, Vicky Boric, who diagnosed her as being bipolar, as set out in Dr. Marshall's affidavit. (P. 51-52) Since 2004, she has been seeing Dr. Bennett at the Adapt Clinic. (P. 54) In 2003, the Social Security Administration declared these conditions to be disabling. (P. 53) Her mother was appointed to be her legal guardian. (P. 53) Specifically, McBay/Cloud testified that, at the time of the deposition, she was taking Gabapentin and Klonopin. (Deposition p. 4-5)

3.  Disclosing her condition to the prosecution team

McBay/Cloud specifically recalled telling the prosecutor, Kim Judin, on several occasions that she was on medication. (P. 15-16) McBay/Cloud thought that this disclosure would keep her from testifying. (P. 15-16) She tried to get out of testifying by telling Kim Judin, the prosecutor, that she was on medication, but it didn't work. (P. 31-32) According to McBay/Cloud, Kim Judin brushed the matter aside. (P. 17) During the trial, mention of her medications did not occur. (P. 17)

4.     What Carpenter knew of her condition

McBay/Cloud testified that during the time she lived with David Carpenter, she never discussed any of her mental or emotional problems with Carpenter other than to joke about her obsessive cleanliness. (Deposition p.8) Six months after McBay/Cloud's second child was born, approximately 1995, she stopped most contact with Carpenter except for letters. (P. 57) She never told David of her hallucinations. (P. 68)

During the time that Carpenter was in jail awaiting trial, she never disclosed to him, either by phone or in writing, that she was seeing a doctor and had been diagnosed with depression. (Deposition p. 9-10) McBay/Cloud never told Carpenter that she was taking medications or that she had seen a doctor. (Deposition p. 11)

McBay/Cloud reaffirmed that she refused to talk to Carpenter's investigators prior to trial at her husband John Cloud's urging. (P. 13-14) She only spoke to police investigators. (P.14) Cloud had pressured her to get Carpenter in trouble. (P.23-24) Cloud told her that the authorities were going to take her kids away. (P. 24) Eventually, she realized her kids would not be taken away. (P.24) She never spoke to the defense team and never wrote David a letter about the promise not to seek the death penalty. (P. 32) She never told the defense team that she was opposed to the death penalty, however, she told Judin, Toby Shook, and Penrod that she was opposed to the death penalty and didn't want to go through with this. (P. 40)

McBay/Cloud acknowledged that she had been contacted by defense investigators on many occasions after the trial. (P. 21) McBay/Cloud did not speak to any of the investigators because she wanted nothing to do with the case. (P. 22) In part, this refusal was attributable to her lack of trust in the system due to the prosecution team's lies. McBay/Cloud finally decided

to speak with investigators. She spoke to Kenny Johnson, Carpenter's investigator, after her husband, John Cloud, died. (P. 23) She first spoke to a female investigator that worked with Kenny Johnson, because the investigator seemed nice. (P. 24-25) Kenny Johnson promised her nothing in return for her statement. (P. 25) Before that point, when the female investigator came, she had no intention of giving a statement. (P. 26) McBay/Cloud can't remember how many investigators had attempted to contact her over the years or how often she had refused to speak. (P. 34)

### 5. The promise not to seek the death penalty

Penrod took her to a jail downtown while Carpenter was in jail, but before trial. (P. 27) On several occasions Penrod told her he knew she had information. (P. 27) Penrod called her a liar, (P. 71) would pick her up and take her to the police station and intimidate her. (P. 73) She had been downtown at the jail speaking with them for several hours before she agreed to talk. (P. 29) The death penalty was the first thing on her mind. (P. 28) She did not want to testify against Carpenter, the father of her children. (P. 31) McBay/Cloud stated that Detective Penrod told her, prior to giving a statement, that they would not seek the death penalty. (P. 22, 28) She would not have spoken had she known that the death penalty was sought. (P. 28) After they promised not to seek the death penalty, she decided to talk based on the advice of John Cloud. (P. 30) Immediately after she gave the statement, Penrod said they were seeking the death penalty. (P. 30) She couldn't believe it, (P. 30) but she was afraid to confront him. (P. 31) She felt that Penrod had lied to her. (P. 35)

### 6. Her recollection of the events

McBay/Cloud doubts Carpenter's involvement in the offense. (P. 59) McBay/Cloud

stated that her memory of the events of the day of the murder are not clear. (P. 64) To the best of her current recollection, Carpenter had no blood on him and did not dispose of any clothes or wash his hands. (P. 65) Everything on that day seemed unreal to her and she doesn't remember anything else. (P. 66) McBay/Cloud is still confused about the events on the day of the murder. (P. 80) McBay/Cloud did not understand the statement that Penrod wrote for her. (P. 74-75)

### Summary Of Deposition

The District Court ordered a limited statement from Mandee McBay/Cloud in order to determine if any evidentiary support for Carpenter's claims could be garnered. Using the order as a road map, the record is now clear that a *prima facia* showing of substantial claims has been developed.

McBay/Cloud has suffered severe mental problems her entire life. She grew up in an extremely abusive childhood and began using drugs and alcohol as a child. She has suffered from auditory hallucinations since her youth. To this day, her recollection of the events surrounding the offense are vague and seem unreal to her.

These mental problems were exacerbated prior to trial by her ingestion of Zoloft, an antidepressant which adversely affects her memory. She specifically told the prosecutor about her condition and her medication, but the prosecutor brushed these concerns aside and did not disclose her condition to the defense.

Subsequently, McBay/Cloud was diagnosed with a bipolar disorder and was declared to be mentally disabled. In all medical probability, that mental disability obtained at the time of trial, if not before.

Obviously a finder of fact who heard all of these factors would have discounted

McBay/Cloud's testimony at trial. In fact, her mental disability should have precluded her use as a witness at trial, as the prosecution well knew, based upon the disclosures McBay/Cloud made prior to trial.

More certain is that the prosecution had a duty to inform the defense of McBay/Cloud's mental condition and the medications she was on--particularly since the main medication, Zoloft, directly and adversely affected her ability to recall events.

Additionally, the record is clear that McBay/Cloud was a reluctant witness who only agreed to testify after a member of the prosecution team, Penrod the lead detective, promised her that the death penalty would not be sought. This promise was the deciding factor in her decision to provide assistance. This promise was not disclosed to the defense, even though it would have further undermined the trial testimony.

The facts have now come to light because McBay/Cloud, after the death of her husband, John Cloud, and after a series of psychiatric treatments, has realized that no adverse repercussions will ensue. Before the latest effort to speak to her, McBay/Cloud had persistently refused to get involved. Therefore, this material could not have been uncovered sooner.

Carpenter has established a sufficient factual basis to merit further pursuit of his claims.

Respectfully submitted,

BRUCE ANTON
State Bar No. 01274700

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Rd., Suite 250
Dallas, Texas 75201
214/468-8100

214/468-8104 facsimile

CERTIFICATE OF SERVICE

I do hereby certify that on the 19th day of July 2010, I electronically filed the foregoing pleading with the Clerk of the Court for the United States District Court, Northern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorneys of record, who consented in writing to accept this Notice as service of this document by electronic means:

Leslie K. Kuykendall
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
leslie.kuykendall@oag.state.tx.us

In addition, I emailed Ms. Kuykendall a copy of the foregoing pleading.

_____
BRUCE ANTON