# EXHIBIT "J"

## Affidavit of Fact

**COUNTY OF DALLAS***
**STATE OF TEXAS***

A Notary Public in and for said County, State of Texas, on this date personally

_Mandee Cloud_ , who, after being duly sworn, on oath deposes and says:

"My name is Mandee Cloud . My address is 2510 N. Hwy 175 #210,
Seagoville Tx 75159 . My date of birth is 12-04-75 .
My phone number is cm2 904-5802 . My Texas Driver's License # is 11341917 ."

"I am over the age of eighteen and am competent to make this affidavit. I have personal knowledge of the facts stated in this affidavit and they are true and correct."

"This is an affidavit at the request of David Carpenters defense attorney through his investigator. I have never met his defense attorney or spoken to him on the telephone. I have never felt manipulated by the attorney or the investigator or various investigators over the years. I would never speak to investigators over the years, before a year ago because I was told by prosecuters that David would not get the death penalty they lied to me. So I felt why should I trust any one else. I dont believe in the death penalty, but now my children are getting older where they understand the proceedings and more than any thing they dont want their Dad to be put to death. My boyfriend at the time that the police were asking me questions about what happend which just before the police came to me about David I belive that John Cloud (boyfriend at time) had anonymously turned my mother in to the police for an outstanding warrant and I believe that John Cloud turned David in to the police because he knew that David was fixing to get out and knew we would get back together and he didn't want that. he pressured me into cooperateing with the police and the prosecutors he (John Cloud) said that if I didn't they would

take my kids away from me. Now I realize his motives but at the time I did not. I believe John Cloud played me so that David and the kids and I could neaver be a



EXHIBIT
J.

Page 2 of 2 .

family again. My children and I know that Davids execution date is approaching and this is why I now come forward. I was diagnosed as bipolar at the time of the trial the prosecuters knew I had anxiety attacks and was taking zoloft. I felt pressured by the police and prosecuters and by my boyfriend at the time John Cloud. The police and prosecuters would show up at my house, many times and at my work to make me go to thier car and talk but most times they took me to the police station and would keep me there for hours.

Maindes Cloud

**Affiant**

SUBSCRIBED AND SWORN TO BEFORE ME this 19th day of June ,A.D. 2009.

Seal:

Kenneth L. Johnson

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

Kenneth L. Johnson
Notary Public, State of Texas
My Commission Expires:
September 20, 2011

# EXHIBIT "K"

THE STATE OF
 TEXAS                    )(
                                    )(
COUNTY OF TARRANT        )(

    Before me the undersigned Notary P:ublic in and for the state and County aforesaid, on this day personally appeared Diana Lynn Carpenter who after being duly sworn deposes and says:

My name is Diana Lynn Carpenter. I am 50 years old and my date of birth is 2-12-50. I live at 647 Van Zandt County Road 3407, Wills Point , Texas 75169. My home phone number is 903-873-2017. I have completed 8 years of schooling. I can read, write, and understand the English language.

I have been married to David Eugene Carpenter for 35 years. We have two children, David Lynn Carpenter WM 8-25-67 and Darren Eugene Carpenter WM 8-28-69.

David Lynn Carpenter is currently on Texas Death Row for Murder. He was tried for the Murder in March, 1999. During the trial my husband and I had to sit outside the court room in Dallas, Texas. The trial was about two weeks. While sitting we noticed a man and woman sitting in the hall with us. We also noticed that the Private Investigator for David Lynn kept talking to them. The PI was "Cliff". I don't remember his last name. They did not go into court room but we felt that they were there for David Lynn's behalf becasue the investigator kept talking to them.

The second week of the trial we asked my husband asked the man and woman who they were there to testify for. He came back to me and said that the lady's son had been subpoenaed to testify that a boy had come to their house and told the son that he had murdered the woman that David Lynn was on trial for. But her son had been murdered two years prior to the trial. Her son was killed by having his throat cut and that it had been road rage.

The next day I talked to the lady but I don't remember her name. The lady told me the same thing that my husband had told me. She said that David Lynn's attorneys had subpoenaed her son. The lady said that she called the attorney's and told them that her son was no longer alive. The attorneys asked her if she would come to trial. I can't remember if she was subpoenaed or if she was there on her own.

The lady also told me that after the boy had told her son that he had killed the woman that she called the police and asked if a woman had been killed in that location. She said that she told the police that a boy had just left her house and told her that he had done the murder. The police came out to her house and took a report from the lady and her son. She also told me that the boy had gone to school with her son.


EXHIBIT
K-1

After the trial David Lynn called me and told me that the boy ~~got on the witness stand~~ *Stood in the CourtRoom DC* and the DA went to the judge and ~~the jury was asked to leave~~ *askthat the JuRY BEdismssed so they (the juRY) couldn't DC* son they would hear what the boy had to say. After the jury left, the boy ~~got on the stand~~ *Stood in the CouRT Room DC* and pled the fifth.

The above statement is true and correct to the best of my knowledge as I have told Mr. Fred Pendergraf.


Date: 7-11-00
Time: 8:15 p.m.
Typed by Fred Pendergraf
Place: 647 Van Zandt County Road, Wills Point, Texas 75169

*Deana L. Carpenter*


Subscribed and sworn to before me this 11 day of July, 2000

*M. Pendergof*
Notary Public in and for Tarrant County, Texas

NOTARY PUBLIC
STATE OF TEXAS
M. F. PENDERGAFF
Notary Public
STATE OF TEXAS
My Comm. Exp. 02/24/2004

THE STATE OF TEXAS      )(

COUNTY OF TARRANT     )(

          Before me the undersigned Notary P:ublic in and for the state and County aforesaid, on this day personally appeared David Eugene Carpenter who after being duly sworn deposes and says:

My name is David Eugene Carpenter. I am 52 years old and my date of birth is 2-6-48. I live at 647 Van Zandt County Road 3407, Wills Point, Texas 75169. My home phone n umber is 903-873-2017. I have complete 8 years of schooling. I can read, write, and understand the English language, but I have trouble with spelling. - -

I have been married to Diana Lynn Carpenter for 35 years. We have two children, David Lynn Carpenter WM 8-25-67 and Darren Eugene Carpenter WM 8-28-69.

My son David Lynn Carpenter is currently on Texas Death row for Murder. He was tried in Dallas County in March 1999. During the trial my wife and I had to sit outside the court room because we were not to supposed to hear what was being said inside. While outside in the hall, my wife and I noticed a man and a woman in the hall too. I finally went over and asked what they were there for. The lady told me that her son had friend who told her son that he had killed the woman that my son was on trial for. The boy told her son how he did it and where he did it and everything. As I remember it, her son went to her and told her the story the boy told him. The lady told me that her was dead. I don't remember her saying how he died. I don't remember how he died. SON

After talking to the lady, I told my wife what the lady had told me. I don't remember when my wife talked to her but my wife and I both talked to the lady again. I thought it was the same day but I am not sure now. But I am sure that the lady told me that the boy had killed this lady.

I remember that the lady also told me that there was a girl that was present when the boy told her son but I don't remember all of it.

The above statement is true and correct to the best of my knowledge as I have told Mr. fred Pendergraf.

Date: 7-11-00
8:45 p.m.
Typed by Fred Pendergraf
Place: 647 Van Zandt County Road, Wills Point, Texas 75169

David E Carpenter
David E Carpenter

Subscribed and sworn to before me this _11_ day of _July_ , 19 2000

M. Pendergraf
Notary Public in and for Tarrant County, Texas

M. F. PENDERGAFF
Notary Public
STATE OF TEXAS
My Comm. Exp. 02/24/2004

1

EXHIBIT
K-2
Blumberg No. 5119


# EXHIBIT "L"

# Statement of Darren Carpenter

**STATE OF TEXAS**

**COUNTY OF** *VAN ZANdT County.*

## AFFIDAVIT

My name is Darren Carpenter.  I reside at Vz CR 3407, Willspoint TX 75169.

My brother David Lynn Carpenter is presently on Death Row in Livingston TX.

In 1991 I was living with my ex-wife my brother David and his ex-wife Mandee.  We first lived in a two-bedroom trailer, then we moved into a three-bedroom trailer a few weeks before my daughter was born.  My daughter's birthday is October 29, 1991.

I distinctly remember my maternal grandparents giving my brother the 1978 Oldsmobile sometime after his birthday.   My brothers birthday is August 25.  I know that it was after his birthday because we were living in the second trailer.

I heard my brother's ex-wife Mandee represent herself as his wife many times over the years as Carpenter.

Lisa Milstein was the first person who has spoken to me concerning my brother case.  Had someone asked I would have gladly told them the same.

LISA MILSTEIN
Notary Public
State of Texas
My Comm. Exp. 04-15-2005

*Darren E. Carpenter*
Darren Carpenter

*6-27-01*
Date

Sworn to an subscribed before me
On this ___27___ day of June 2001.

*Lisa M*
Notary Public State of Texas

EXHIBIT

# EXHIBIT "M"

State of Texas          }}

County of Dallas        }}

**Affidavit of Gilda Kessner, Psy.D.**

**Re: David Carpenter**
**Case # 3:02-CV1145-H**

 Comes the Affiant, Gilda Kessner, Psy.D., who, after first being duly sworn, states the following:

**1.** I am a clinical psychologist licensed and qualified to practice Psychology in the State of Texas. I have personal knowledge of the facts contained in this affidavit and am competent to testify about them.

**2.** I received a Bachelor's degree in Social Work from Abilene Christian College in 1974. I received a Master's degree in Human Relations and Business from Amber University in 1987 and a Doctor of Psychology (Psy.D.) in Clinical Psychology from Baylor University in 1996. I completed three years of applied doctoral training at Baylor University by serving in three clinical settings from 1992 to 1995. I concluded my doctoral degree training with an American Psychological Association accredited pre-doctoral internship in Clinical Psychology at the Arkansas Division of Mental Health Services from 1995 to 1996. During the pre-doctoral internship I completed two rotations on the Arkansas State Hospital Forensic Inpatient Unit, evaluating and treating adults who were involved in the state criminal justice system. I was licensed to practice psychology in the State of Texas in 1997.

**3.** Since becoming licensed, I have provided professional psychology services in agency settings relating to forensic and clinical psychology, with juvenile offenders. In 1996 and 1997, I was employed as an Associate Clinical Psychologist for the Texas Youth Commission. In this capacity, I developed and provided a range of consulting and psychological services in Texas' maximum-security juvenile prison system. I was instrumental in establishing the operation of the psychological services in what was at the time Texas' largest juvenile prison. I have also been employed as the Coordinator for the Detention Center Psychology Services of the Dallas County Juvenile Services. In that capacity I developed and coordinated psychotherapeutic services for detained juvenile offenders, including the design and management of a pilot project for treatment and rehabilitation of juveniles with significant criminal histories. I was Director of Treatment for the Dallas Youth Academy operated by Correctional Services Corporation under contract for Dallas County Juvenile Services. In that capacity I directed the implementation of a short-term treatment program for court ordered juvenile offenders.



Affidavit of Gilda Kessner, Psy.D.
Re: David Carpenter
Case # 3:02-CV1145-H
2

4.      Since July 1998, I have maintained a private practice in clinical and forensic psychology in Dallas, Texas.  My clients are both public agencies and private individuals.  My practice includes forensic psychological evaluations and consultations for adult criminal and county juvenile systems.   As required by the Board of Examiners of Psychologists, I have maintained continuing education in clinical psychology with a special emphasis in the area of forensic psychology.

5.      I have been recognized as a psychological expert witness regarding sentencing determination issues, including mitigation and future dangerousness in state courts in Texas and I have testified in capital sentencing proceedings.

6.      I am a member of several professional organizations, including the American Psychological Association and the Texas Psychological Association.

7.      I have been contacted by Bruce Anton, defense counsel for David Carpenter, regarding my willingness to serve as a consultant on the availability of relevant psychological and social history information that might have been useful for presentation at the punishment phase of Mr. Carpenter's 1999 capital murder trial.  I was requested to consider the availability of professional research literature and individualized data about Mr. Carpenter relating to the issue of "future dangerousness" that could have been presented during the penalty phase of his 1999 capital murder trial.  I have reviewed numerous records and summaries made available to me.  These types and sources of data are customarily and reasonably relied upon by forensic psychology experts in coming to opinions on relevant issues in this field of expertise

8.      In preparing for this affidavit, I have reviewed the following records and information:

- Texas Department of Criminal Justice - Institutional Division (TDCJ-ID)
  - Medical
  - Dental
  - Mental Health
  - Disciplinary Reports and Hearing Records
  - Social and Criminal History
  - Untitled – reviews of prison adjustment and treatment plan
  - Visitation List
  - Parole Division
- Bradshaw State Jail
- Texas Board of Pardons and Paroles
  - Victim Letters (Kaufman County, Cause No. 15,671)
- Texas Department of Public Safety
  - Computerized Criminal History
- Kaufman County Sheriff
- Dallas County Sheriff

Affidavit of Gilda Kessner, Psy.D.
Re: David Carpenter
Case # 3:02-CV1145-H
3

- Mesquite Police Department
- Balch Springs Police Department
- Dallas County Court documents
- Punishment Phase Testimony Excerpts of Facts of the Case
- List of Extraneous Offenses
- Texas Department of Protective and Regulatory Services
- Texas Department of Human Services – Child Protective Services

**10.   Conclusions:**

Violence risk assessment is a particular area of research and knowledge within psychology. It fundamentally relies on the accumulation of group data that is then applied to a given individual, at which point the methodology becomes individualized. Regardless of whether the violence risk assessment method is clinical (interview/testing), past behavioral pattern, or actuarial (group statistical) - conclusions offered by an expert about a particular individual are reasonably and reliably inferred from group data. There is a growing base of empirical literature that demonstrates that offenders convicted of murder and sentenced to death or life imprisonment have a very low base rate of serious institutional violence.

Research on homicide offenders sentenced to the Texas Department of Criminal Justice identifies an empirically based set of factors that influence an increased or decreased likelihood of serious institutional violence toward inmates or staff. The findings of this and other research data are consistent with the Offender Classification Plan introduced by TDCJ-ID in 2002 which emphasizes length of sentence as an important factor in TDCJ custody assignments. Group data provides the base rates for Mr. Carpenter's likelihood of future violence in prison over the course of a capital life term in TDCJ.

In addition, an individualized assessment of Mr. Carpenter's likelihood of presenting a future danger in TDCJ-ID custody is obtainable through the information that was available at the time of the punishment phase of his 1999 capital murder trial. There is considerable information contained in the above listed (and additional) documents and records, that pertain to an examination of Mr. Carpenter's capacity for adjustment to a capital life term of incarceration in TDCJ. The records offer a meaningful sample of his ability to manage his behavior when in a structured and controlled setting. According to the information available to me, most of his infractions were nuisance behaviors, frequently contained in inmate records. They consisted of not going to work, not going to class, gambling and having items that he did not have documentation for. I have highlighted four other incidents from Mr. Carpenter's records below:

8/7/90          Failing to Obey an Order and Creating a Disturbance – Carpenter refused
                an order to the point that officers implemented force and placed him in
                handcuffs to escort him to detention. The records reflect that there were
                no injuries to officers or Carpenter. The record reflects that Carpenter
                refused orders but there was no endorsement that he attempted to hit, kick,
                bite or otherwise tried to assault the officers. He was assessed 20 days

Affidavit of Gilda Kessner, Psy.D.
Re: David Carpenter
Case # 3:02-CV1145-H
4

       loss of privileges for recreation and commissary.

| | |
|---|---|
| 1/5/97 | Fighting without a weapon – Carpenter was injured by the other inmate when hit in the head with a "lock." The records indicate that in the fight Carpenter was defending himself and sustained a head injury. The head injury required medical treatment in the infirmary and he was kept overnight for observation because of the bruising and cuts to his ear and head. He was assessed 30 days loss of privileges in recreation and commissary. |
| 11/18/97 | Fighting without a weapon – Bradshaw State Jail Facility – Fist fight. Assessed 30 days extra duty, and 30 days loss of privileges of commissary and recreation. |
| 12/23/97 | Fighting without a weapon - Bradshaw State Jail Facility – Fist fight. No indication of results of an administrative hearing. |

Before 2001, TDCJ reported assaultive behavior broadly with serious injury and those with little or no injury in the same category. After February 2001 TDCJ distinguished serious staff assault or offender assault as resulting in injury that required treatment beyond first aid as determined by medical staff. As described on the incident and medical reports, the above listed incidents would not meet the standard of serious staff or offender assault defined in 2001. The only exception would be the incident in January 1997 when Mr. Carpenter was injured in the head and required medical treatment.

Based upon this limited initial data, my opinion is necessarily tentative. However, the probability that Mr. Carpenter will commit acts of serious violence if given a capital life term in the Texas Department of Criminal Justice is low based on the group data. As "probability" is understood to reflect a "more likely than not" likelihood, Mr. Carpenter's level of risk can be categorized as falling at the lower end of the probability range. Furthermore, as he ages his risk for violence will continue to decrease. Utilizing the base rates and a detailed history of Mr. Carpenter's behavior in and out of custody (obtained through comprehensive record review and interviews with Mr. Carpenter and others familiar with his development and history), the context of his past violence and the context of his custody in TDCJ, a scientifically informed assessment of the probability of his risk for violence during a capital life term can be derived.

Affidavit of Gilda Kessner, Psy.D.
Re: David Carpenter
Case # 3:02-CV1145-H
5

      I affirm that the foregoing paragraphs, numbered one through ten, are true and correct to the best of my knowledge.

Gilda Kessner, Psy.D.
Licensed Clinical Psychologist

Date _July 10, 2003_

Subscribed to and sworn before me by
Gilda Kessner, on this _10th_ day of July, 2003.

Notary Public, State of Texas
My Commission expires: _9-25-2004_

Janine E Hargraves
My Commission Expires
September 25, 2004

# EXHIBIT "N"

## AFFIDAVIT

STATE OF TEXAS      )
                           ) S.S.:
COUNTY OF DALLAS    )

Deborah Sue Curry, having presented good and sufficient proof of her identity and being duly sworn upon his oath according to law, does hereby depose and state the following:

"I am an adult female over twenty-one (21) years of age, and am of sound mind and body. I possess first-hand knowledge of the facts stated herein. I hereby represent and affirm that these statements of fact are true and correct to the best of my knowledge and information."

"I met Evrin in 1999 during the summer at the Woodman Unit of TDCJ. Evrin was in the same tank that I was in. I remember Evrin discussing her crime 3 or 4 different occasions. During one conversation Evrin stated that she offered to pay David (referring to David Carpenter) to take care of that girl and that he refused and wanted no part of it. It seemed that Evrin could not stand David. Evrin admitted that she was the one that used the knife on the female and killed her. Evrin blamed David for the crime because she was mad at him for not doing it. Evrin said that she did it and David is the one going to die for it. It seemed to me that Evrin was sincere and that she thought it was funny that David was on Death Row for a crime that he did not commit.

"Evrin's statements were upsetting to me and I did not associate with her much after learning about her framing someone (referring to David Carpenter). I wasn't the only one housed in the Woodman Unit of TDCJ that heard some of these statements. I believe Dana Chamberlain, Athena Burdick, Debra Lebourney and Connie Larson were present during some of the conversations in which Evrin made some of the above statements.

"After Evrin's statements I wrote David Carpenter and told him that I would be willing to testify to what I had heard from Evrin. I believe Athena Burdick also wrote David Carpenter and stated that she too would be willing to testify to what she had heard from Evrin.

Further Affiant sayeth naught."

_Deborah Curry_
Deborah Sue Curry, Affiant

SWORN TO AND SUBSCRIBED BY Deborah Curry before me, the undersigned authority, on this the 24 day of July, 2006, to which witness my hand and seal of office.

_Debbie Michaelle Harms_
Notary Public for the State of Texas

Taylor
County

DEBBEE MICHAELLE HARMS
Notary Public, State of Texas
My Commission Exp 05-23-09

My commission expires:
05-23-09

EXHIBIT
N.

# EXHIBIT "O"

## AFFIDAVIT

STATE OF TEXAS      )
                          ) S.S.:
COUNTY OF CORYELL   )

     Athena Charlene Burdick, having presented good and sufficient proof of her identity and being duly sworn upon his oath according to law, does hereby depose and state the following:

     "I am an adult female over twenty-one (21) years of age, and am of sound mind and body. I possess first-hand knowledge of the facts stated herein. I hereby represent and affirm that these statements of fact are true and correct to the best of my knowledge and information."

     "I met David Lynn Carpenter during his capital murder trial in the holdover cell in Dallas County Criminal Courts. I was in the holdover cell next to David's holdover cell waiting to see Mr. Wayne Huff, my attorney for my criminal case.

     "During my wait in the holdover cell David and I started a conversation after we noticed we were whistling the same tune, which was Guns-N-Roses "Patience". I left the holding cell to meet Mr. Huff in the adjoining room and discuss my pending case. I had a lot of questions for Mr. Huff and Mr. Huff did not answer any of my questions except for my last question which was "What are you doing right now?" Mr. Huff kind of laughed and stated "I am about to send a man to prison for killing an old woman."

     "After the brief conversation with Mr. Huff, I went back to my holding cell and resumed my conversation with David Carpenter. During our conversation, David expresses his dissatisfaction with his legal representation and at that time he told his attorney was Mr. Huff. I replied that Mr. Huff was also my attorney and that I was also dissatisfied with his performance and/or lack thereof. I asked David "You're not going in there for a murder trial are you?" In which David replied "Why – what's up." And I told David, "If you are – Mr. Huff just told me about your business." David replied "What did he say?" I replied that Mr. Huff said that he was fixing to send a man to prison for killing an old woman. David got real quite and expressed that there was nothing he could do about it now.

     "Around mid June, 1999 – I was housed at the Woodman Unit. One day I was in the bathroom area and I was talking to a woman nicknamed Unicorn, a.k.a. Debra Curry, a.k.a. Debra Shields. In the bathroom towards my right was a group of 2 or 3 women and 1 woman was discussing her crime. I was not paying attention to the conversation next to me but Unicorn was listening. Unicorn said, "Sis, did you hear what that Bitch just said?" Unicorn said that the woman talking was "David's Fall Partner". At that time I started paying attention to her conversation. She said that he (referring to David) got Death Row. She said that she got 20 years but didn't think she would get any time. She said that he (referring to David) did not commit the crime. Her attitude was fuck him better him than me.

Affiant's Initials: _B_       Page _1 of 2_       Date: _7-21-06_

Blumberg No. 5119

EXHIBIT



"As soon as I got David's address -- I wrote him about this incident in the bathroom. David wrote me back and asked me if he could put my name in his grievances and if I would help him with anything that I learned.

"I corresponded between 5 to 10 times with David via letters. I believe the last correspondence I had with David was in 2001. David is a likeable fellow and a considerate person.

"Further, Affiant sayeth naught."

Athena Charlene Burdick, Affiant

SWORN TO AND SUBSCRIBED BY _Athena Burdick_ before me, the undersigned authority, on this the 21st day of _July_, 2006, to which witness my hand and seal of office.

Notary Public for the State of Texas   MARilyn Secest

County _Coryell_

My commission expires:

8/21/2008

M. SECREST
Notary Public, State of Texas
My Commission Expires
08 21 2008
Notary without Bond

Affiant's Initials: _____   Page _202_   Date: _7-21-06_

# EXHIBIT "P"









