IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID LYNN CARPENTER,<br>Petitioner, | § § § | |
| v. | § § | CIVIL ACTION NO. 3:02-CV-1145-B<br>ECF |
| RICK THALER,<br>Director, Texas Department of<br>Criminal Justice, Correctional<br>Institutions Division,<br>Respondent. | § § § § § § | **CAPITAL CASE**<br><br>**Referred to Mag. Judge Toliver** |

---

## RESPONDENT'S ANSWER TO PETITIONER'S THIRD AMENDED PETITION

---

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Postconviction
Litigation Division

*LESLIE K. KUYKENDALL
Assistant Attorney General
Postconviction Litigation Division

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400

*Counsel of Record

---

ATTORNEYS FOR RESPONDENT

---

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

CARPENTER'S ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.    Facts of The Crime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.   Facts Regarding Punishment . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.  Conviction, Sentence, And Direct Appeal . . . . . . . . . . . . . . . . . . 15

IV.   Carpenter's First Round of State Habeas Proceedings . . . . . . . . . . . 16

V.    Federal Habeas Proceedings Begin: Carpenter Files His Original
      And First Amended Federal Habeas Petitions . . . . . . . . . . . . . . . . 17

VI.   Carpenter's Second Round Of State Habeas Proceedings . . . . . . . . . 19

VII.  The First Stay Of These Federal Habeas Proceedings . . . . . . . . . . . 20

VIII. Carpenter's Third Round of State Habeas Proceedings . . . . . . . . . . . 21

IX.   Federal Habeas Proceedings Resume: Carpenter Files His Second
      Amended Federal Habeas Petition . . . . . . . . . . . . . . . . . . . . . . 22

X.    The Second Stay Of These Federal Habeas Proceedings . . . . . . . . . . 23

XI.   Carpenter's Fourth Round of State Habeas Proceedings . . . . . . . . '. 25

XII.  Federal Habeas Proceedings Resume Again: Carpenter Files His
      Third Amended Federal Habeas Petition . . . . . . . . . . . . . . . . . . 25

THE DIRECTOR'S ANSWER, WITH BRIEF IN SUPPORT . . . . . . . . . . . . 28

## TABLE OF CONTENTS, (CONTINUED)

Page

I.   Carpenter's Claim, That The Trial Court Denied Him Due Process When It Did Not Permit The Jury To Hear Testimony That A Third Party Confessed To The Murder, Does Not Warrant Federal Habeas Relief. (Claim I). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

    A.    Carpenter's federal claim is procedurally barred from federal review and moreover, lacks merit. . . . . . . . . . . . . . . . . . . . . . . . 36

        1.    Carpenter did not object on due process grounds at trial. 36

        2.    Carpenter's due process argument in his direct appeal and initial state writ briefing concerning the exclusion of Kedroski's and Sparks's testimony is entirely distinct from the argument he makes in this Court. . . . . . . . . . . 39

            a.    On direct appeal, Carpenter challenged the trial court's exclusion of Kedroski's and Sparks's testimony on hearsay grounds. . . . . . . . . . . . . . . . . 39

            b.    In his initial state writ application, Carpenter also challenged the trial court's exclusion of Kedroski's and Sparks's proffered testimony on hearsay rather than relevance grounds. . . . . . . . . . . . . . . . . . . . . . 43

        3.    Carpenter's federal claim is unexhausted and the CCA would dismiss it as an abuse of the writ if Carpenter were to present it now in a successive state writ application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

        4.    Carpenter cannot overcome the procedural bar to federal review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

            a.    Carpenter cannot show cause or prejudice, both of which are necessary before this Court may excuse his procedural default. . . . . . . . . . . . . . . . . . . . . . . 48

## TABLE OF CONTENTS, (CONTINUED)

Page

i.      The Supreme Court's recent holding in
        *Martinez* does not apply to any of Carpenter's
        claims, much less to this record-based
        allegation of a due process violation. . . . . . . . 49

ii.     Even if this Court were to conclude that
        *Martinez* permits Carpenter to rely upon the
        alleged ineffective assistance of initial state
        writ counsel as cause for his procedural
        default, Carpenter still cannot overcome the
        procedural bar to federal review. . . . . . . . . . . 53

b.   Carpenter cannot show that a fundamental
     miscarriage of justice will result if the Court
     does not reach the merits of this or any of his
     procedurally defaulted claims. . . . . . . . . . . . . . . . . 63

5.   To the extent Carpenter asks this Court to authorize
     DNA testing in support of his procedurally barred due
     process claim involving Tolbert, the Court should deny
     his request. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

B.   Should this Court finds that Carpenter's present federal claim
     encompasses the due process claim regarding the exclusion of
     third-party perpetrator evidence that he presented to the state
     courts, Carpenter still is not entitled to habeas relief because he
     cannot show that the CCA unreasonably rejected the claim on
     the merits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72

II.   Habeas Relief Is Not Warranted Regarding Carpenter's Claim That
      The Use Of Tessica Rainey's Testimony Violated His Right To Due
      Process.  (Claim II). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

-iii-

## TABLE OF CONTENTS, (CONTINUED)

Page

III.   Carpenter Is Not Entitled To Federal Habeas Relief Concerning His
       Claim That, By Omitting The Aggravating Element Of The Offense
       That Elevated Henin's Murder To Capital Murder, The Trial Court's
       Jury Charge At The Guilt-Innocence Phase Violated *Apprendi* And
       The Eighth And Fourteenth Amendments. (Claim III). . . . . . . . . . . . 90

       A.   Carpenter's claim is procedurally barred. . . . . . . . . . . . . . . . . . 91

            1.   The state habeas court found Carpenter's claim
                 procedurally barred on two bases, each of which
                 constitutes an independent and adequate state law
                 ground for dismissal that precludes federal review. . . . . . 91

            2.   Carpenter has not and cannot overcome the procedural
                 bar to federal review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93

       B.   In addition, Carpenter's claim has no merit. . . . . . . . . . . . . . . . 95

IV.    Carpenter Is Not Entitled To Federal Habeas Relief On His Claims
       That The State Courts Unreasonably Denied Him A Hearing And
       Unreasonably Denied Him Relief Concerning Newly Discovered
       Evidence That  Evrin Smith Had Recanted.  (Claims IV(A) and
       IV(B)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100

       A.   Errors in state habeas proceedings are not cognizable on
            federal habeas review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101

       B.   Furthermore, even though the state habeas court did not
            conduct a live hearing, its findings are still entitled to
            deference under the AEDPA. . . . . . . . . . . . . . . . . . . . . . . . . 101

       C.   Claims of actual innocence based on newly discovered evidence
            do not state a ground for federal habeas relief. . . . . . . . . . . . . 103

       D.   Even if Carpenter's actual innocence claim was cognizable, it
            lacks merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105

# TABLE OF CONTENTS, (CONTINUED)

Page

1.   Carpenter fails to rebut the findings regarding Smith's vehicle with clear and convincing evidence. . . . . . . . . . . 106

2.   The state court's determination of Investigator Espinoza's credibility is entitled to deference. . . . . . . . . . . . . . . . . . 107

3.   The record clearly shows that Smith had an alibi for the murder. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107

4.   The record supports the state court's finding that Smith was aware of the details of the crime through secondary sources. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108

5.   The record supports the state court's finding that the murder weapon belonged to Carpenter. . . . . . . . . . . . . . 109

6.   The record supports the state court's finding that Carpenter, rather than Smith, broke down Henin's door. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110

7.   Carpenter has not presented clear and convincing evidence that Tessica Rainey's identification was inaccurate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111

8.   Even if these affiants had testified at trial, it would not have changed the verdict. . . . . . . . . . . . . . . . . . . . . . . . . 113

9.   Carpenter's complaints regarding the state court's analysis lacks merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 113

10.  Chamberlain's affidavit has been undermined by her recantation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114

11.  The record supports the state court's finding that the affiants' contact with Carpenter  discredits their affidavits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 115

# TABLE OF CONTENTS, (CONTINUED)

Page

12.    Carpenter's objection to Findings of Fact Nos. 89–91 is meritless. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116

13.    Carpenter's objection to the state court's finding that Smith may have made up her alleged recantation to impress her cell mates is meritless. . . . . . . . . . . . . . . . 117

14.    Carpenter Has Not Met His Burden. . . . . . . . . . . . . . . 118

E.    The Court should once again deny Carpenter's request for a federal evidentiary hearing regarding his allegation that Smith recanted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118

V.    Carpenter Is Not Entitled To Federal Habeas Relief Regarding His Prosecutorial Error Claim. (Claim V). . . . . . . . . . . . . . . . . . . . . . . 119

VI.    Carpenter Is Similarly Not Entitled To Federal Habeas Relief Concerning His Related Claim, That Executing Him Without Examining Newly Discovered Evidence Of McBay's Mental Condition Would Violate His Fourteenth Amendment Right To Due Process. (Claim VI). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119

A.    The CCA's dismissal of Claims V and VI rests on an independent and adequate state law ground. . . . . . . . . . . . . . 120

1.    *Balentine II* makes clear that a perfunctory order Of dismissal by the CCA, such as the one it issued concerning Carpenter's fourth state writ application, does not shift the *Long* presumption in a petitioner's favor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 121

2.    As Carpenter himself concedes, the CCA dismissed his fourth state writ application under Article 11.071, Section 5(a)(1), which does not involve a merits determination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123

# TABLE OF CONTENTS, (CONTINUED)

Page

B.   The CCA's dismissal of Claim V, Carpenter's prosecutorial error allegation, on an independent and adequate state law ground gives rise to a procedural bar to federal review, which Carpenter has not overcome; alternatively, the claim has no merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 132

　　1.   Carpenter has not shown cause/suppression. . . . . . . . . 134

　　2.   Carpenter has not shown prejudice/materiality. . . . . . 136

C.   Claim VI, Carpenter's actual innocence claim, is procedurally barred, noncognizable in federal habeas proceedings, and meritless. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 139

VII.   Carpenter Is Not Entitled To Federal Habeas Relief Concerning His Ineffective Assistance of Trial Counsel Claim. (Claim VII). . . . . 148

A.   Several aspects of Carpenter's ineffective assistance claim are procedurally barred from federal review. . . . . . . . . . . . . . 148

B.   Carpenter's claim that counsel was ineffective at all stages of trial has no merit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 151

　　1.   Pretrial Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . 152

　　　　a.   Identification Issues . . . . . . . . . . . . . . . . . . . . 152

　　　　b.   Marital Privilege . . . . . . . . . . . . . . . . . . . . . . 155

　　　　c.   Trial Issues . . . . . . . . . . . . . . . . . . . . . . . . . . 158

　　　　　　i.   Identification Issues . . . . . . . . . . . . . . . . . . 158

　　　　　　ii.   Third-Party Perpetrator . . . . . . . . . . . . . . . . 160

　　　　d.   Punishment Phase Issues . . . . . . . . . . . . . . . . . 161

## TABLE OF CONTENTS, (CONTINUED)

Page

VIII. Federal Habeas Relief Is Not Warranted On Carpenter's Claim
That The Trial Court's Instructions Concerning The Punishment
Phase Special Issues Violated His Eighth and Fourteenth
Amendment Rights. (Petitioner's Claim VIII(A)-VIII(D)). . . . . . . . 166

    A.    Carpenter's challenges to the constitutionality of the 12/10
rule have no merit. (Claims VIII(A) and VIII(B)). . . . . . . . . . 167

    B.    Contrary to Carpenter's assertions, the Texas death penalty
is not unconstitutional under *Apprendi* and *Ring*.
(Claim VIIIC). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 175

    C.    Carpenter's final contention that the Texas death penalty
statute is unconstitutional is not only procedurally barred
but lacks merit. (Claim VIII(D)). . . . . . . . . . . . . . . . . . . . . 184

        1.    Claim VIII(D) is procedurally defaulted and procedurally
barred from federal review. . . . . . . . . . . . . . . . . . . . . . 184

        2.    Claim VIII(D) has no merit. . . . . . . . . . . . . . . . . . . . . 187

IX. Carpenter's Eighth and Fourteenth Amendment Rights Were Not
Violated by the Trial Court's Instructions Failing to Include a
Definition of the Term "Probability." (Claim IX). . . . . . . . . . . . . . 190

X. A Capital Sentencing Jury Is Not Entitled To Be Informed Of A
Defendant's Parole Ineligibility. (Claims X(A) and X(B)). . . . . . . . 193

XI. Carpenter's Constitutional Rights Were Not Violated by the
Admission of His Letters and Drawings at the Punishment
Phase of Trial. (Claims XI(A) and XI(B)). . . . . . . . . . . . . . . . . . . 198

## TABLE OF CONTENTS, (CONTINUED)

Page

XII.   Federal Habeas Relief Is Not Warranted Regarding Carpenter's
       Claim That The Court Should Not Consider Any Of His Foregoing
       Claims Procedurally Barred Because He Has Established His Actual
       Innocence under *Schlup* And Thus, A Miscarriage Of Justice Would
       Result If The Court Declines To Review The Merits Of His
       Procedurally Defaulted Claims. (Claim XII).  .................... 205

CONCLUSION  ........................................... 206

CERTIFICATE OF SERVICE  ................................ 207

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page**

*Aguilar v. Dretke,* 428 F.3d 526 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 93

*Alexander v. Johnson,* 163 F.3d 906 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . 45

*Alexander, v. Johnson,* 211 F.3d 895 (5th Cir. 2000) . . . . . . . . . . . . . . . . . 168

*Allridge v. Scott,* 41 F.3d 213 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . 196,198

*Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564 (1985) . . . . . . . . . . 32

*Andrews v. Collins,* 21 F.3d 612 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 166

*Anderson v. Harless,* 459 U.S. 4 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Apprendi v. New Jersey,* 530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . *passim*

*Arizona v. Washington,* 434 U.S. 497 (1978) . . . . . . . . . . . . . . . . . . . . . . . 173

*Armstead v. Scott,* 37 F.3d 202 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 55

*Bagley,* 473 U.S. 667, 676 (1985) . . . . . . . . . . . . . . . . . . . . . . . . 128,133,138

*Balentine v. Thaler,* 609 F.3d 729 743
    (5th Cir. June 18, 2010) (*Balentine I*) . . . . . . . . . . . . . . . . . . . . . . . . 122

*Balentine v. Thaler,* 626 F.3d 842
    (5th Cir. 2010) (*Balentine II*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Black v. Collins,* 962 F.2d 394 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 55

*Blackmon v. Scott,* 22 F.3d 560 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 133

*Bousley v. United States,* 523 U.S. 614 (1998) . . . . . . . . . . . . . . . . . . . . . . 64

*Boyd v. Estelle,* 661 F.2d 388 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . 159

## TABLE OF AUTHORITIES, (CONTINUED)

**Cases**                                                                    **Page**

*Brady v. Maryland,* 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Brecht v. Abrahamson,* 507 U.S. 619 (1993) . . . . . . . . . . . . . . . . . . . . 34,58,83

*Brewer v. Quarterman,* 466 F.3d 344 (5th Cir. 2005) . . . . . . . . . . . . . . . . . 93

*Bridge v. State,* 726 S.W.2d 558 (Tex. Crim. App. 1986) . . . . . . . . . . . . . . 36

*Buckelew v. United States,* 575 F.2d 515 (5th Cir. 1978) . . . . . . . . . . . . . 159

*California v. Brown,* 479 U.S. 538 (1987) . . . . . . . . . . . . . . . . . . . . . . . . 188

*Callins, v. Johnson,* 89 F.3d 210 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . 64

*Cardenas v. Dretke,* 405 F.3d 244 (5th. Cir. 2005) . . . . . . . . . . . . . . . . . . 91

*Caspari v. Bohlen,* 510 U.S. 383 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Catalan v. Cockrell,* 315 F.3d 491 (5th Cir. 2002) . . . . . . . . . . . . . . . . 31,204

*Chambers v. Mississippi,* 410 U.S. 284 (1973) . . . . . . . . . . . . . . . . . . *passim*

*Clark v. Johnson,* 227 F.3d 273 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . 8,34

*Charles v. Thaler,* 629 F.3d 494 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . 41,126

*Cockrell v. State,* 933 S.W.2d 73 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . 189

*Coleman v Thompson,* 501 U.S. 722 (1991) . . . . . . . . . . . . . . . . . . . . . *passim*

*Cone v. Bell,* 556 U.S. 449 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74,77

*Crane v. Kentucky,* 476 U.S. 683 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 58

*Cullen v. Pinholster,* 131 S. Ct. 1388 (2012) . . . . . . . . . . . . . . . . . . . . *passim*

## TABLE OF AUTHORITIES, (CONTINUED)

**Cases**                                                                                    **Page**

*Cupit v. Whitley,* 28 F.3d 532 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . 57,199

*Dawson v. Delaware,* 503 U.S. 159 (1992) . . . . . . . . . . . . . . . . . . . . . . . 199

*District Attorney's Office v. Osborne,* 129 S. Ct. 2308 (2009) . . . . . . . . . . . 71

*District of Columbia v. Armes,* 107 U.S. 519 (1883) . . . . . . . . . . . . . . . . . 137

*Doescher v. Estelle,* 616 F.2d 205 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . 86,89

*Dorsey v. Quarterman,* 494 F.3d 527 (5th Cir. 2007) . . . . . . . . . . . . . . . . . 93

*Dowthitt v. Johnson,* 230 F.3d 733 (5th Cir. 2000) . . . . . . . . . . . . . . . . *passim*

*Drope v. Missouri,* 420 U.S. 162 (1975) . . . . . . . . . . . . . . . . . . . . . . . . 140

*Duncan v. Henry,* 513 U.S. 364 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Dusky v. United States,* 362 U.S. 402 (1960) . . . . . . . . . . . . . . . . . . . . . 140

*Early v. Packer,* 537 U.S. 3 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Eddings v. Oklahoma,* 455 U.S. 104 (1982) . . . . . . . . . . . . . . . . . . . . 180,188

*Ellis v. State,* 683 S.W.2d 379 (Tex. Crim. App. 1984) . . . . . . . . . . . . . . . 36

*Elizalde v. Dretke,* 362 F.3d 323 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . 127

*Emery v. Johnson,* 139 F.3d 191 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . 157

*Estelle v. McGuire,* 502 U.S. 62 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Ex parte Gardner,* 959 S.W.2d 189 (Tex. Crim. App. 1998) . . . . . . . . . 92,93

*Ex parte Jesse Joe Hernandez,* No. 62,840-02 (Tex. Crim. App. 2012) . . . . 46,148

# TABLE OF AUTHORITIES, (CONTINUED)

**Cases**                                                                              **Page**

*Ex parte Nelson,* 137 S.W.3d 666 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . 92

*Ex parte Townsend,* 137 S.W.3d 79 (Tex. Crim. App. 2004) . . . . . . . . . . . . . 92

*Fairman v. Anderson,* 188 F.3d 635 (5th Cir. 1999) . . . . . . . . . . . . . . 65,66,67

*Fearance v. State,* 771 S.W.2d 486 (Tex. Crim. App. 1988) . . . . . . . . . . . . 98

*Finley v. Johnson,* 243 F.3d 215 (5th Cir. 2001) . . . . . . . . . . . . . . . . . 64,120

*Franklin v. Lynaugh,* 487 U.S. 164 (1988) . . . . . . . . . . . . . . . . . 187,188,189

*Fuller v. Johnson,* 114 F.3d 491 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . 200

*Furman v. Georgia,* 408 U.S. 238 (1972) . . . . . . . . . . . . . . . . . . . . . . . . 187

*Gacy v. Welborn,* 994 F.2d 305 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . 172

*Garland v. Maggio,* 717 F.2d 199 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . 154

*Gochicoa v. Johnson,* 118 F.3d 440 (5th Cir. 1997) . . . . . . . . . . . . . . . . . 199

*Godfrey v. Georgia,* 446 U.S. 420 (1980) . . . . . . . . . . . . . . . . . . . . . . . 188

*Gomez v. McKaskle,* 734 F.2d 1107 (5th Cir. 1984) . . . . . . . . . . . . . . . . 158

*Graham v. Johnson,* 94 F.3d 958 (5th Cir. 1998) . . . . . . . . . . . . . 46,148,184

*Graham v. Johnson,* 168 F.3d 762 (5th Cir. 1999) . . . . . . . . . . . . . . 45,104

*Gray v. Netherland,* 518 U.S. 152 (1996) . . . . . . . . . . . . . . . . . . . . *passim*

*Green v. Johnson,* 116 F.3d 1115 (5th Cir. 1997 . . . . . . . . . . . . . 154,164,166

*Griffin v. Delo,* 33 F.3d 895 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 104

TABLE OF AUTHORITIES, (CONTINUED)

**Cases**                                                                    **Page**

*Harrington v. Richter*, 131 S. Ct. 770 (2011) . . . . . . . . . . . . . . . . . . . . . . *passim*

*Harris v. Reed*, 489 U.S. 255 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Herrera v. Collins*, 506 U.S. 390 (1993) . . . . . . . . . . . . . . . . . . . . . . . 104,131

*Herrera v. Collins*, 904 F. 2d 944 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . 85

*Holden v. State*, 201 S.W.3d 761 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . 51

*Holmes v. South Carolina*, 547 U.S. 319 (2006) . . . . . . . . . . . . . . . . . . . . . 78

*Homan v. State*, 19 S.W.3d 847 (Tex. Crim. App. 2000) . . . . . . . . . . . . 98,99

*Holt v. United States*, 342 F.2d 163 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . 60

*Hughes v. Johnson*, 191 F.3d 607 (5th Cir. 1999) . . . . . . . . . . . . . . . . 192,196

*Hughes v. Quarterman*, 530 F.3d 336 (5th Cir. 2008) . . . . . . . . . . 121,124,126

*Illinois v. Somerville*, 410 U.S. 458 (1973) . . . . . . . . . . . . . . . . . . . . . . . . 173

*James v. Collins*, 987 F.2d 1116 (5th Cir. 1993) . . . . . . . . . . . . . . . . . 191,193

*Jackson v. Johnson*, 194 F.3d 641 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . 133

*Jackson v. Johnson*, 950 F.2d 263 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . 19

*Jacobs v. Scott*, 31 F.3d 1319 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . 104,168

*Johnson v. Puckett*, 176 F.3d 809 (5th Cir. 1999) . . . . . . . . . . . . . . . . . 57,78

*Johnson v. Texas*, 509 U.S. 350 (1993) . . . . . . . . . . . . . . . . . . . . . . . . 187,189

*Jones v. Barnes*, 463 U.S. 745 (1983) . . . . . . . . . . . . . . . . . . . . . . . 56,95,186

## TABLE OF AUTHORITIES, (CONTINUED)

**Cases**                                                                       **Page**

*Jones v. United States*, 527 U.S. 373 (1999) . . . . . . . . . . . . . . . . . 169,170,191

*Joyner v. King*, 786 F.2d 1317 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . 45

*Jurek v. Texas*, 428 U.S. 262 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Justus v. Virginia*, 266 S.E.2d 87 (Va. 1980) . . . . . . . . . . . . . . . . . . . . . . . 170

*Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992) . . . . . . . . . . . . . . . . . . . . . . . 44

*Kinsel v. Cain*, 647 F.3d 265 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . 101,126,127

*Koch v. Puckett*, 907 F.2d 524 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . 95

*Kubat v. Thieret*, 867 F.2d 351 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 172

*Kyles v. Whitley*, 514 U.S. 419 (1995) . . . . . . . . . . . . . . . . . . . . . . 133,134,136

*Lackey v. State*, No. 1621-10, __ S.W.3d __,
   2012 Tex. Crim. App. LEXIS (Tex. Crim. App. Mar. 7, 2012) . . . . . . . . . 91

*Leavitt v. Arave*, 646 F.3d 605 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . 163

*Livingston v. Johnson,* 107 F.3d 297 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . 86

*Lockhart v. McCotter*, 782 F.2d 1275 (5th Cir. 1986) . . . . . . . . . . 158,159,164

*Lopez v. State,* 343 S.W.3d 137 (Tex. Crim. App. 2011) . . . . . . . . . 52,53,138

*Lords Landing Village Condominium Council of Unit*
   *Owners v. Continental Insurance Co.*, 520 U.S. 893 (1997) . . . . . . . . . . . 53

*Lowenfield v. Phelps*, 484 U.S. 231 (1988) . . . . . . . . . . . . . . . . . . . . . . . 189

*Lucas v. Johnson*, 132 F.3d 1069 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . 104

## TABLE OF AUTHORITIES, (CONTINUED)

Cases                                                                 Page

*Manson v. Braithwaite,* 432 U.S. 98 (1977) . . . . . . . . . . . . . . . . . . . . . . . . 85

*Martin v. Cain,* 246 F.3d 471 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 32

*Martinez v. Ryan,* 132 S. Ct. (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Matamoros v. State,* 901 S.W.2d 470 (Tex. Crim. App. 1995) . . . . . . . . 98,99

*McCleskey v. Zant,* 499 U.S. 467 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Michigan v. Long,* 463 U.S. 1032 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . 121

*Mills v. Maryland,* 486 U.S. 367 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Montana v. Egelhoff,* 518 U.S. 37 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . 58

*Moore v. Dretke,* 369 F.3d 844 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . 101

*Morrow v. Dretke,* 367 F.3d 309 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . 102

*Muniz v. Johnson,* 132 F.3d 214 (5th Cir. 1998) . . . . . . . . . . . . . . . . *passim*

*Murray v. Carrier,* 477 U.S. 478 (1986) . . . . . . . . . . . . . . . . . . . . . . . . 48,49

*McKoy v. North Carolina,* 494 U.S. 433 (1990) . . . . . . . . . . . . . . . . . . 172,173

*Mills v. Maryland,* 486 U.S. 367 (1988) . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Milton v. Procunier,* 744 F.2d 1091 (5th Cir. 1984) . . . . . . . . . . . . . . . . 192

*Montoya v. Scott,* 35 F.3d 405 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 196

*Moreno v. Estelle,* 717 F.2d 171 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . 165

*Mullen v. Blackburn,* 808 F.2d 1143 (5th Cir. 1987) . . . . . . . . . . . . . . . . 199

## TABLE OF AUTHORITIES, (CONTINUED)

**Cases**                                                                    **Page**

*Neal v. Puckett,* 286 F.3d 230 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 31,204

*Neil v. Biggers,* 409 U.S. 188 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

*Nelson v. Estelle,* 642 F.2d 903 (5th Cir.1981) . . . . . . . . . . . . . . . . . . 57,199

*Netherly v. Collins,* 993 F.2d 1154 (5th Cir. 1993) . . . . . . . . . . . . . . . 191,193

*New York Evening Post Co. v. Chaloner,*
   265 F. 204 (2d Cir. 1920) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137,143

*Nobles v. Johnson,* 127 F.3d 409 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . *passim*

*Pape Television Co. v. Associated Artists Production Corp.,*
   279 F.2d 217 (5th Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Pate v. Robinson,* 383 U.S. 375 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . 140

*Patterson v. New York,* 432 U.S. 197 (1977) . . . . . . . . . . . . . . . . . . . . . . 58

*Pemberton v. Collins,* 991 F.2d 1218 (5th Cir. 1993) . . . . . . . . . . . . . . . 199

*Penry v. Johnson,* 532 U.S. 782 (2001) *(Penry II)* . . . . . . . . . . . . . . . . 180,189

*Penry v. Lynaugh,* 492 U.S. 302 (1989) *(Penry I)* . . . . . . . . . . . . . . . . . 189

*Perry v. New Hampshire,* 132 S. Ct. 716 (2012) . . . . . . . . . . . . . . . . . . . 858

*Picard v. Connor,* 404 U.S. 270 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Pulley v. Harris,* 465 U.S. 37 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 192,193

*Ramdass v. Angelone,* 530 U.S. 155 (2000) . . . . . . . . . . . . . . . . . . . . . . 195

*Rector v. Johnson,* 120 F.3d 551 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . 166

## TABLE OF AUTHORITIES, (CONTINUED)

**Cases**                                                                  **Page**

*Renico v. Lett,* 130 S. Ct. 1855 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

*Reyes v. State,* 849 S.W.2d 812 (Tex. Crim. App. 1993) . . . . . . . . . . . . . .   51

*Ring v. Arizona,* 536 U.S. 584 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Rivera v. Quarterman,* 505 F.3d 349 2007) . . . . . . . . . . . . . . . . . . .   131,132,152

*Rocha v. Thaler,* 626 F.3d 815 (5th Cir. 2010)(*Rocha II*) . . . . . . . .   125,126,131

*Rock v. Arkansas,* 483 U.S. 44 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   79

*Romano v. Oklahoma,* 512 U.S. 1 (1994) . . . . . . . . . . . . . . . . . . . . . . . . .   170

*Rose v. Lundy,* 455 U.S. 509 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   44

*Rudd v. Johnson,* 256 F.3d 317 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . .   102

*Rural Utilities Service v. Cajun Electric Power Cooperative, Inc.*
    *(Matter of Cajun Elec. Power Cooperative, Inc.),* 109 F.3d 248
    *(5th Cir. 1997)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   51

*Russell v. Russell,* 865 S.W.2d 929 (Tex. 1993) . . . . . . . . . . . . . . . . . .   156,157

*Santellan v. Cockrell,* 271 F.3d 190 (5th Cir. 2001) . . . . . . . . . . . . . . . . .   204

Sawyer v. Whitley, 505 U.S. 333 (1992) . . . . . . . . . . . . . . . . . . . . . . .   63,64,65

*Schlup v. Delo,* 513 U.S. 298 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Schwander v. Blackburn,* 750 F.2d 494 (5th Cir. 1985) . . . . . . . . . . . . .   159

*Schuler v. Wainwright,* 491 F.3d 1213 (5th Cir. 1974) . . . . . . . . . . . . . . .   137

*Self v. Collins,* 973 F.2d 1198 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . .   107

## TABLE OF AUTHORITIES, (CONTINUED)

**Cases**                                                                **Page**

*Shafer v. South Carolina*, 532 U.S. 36  (2001) . . . . . . . . . . . . . . . . . . . . . . .  195

*Simmons v. South Carolina*, 512 U.S. 154 (1994) . . . . . . . . . . . . . . . . . 194,195

*Simmons v. United States,* 390 U.S. 377 (1968) . . . . . . . . . . . . . . . . . . . . . 85,87

*Singleton v. Johnson,* 178 F.3d 381 (5th Cir. 1999) . . . . . . . . . . . . . . . . 77,198

*Strickland v. Washington,* 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . *passim*

*Strickler v. Greene,* 527 U.S. 263 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . 132,133

*Taylor v. Illinois,* 484 U.S. 400 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  58

*Teague v. Lane,* 489 U.S. 288 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Television Co. v. Associated Artists Production Corp.,*
   279 F.2d 217 (5th Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51

*Thomas v. Collins,* 919 F.2d 333 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . .  44

*Thompson v. Lynaugh,* 821 F.2d 1054 (5th Cir. 1987) . . . . . . . . . . . . . . .  192

*Thompson v. Mississippi,* 914 F.2d 736 (5th Cir. 1990) . . . . . . . . . . . . . . . 90

*Tillman v. State,* 354 S.W.3d 425 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . 84

*Trussell v. Estelle,* 699 F.2d 256 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . *passim*

*Tucker v. Johnson,* 242 F.3d 617 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . .  203

*Tuilaepa v. California,* 512 U.S. 967 (1994) . . . . . . . . . . . . . . . . . . . . . . 179,191

*United States v. Agurs,* 427 U.S. 97 (1976) . . . . . . . . . . . . . . . . . . . . . . . . .  133

## TABLE OF AUTHORITIES, (CONTINUED)

**Cases**                                                                  **Page**

*United States v. Bagley*, 473 U.S. 667 (1985) . . . . . . . . . . . . . . . . . . . . . . .   128

*United States v. Brumbaugh,* 471 F.2d 1128 (6th Cir. 1973) . . . . . . . . .   136,137

*United States v. Cockrell,* 720 F.2d 1423 (5th Cir. 1983) . . . . . . . . . . .   159,164

*United States v. Crews,* 445 U.S. 463 (1980) . . . . . . . . . . . . . . . . . . . . . .   86

*United States v. Frady,* 456 U.S. 152 (1982) . . . . . . . . . . . . . . . . . . . . . . .   49

*United States v. John,* 597 F.3d 263 (5th Cir. 2010) . . . . . . . . . . . . . . . .   *passim*

*United States v. Jones,* 172 F.3d 381 (5th Cir. 1999) . . . . . . . . . . . . . . . .   64

*United State v. Lopez,* 611 F.2d 44 (4th Cir. 1979) . . . . . . . . . . . . . . . . . .   137

*United States v. Shaw,* 894 F.2d 689 (5th Cir. 1990) . . . . . . . . . . . . . . . .   85

*United States v. Wade,* 388 U.S. 218 (1967) . . . . . . . . . . . . . . . . . . . . . . .   86

*Valdez v. Cockrell,* 274 F.3d 941 (5th Cir. 2001) . . . . . . . . . . . . . . . .   32,101,102

*Vela v.* Estelle, 708 F.2d 954 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . .   35,45

*Wainwright v. Sykes,* 433 U.S. 72 (1977) . . . . . . . . . . . . . . . . . . . . . . . .   120

*Ward v. Cain,* 53 F.3d 106 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . .   64,89

*Washington v. Thaler,* No. 09-70028 U.S.
    App. LEXIS 1614 (5th Cir. Jan. 26, 2012) . . . . . . . . . . . . . . . . . . . . . . .   127

*Washington v. Texas,* 388 U.S. 14 (1967) . . . . . . . . . . . . . . . . . . . . . . . .   42,73,78

*West v. Johnson,* 92 F.3d 1385 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . .   98,100

*Wiley v. Epps,* 625 F.3d 199 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . .   101

## TABLE OF AUTHORITIES, (CONTINUED)

**Cases**                                                                 **Page**

*Wilkerson v. Cain,* 233 F.3d 886 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 65

*(Michael) Williams v. Taylor,* 529 U.S. 420 (2000) . . . . . . . . . . . . . . . . . . . 8,34

*(Terry) Williams v. Taylor,* 529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . *passim*

*Walton v. Arizona,* 497 U.S. 639 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . 181,182

*Webb v. Collins,* 2 F.3d 93 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 169

*Weeks v. Scott,* 55 F.3d 1059 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 156

*Wiggins v. Smith,* 539 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 163

*Woodford v. Visciotti,* 537 U.S. 19 (2002) . . . . . . . . . . . . . . . . . . . 29.31,91

*Woods v. Johnson,* 75 F.3d 1017 (5th Cir. 1996) . . . . . . . . . . . . . . . . . *passim*

*Woodson v. North Carolina,* 428 U.S. 280 (1976) . . . . . . . . . . . . . . . . . 180

*Wong v. Belmontes,* 130 S. Ct. 383 (2009) . . . . . . . . . . . . . . . . . . . . . . . 163

*Yarborough v. Alvarado,* 541 U.S. 652 (2004) . . . . . . . . . . . . . . . . . 29,30,32

*Zant v. Stephens,* 461 U.S. 862 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 180

## TABLE OF AUTHORITIES, (CONTINUED)

**Constitutions, Statutes and Rules**                                         **Page**

U. S. Const., amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 198,199

U. S. Const., amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

U. S. Const., amend. VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 161

U. S. Const., amend. VIII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U. S. Const., amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,102

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Tex. Code Crim. Proc. Ann. art. 11.071 . . . . . . . . . . . . . . . . . . . . . . passim

Tex. Code Crim. Proc. art. 37.0711, § 3 (Vernon 1991) . . . . . . . . . 168,180,201

Tex. Penal Code § 19.03(a)(2) (Vernon 1991) . . . . . . . . . . . . . . . . . . . . . 96

Tex. Penal Code § 30.02(a)(3) (Vernon 1991) . . . . . . . . . . . . . . . . . . . 96,97,98

Fed. R. Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 137

Fed. R. Evid. 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 135

Fed. R. Evid. 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 140

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 140

Fed. R. Evid. 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 135

Fed. R. Evid. 1002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 135

## TABLE OF AUTHORITIES, (CONTINUED)

**Cases**                                                                     **Page**

Tex. R. App. Proc. 21.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51

Tex. R. App. Proc. 21.3  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51

Tex. R. App. Proc. 21.4  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  .52

Tex. R. App. Proc. 21.6  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  52

Tex. R. App. Proc. 21.7  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51

Tex. R. App. Proc. 21.8  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  .52

Tex. R. App. Proc. 33.1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  92

Tex R. Evid. 402  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  61,76

Tex. R. Evid. 803 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40,41

**Miscellaneous**

Anti-Terrorism and Effective Death Penalty Act of 1996
   ("the AEDPA")  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID LYNN CARPENTER, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:02-CV-1145-B |
| | § | ECF |
| RICK THALER, | § | |
| Director, Texas Department of | § | **CAPITAL CASE** |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | **Referred to Mag. Judge Toliver** |
| Respondent. | § | |
| | § | |

## RESPONDENT'S ANSWER TO PETITIONER'S THIRD AMENDED PETITION

In 1991, acting for hire, Petitioner David Lynn Carpenter cut Nelda Henin's throat from ear to ear with a buck knife—cutting so deeply that a paramedic responding to the scene initially thought Henin had been decapitated[1]—and left her to bleed to death. Following unsuccessful direct appeal and multiple, equally unsuccessful writ proceedings in state court, Carpenter now challenges his lawful capital murder conviction and death sentence in this Court through his third amended federal habeas petition. 28 U.S.C. §§ 2254, 2241; 3d Am. Pet. 285.[2]

---

[1]     *See* 24 RR 106. "RR" refers to the Reporter's Record of transcribed trial proceedings in cause number F97-77949 from the 291st Judicial District Court of Dallas County, Texas, styled *State v. Carpenter*. The volume number precedes the Director's citations to the Reporter's Record; page numbers follow.

[2]     When citing to documents filed in this Court, the Director uses the pagination assigned by the Court's electronic filing system, located at the top of each document, rather than to the document's internal pagination.

But as fully briefed below, Carpenter procedurally defaulted several of his claims in state court, either partially or entirely. Regarding all of these claims, Carpenter has failed to overcome the resulting procedural bar to federal review by showing cause and prejudice for his default. Carpenter has also failed to surmount the procedural bar by demonstrating that, because he is actually innocent, a miscarriage of justice will result if this Court does not review his procedurally defaulted claims. Accordingly, this Court may not reach the merits of Carpenter's procedurally defaulted claims. Further, Carpenter's independent claims of actual innocence under *Schlup v. Delo*, 513 U.S. 298 (1995), are not cognizable in these federal habeas proceedings.  Moreover, all of Carpenter's claims lack merit. The Court should therefore deny Carpenter all the relief he seeks, including an evidentiary hearing, DNA testing,  yet another stay of these federal proceedings so that he may exhaust unexhausted claims, and a certificate of appealability.

## CARPENTER'S ALLEGATIONS

Carpenter raises the following grounds for federal habeas relief:

1.  The trial court denied Carpenter due process of law and the right to present a defense when it did not allow the jury to hear testimony that a third party, Matthew Tolbert, had previously confessed to the murder, 3d Am. Pet. 62–71, ECF No. 119 (Claim I);

2.  An impermissibly suggestive photo line up tainted eyewitness Tessica Rainey's identification of Carpenter and thus, the use

of Rainey's testimony to obtain his conviction denied Carpenter due process of law, *id.* at 71–91 (Claim II);

3.   By omitting the aggravating element of the offense that elevated Henin's murder to capital murder, the trial court's jury charge at the guilt-innocence phase violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), as well as the Eighth and Fourteenth Amendments, 3d Am. Petition 92–109 (Claim III);

4.   The state habeas court denied Carpenter a hearing on his claim of newly discovered evidence (i.e., Evrin Smith's alleged recantation) based upon an unreasonable application of existing legal precedent, *id.* at 109–41 (Claim IV(A));

5.   The state habeas court erred in denying Carpenter's claim for relief based on newly discovered evidence (i.e., Evrin Smith's alleged recantation) due to an unreasonable determination of objective facts, *id.* (Claim IV(B));

6.   Carpenter was denied due process of law because the prosecution did not disclose that witness Mandee McBay[3] suffered from a mental disability and that, when she testified against him, was taking medications that affected her ability to recall events and testify truthfully, *id.* at 141–56 (Claim V);

7.   Executing Carpenter without examining newly discovered evidence relating to McBay's mental condition would violate Carpenter's due process rights under the Fourteenth Amendment, *id.* at 157–71 (Claim VI);

8.   Trial counsel rendered ineffective assistance because counsel did not: properly investigate, research, and present pertinent legal argument; review evidence; and contact pertinent witnesses for both phases of the trial, *id.* at 171–221 (Claim VII);

---

[3]   McBay now uses the surname "Cloud." In this answer, Respondent Rick Thaler (the Director) refers to this witness by her surname at the time of trial, "McBay."

9.    The trial court's instructions regarding the punishment phase special issues violated Carpenter's Eighth and Fourteenth Amendment rights, *id.* at 221–248, because:

    (a)    Texas's 12/10 rule prevented the jury from giving due consideration to the mitigating evidence, in violation of *Mills v. Maryland*, 486 U.S. 367 (1988), 3d Am. Pet. 225–29 (Claim VIII(A));

    (b)    The 12/10 rule undermined the jury's sense of responsibility for imposing a death sentence, in violation of the Eighth Amendment, *id.* at 229–38 (Claim VIII(B));

    (c)    The failure to require the State to prove the mitigation issue beyond a reasonable doubt relieved the State of its burden to establish beyond a reasonable doubt that Carpenter merited a death sentence and thus denied him due process, *id.* at 286–46 (Claim VIII(C));

    (d)    The punishment phase jury instructions relating to the mitigation issue constituted excessively vague, arbitrary, and capricious sentencing patterns in violation of the Eighth and Fourteenth Amendments, *id.* at 246–48 (Claim VIII(D));

10.    The trial court's punishment phase instructions regarding the definition of "probability" violated Carpenter's right to due process of law and his Eighth Amendment right to be free from cruel and unusual punishment, *id.* at 248–52 (Claim IX);

11.    The trial court's refusal to inform the jury about Carpenter's parole eligibility if he were sentenced to life imprisonment for capital murder denied Carpenter due process under the Fourteenth Amendment and resulted in cruel and unusual punishment prohibited by the Eighth Amendment because:

(a)   The failure to advise the jury that Carpenter
      would be ineligible for parole for fifteen years if
      sentenced to life in prison deprived Carpenter of
      his right to due process by preventing him from
      rebutting any evidence of future dangerousness,
      *id.* at 253–67 (Claim X(A));

(b)   The failure to advise the jury that Carpenter
      would be ineligible for parole for fifteen years if
      sentenced to life in prison constituted cruel and
      unusual punishment because it impermissibly
      diminished the reliability of the jury's ultimate
      determination that death was the appropriate
      punishment by failing to inform the jury on the
      meaning of "life," a legal term of art, *id.* at
      267–71 (Claim X(B));

12.   The trial court denied Carpenter due process when it allowed
      the State to introduce letters, written by Carpenter,
      containing racist comments that were irrelevant to sentencing
      considerations before the jury, *id.* at 272–80 (Claim XI(A));

13.   The trial court denied Carpenter due process when it allowed
      the State to introduced lewd drawings, drafted by Carpenter,
      that were irrelevant to sentencing considerations before the
      jury, *id.* (Claim XI(B)); and

14.   The Court should not consider any of Carpenter's foregoing
      claims procedurally barred because he has established his
      actual innocence pursuant to *Schlup v. Delo*, 513 U.S. 298
      (1995), and failure to review them would result in a
      miscarriage of justice, 3d Am. Pet. 280–84 (Claim XII).

In addition, should the Director assert or the Court conclude that Carpenter

procedurally defaulted any of his claims in state court, Carpenter argues that his

state habeas counsel's failure to raise the allegation constitutes "cause" sufficient

to excuse the default and permit federal review.[4] *Id.* at 219.   Carpenter also asserts that, "[a]t a minimum, [he] should be permitted to return to state court to pursue claims he requested be investigated and raised prior to this Court determining the sustainability of his conviction and sentence." *Id.* at 219–20.

But as fully briefed below, Carpenter's following claims are either partially or entirely procedurally defaulted: Claim I (his due process claim concerning the trial court's exclusion of third-party perpetrator evidence); Claim III (his assertion of an *Apprendi* violation); Claims V and VI (his due process and actual innocence claims concerning witness McBay's mental condition); Claim VII (his claim that trial counsel rendered ineffective assistance), to the extent Carpenter alleges that trial counsel was ineffective for (1) not excluding McBay's testimony on spousal privilege grounds, (2) not informing the jury about the perils of eyewitness identifications, (3) his conduct during jury selection, and (4) not calling a future-dangerousness expert; and Claim VIII(D) (his claim asserting that the trial court's jury instruction regarding the mitigation special issue constituted excessively vague, arbitrary, and capricious sentencing patterns).

---

[4]     While the context of Carpenter's assertion makes it appear that he limits his argument to his procedurally defaulted ineffective assistance of counsel claims, *see* 3d Am. Pet. 219, elsewhere Carpenter arguably suggests that he relies on the alleged ineffective assistance of state habeas counsel as "cause" as to any of his claims found to be procedurally defaulted, *id.* at 221. In an abundance of caution, the Director construes Carpenter's argument on this point as applying to all his procedurally defaulted claims.

Carpenter's attempts to circumvent the procedural bar to federal habeas review of his procedurally defaulted claims by showing cause and prejudice are entirely unavailing. That remains true notwithstanding the Supreme Court's recent holding in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). Carpenter's attempt to evade the procedural bar by showing that a miscarriage of justice will result if the Court does not reach the merits of his procedurally defaulted claims is equally unavailing. Further, to the extent Carpenter tries to evade the procedural bar by asking this Court to stay these proceedings—yet again—so that he may return to state court to exhaust previously unexhausted and now procedurally defaulted claims, or to relitigate claims he has already presented to the state courts, *see* 3d Am. Pet. 219–20, respectfully, his request is frivolous and should not be indulged. And insofar as Carpenter asks this Court to authorize DNA testing regarding Claim I (his due process claim concerning the trial court's exclusion of third-party perpetrator evidence), *see* 3d. Am. Pet. 69, his request is similarly meritless and should be denied.

Moreover, Carpenter's free-standing claims of actual innocence—Claims IV(A) and (B) (based on Smith's alleged recantation),VI (based on McBay's mental condition), and XII—are clearly not cognizable in these federal habeas proceedings. Insofar as Carpenter asks this Court to issue a ruling to the contrary, the doctrine of non-retroactivity precludes such relief. *Teague v. Lane*,

489 U.S. 288, 310 (1989). To the extent Carpenter "once again asserts the need for an evidentiary hearing to resolve the facts" regarding Claims IV(A) and IV(B) (Smith's alleged recantation), 3d Am. Pet. 122, the Court has already denied Carpenter's motion for an evidentiary hearing on his claims regarding Smith. *See* Pet'r's Reply Br. & Request Hr'g *passim*, ECF No. 56; Mem. Op. Den. Mot. Hr'g *passim*, ECF 61. Carpenter provides no reason for the Court to revisit the issue and none exists. Further, as the state courts adjudicated these claims on the merits, *see* SHCR-03 231 (para. 45), 244 (para. 92–94), *Cullen v. Pinholster* precludes this Court from considering any evidence that such a hearing might yield. 131 S. Ct. 1388, 1398 (2012) ("We hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). Regarding any issue not adjudicated on the merits by the state courts, Carpenter cannot meet the standard that would permit further factual development in federal court pursuant to 28 U.S.C. § 2254(e)(2). *(Michael) Williams v. Taylor*, 529 U.S. 420, 426 (2000). And in any event, sufficient facts exist for this Court to make an informed decision on the merits and therefore it should deny an evidentiary hearing as to any of Carpenter's procedurally defaulted claims. *Clark v. Johnson,* 227 F.3d 273, 284–85 (5th Cir. 2000).

Finally, none of Carpenter's claims possess merit. Under these circumstances, the Court should deny Carpenter relief in all things.

## STATEMENT OF THE CASE

### I.    Facts Of The Crime

The Texas Court of Criminal Appeals (CCA) accurately summarized the facts of the offense in its opinion on direct appeal:

> [I]n August of 1991, Evrin Smith hired [Carpenter] to murder Nelda Henin, the former girlfriend of Smith's lover, Gary Hall. At approximately 8:30 a.m. on August 28, 1991, [Carpenter] broke into Henin's home and cut her throat.
>
> As [Carpenter] was breaking into Henin's home, Henin was talking to her friend[,] Ricky Jackson[,] on the phone. She told Jackson to call the police because someone was breaking in her front door. After a few seconds of silence, Jackson hung up the phone and called the police, then drove to Henin's house. When he arrived, he found the police already there and told them about his conversation with Henin on the phone.
>
> Tessica Rainey saw [Carpenter] fleeing Henin's house that morning while driving herself and her younger brother to school. Rainey first noted Henin's alarm sounding, then saw [Carpenter] run from Henin's front porch. [Carpenter] jumped into his car and sped away, nearly sideswiping Rainey's car as he fled. He looked directly at Rainey as he drove past her.
>
> Bernard White, also on his way to school that morning, encountered Henin in her front yard a few minutes after the attack. He heard Henin's alarm sounding and saw her standing in her front yard, holding her neck, and waving him towards her. Realizing that Henin was bleeding profusely, White ran inside Henin's house to call for help. When he discovered the phone was dead, he ran to a neighbor's house and called 911. He then returned to Henin's house and waited outside for help to arrive.

Dallas Police Officer Verle Trammel arrived at Henin's house moments after White called. The alarm was sounding, the front door was open, and the door frame was shattered. Officer Trammel found Henin inside alone, lying on her living room floor and clutching a Bible. Her eyes were open, but she did not respond to the officer's questions.

The paramedics arrived shortly thereafter and immediately transported Henin to the hospital. They attempted to revive her, but she was pronounced dead minutes after arriving at the hospital.

Henin's murder remained unsolved for more than six years. In September of 1997, the police department renewed its investigation after receiving a tip from a confidential informant. Dallas Police Detective Kenneth Penrod oversaw the renewed investigation and contacted [Carpenter's] former live-in girlfriend, Mandee McBay, in response to the tip.

According to McBay, [Carpenter] wanted Henin's boyfriend. On the morning of the murder, [Carpenter] returned to the mobile home that he shared with McBay, entered their bedroom, and told McBay that he had just cut Henin's throat. [Carpenter] drew his bloody buck knife from his pocket and opened it, then handed McBay the knife along with his tennis shoes, instructing her to clean them both. He also told McBay that he had kicked in Henin's door. Smith had shown [Carpenter] where Henin lived. Smith visited [Carpenter] a couple of times at the mobile home after the murder but never paid him in full.

Based on the information obtained from McBay, Detective Penrod assembled a photographic line-up containing [Carpenter]'s picture and presented it to Tessica Rainey. Rainey identified [Carpenter] by his photograph as the man she saw fleeing from Henin's house on the morning of the murder.

Detective Penrod then contacted [Carpenter]'s aunt and cousin, Judy Carter and Becky Crisler. Smith had lived with Carter and worked with Crisler. According to Crisler, Smith had a sexual relationship with Gary Hall, Smith's supervisor. Hall was also dating and sometimes living with Henin. Smith became obsessed with Hall and Henin, following both of them after work and spying

on Henin's house several times a week. On one occasion, Smith asked Crisler if she thought [Carpenter] would kill Henin for her. After the murder, Smith asked Crisler not to report their conversation about hiring [Carpenter] to kill Henin. Crisler, nonetheless, did contact Crimestoppers shortly after the murder and made an anonymous report regarding Henin's "boyfriend's girlfriend."

When Detective Penrod interviewed Smith, she initially denied, then minimized her involvement in the murder. Eventually, she did admit her obsession with Hall and confessed to stalking Henin and hiring [Carpenter] to murder her. According to Smith, she agreed to pay [Carpenter] $1000 in installments of $100. She gave him a $100 advance payment. She also showed [Carpenter] where Henin lived and identified Henin's bedroom.

Smith professed that she telephoned [Carpenter] a couple of days after hiring him and called off the murder. [Carpenter] became angry and told her he needed the money. After he killed Henin, [Carpenter] called Smith, told her he had committed the murder, and demanded payment. Smith refused to pay [Carpenter], then went to his mobile home and demanded her $100 back. [Carpenter] became very angry, took another $20 from Smith, and threatened to harm her. Smith left but never made another payment. She was charged with criminal solicitation and testified against [Carpenter] at trial.

*Carpenter v. State*, No. 73,442, slip op. at *2–5 (Tex. Crim. App. Oct. 24, 2001).

## II.   Facts Regarding Punishment

The evidence that the State presented at the guilt-innocence phase of trial was damning in itself. It demonstrated that Carpenter battered down a stranger's front door, brutally slit her throat, and left her to bleed to death for

a paltry sum of cash[5] and the promise of "some nice jewelry" that he could steal. 26 RR 23. The autopsy photographs and medical examiner's testimony showed that Carpenter "cut Henin at least twice, that the wound was deep, and ran from ear to ear. In fact, the wound was so severe that when one of the paramedics rolled Henin's body over to treat her, he thought she had been decapitated." *Carpenter v. State*, slip op. at *9–10; *see also* 24 RR 106. The guilt-phase evidence additionally revealed that beforehand, Carpenter exhibited a "nonchalant" attitude about the prospect of murdering Henin, 26 RR 25; afterward, rather than exhibiting remorse, Carpenter asserted that "the bitch deserved it" and exalted in "the rush" of having brutally murdered another human being, 26 RR 31; *see also Carpenter v. State*, slip op. at *10 ("[Carpenter] acted according to a carefully calculated plan without hesitancy or remorse."). Henin's death moreover "took several minutes, as evidenced by testimony that she was walking around the neighborhood frantically looking for help as her

---

[5]      Evrin Smith testified that she agreed to pay Carpenter $1,000 for the murder, paid out over time, and gave him an initial payment of roughly $100. 26 RR 23, 26. Although Smith subsequently told Carpenter not to kill Henin, 26 RR 28, Carpenter did so anyway and came to Smith to collect more money, 26 RR 31–33. When Smith refused, he threatened her, telling her, "Don't fuck with me . ... Because I'll take all you bitches straight to hell with me. . . . You won't even see where you are going because you wouldn't even have a head to see where you are going and that would be the ultimate rush." 26 RR 33. Smith testified that all told, Carpenter received about $120 from her for Henin's murder. 26 RR 33.

neck bled profusely. Bernard White found Henin in a 'terrified' state, clutching her throat and unable to speak." *Carpenter v. State*, slip op. at *10.

At the punishment phase, the State introduced still more evidence suggesting that Carpenter presented a future danger to society. As a juvenile, Carpenter assaulted an eight-year-old boy by holding his head under water in the schoolyard fountain until the boy nearly drowned. 29 RR 254; 30 RR 26–32. Moreover, in a two year time period, Carpenter was convicted of four misdemeanors and three felonies, including two burglaries—the first a burglary of a building and the second, a burglary of a habitation. 28 RR 11–23; 29 RR 18–20, 26–36, 38–46. With each conviction, Carpenter received longer sentences. Yet he continued his crime spree undeterred, committing not only Henin's capital murder in a particularly violent and gruesome manner, but also endangering a child during an unrelated high-speed flight from police, for which he received a felony conviction. 28 RR 12–13; 29 RR 72–78.

In addition to Carpenter's criminal record, the State presented other evidence revealing Carpenter's violent personality. That evidence demonstrated that Carpenter sought confrontations; one such incident culminated in a bar brawl in which Carpenter was shot. 28 RR 33, 47. In prison, Carpenter assaulted fellow inmates. 29 RR 135–37, 148, 150–52, 183–84, 192–93, 200. The evidence showed that Carpenter was also violent and abusive in his domestic

relationships. McBay, Carpenter's live-in girlfriend when he murdered Henin, testified that Carpenter repeatedly physically and sexually assaulted her during their relationship. 28 RR 30–32; 40–42.

Testimony also revealed that Carpenter regularly solicited underage girls. Carpenter began a sexual relationship with Angel Terry when she was sixteen years old and he was nineteen, eventually impregnating her. 29 RR 245. Carpenter's sexual interest in underage girls was not a one-time occurrence, limited to Terry or to a time when Carpenter himself was in his late teens. Rather, Carpenter's sexual interest began to take a distinctly predatory turn. Carpenter began having sexual intercourse with McBay when he was twenty-one and she was twelve. 28 RR 27. And in August 1994, when he would have been just shy of his twenty-seventh birthday, Carpenter stalked his cousin's, Becky Crisler's, fourteen-year-old daughter Kacey and her drill teammates. He would follow them home from school, 29 RR 94–95, and would appear uninvited at practices and stare at them while they stretched to prepare for their work outs, 29 RR 94–96. When Crisler confronted him about stalking her daughter, Carpenter tried to run Crisler down with his truck. Carpenter later called Crisler, threatening to burn her house down if she caused him trouble with law enforcement. 28 RR 49. The second time Crisler confronted Carpenter about

stalking her daughter, he threatened to kill them all. 28 RR 47–49, 29 RR 94–100.

Even testimony from Carpenter's other relatives supported the State's punishment case. His father acknowledged that Carpenter was put on juvenile probation for the attempted drowning of the eight year-old. 29 RR 254. Carpenter's mother admitted that he had disciplinary problems and that she had to keep his father's guns locked away from him. 29 RR 268–70. And Crisler also testified that Carpenter failed to reimburse his grandmother for a truck loan. When other family members attempted to reclaim the truck, Carpenter threatened to kill his grandmother. 28 RR 45–46.

## III.   Conviction, Sentence, And Direct Appeal

In early 1999, a jury sitting in the 291st Judicial District Court of Dallas County, Texas, convicted Carpenter of Nelda Henin's 1991 capital murder. 27 RR 136. Pursuant to the jury's answers to the statutory special questions posed to it at the close of the punishment phase, the trial court, the Honorable Gerry Meier presiding, sentenced Carpenter to death. 1 CR[6] 127–29; 30 RR 82–84. On automatic direct appeal, the CCA affirmed Carpenter's conviction and sentence, rejecting the fifteen points of error raised by Carpenter's appellate counsel.

---

[6]   "CR" refers to the Clerk's Record of all pleading, motions, and other documents filed in the trial court under cause number F97-77949.

*Carpenter v. State*, slip op. *\*passim*. The Supreme Court of the United States denied Carpenter's petition for a writ of certiorari. *Carpenter v. Texas*, 535 U.S. 975 (2002).

## IV. Carpenter's First Round of State Habeas Proceedings

On August 30, 2000, Carpenter's appointed state habeas counsel, Travis Richard Alley, filed an initial state writ application pursuant to Texas Code of Criminal Procedure article 11.071. SHCR-01 2[7] (trial court order appointing Alley), 4–250 (initial state writ application). In the two hundred and thirty-page writ application, Alley raised forty-one points of error on Carpenter's behalf, SHCR-01 4–232, and offered sixteen pages of exhibits in support, SHCR-01 235–50. Pursuant to the state habeas court's order, SHCR-01 393, Alley thereafter filed a seventy-five page proposed findings of fact and conclusions of law, SHCR-01 399–473; *see* Tex. Code Crim. Proc. art. 11.071, 8(b). After granting Carpenter's April 2001 motion to substitute retained attorneys Gary Taylor and Alexander Calhoun, discharging Alley, and allowing Taylor and Calhoun to file supplemental proposed findings of fact and conclusions of law, SHCR-01 608, Judge Meier, who had also presided at trial, issued findings of fact and conclusions of law recommending that the CCA deny relief, SHCR-01

---

[7]    "SHCR" refers to the State Habeas Clerk's Record.  Citations to the State Habeas Clerk's Record are followed by the writ number (i.e., -01, -02, -03, -03 Supp., -04) and the page numbers.

474–604, 626–27 (order adopting the State's proposed findings of fact and conclusions of law).

After an independent review, the CCA determined that the record supported the state habeas court's findings of fact and conclusions of law, adopted those findings and conclusions in their entirety, and denied Carpenter state habeas relief. *Ex Parte Carpenter*, No. 49,656-01 (Tex. Crim. App. 2001) (Order dated Dec. 19, 2001).[8] Carpenter did not file a petition for certiorari seeking review of the CCA's denial of state habeas relief.

## V.   Federal Habeas Proceedings Begin: Carpenter Files His Original And First Amended Federal Habeas Petitions

On June 3, 2002, Taylor and Calhoun—the same attorneys who, upon Carpenter's request, were permitted to replace Alley in state habeas proceedings—initiated federal habeas proceedings by moving this Court to appoint them as Carpenter's federal habeas counsel. Pet'r's Mot. Appointment Counsel 2, ECF No. 1. The district clerk assigned the case to United States District Judge Barefoot Sanders, who referred it to United States Magistrate Judge William F. Sanderson. *See* Clerk's Docket Entry (June 3, 2002).

---

[8]    By a letter dated the same day as its decision, the CCA notified the trial judge of its action and enclosed its order denying Carpenter's initial state writ application. *Ex parte Carpenter*, No. 49, 656-01 (Tex. Crim. App. 2001) (letter dated Dec. 19, 2001). Alley (who had been expressly discharged by the trial court), Taylor, and Calhoun were each courtesy-copied on the letter. *Id.*

Magistrate Judge Sanderson declined to appoint Taylor and Calhoun, instead appointing one of Carpenter's two current attorneys of record. Order Granting Pet'r's Mot. Appointment Counsel *passim* (July 30, 2002), ECF No. 4 (appointing Bruce Anton).

In March 2003, Carpenter filed a skeletal federal habeas petition. Orig. Pet. *passim*, ECF No. 8. Concurrently with the skeletal petition, Carpenter filed a motion asking the Court's leave to file an amended or supplemental habeas petition on or before July 15, 2003.[9] Pet'r's Mot. Leave File *passim*, ECF. No. 7. The Director did not oppose the request. *Id.* at 5. Magistrate Judge Sanderson granted the motion. Order Granting Mot. Leave File *passim*, ECF No. 10. On

---

[9]     Because Carpenter has placed the performance of his writ counsel in issue, the Court should note the following. In the motion asking leave to file an amended petition, Carpenter asserted that he needed additional time to investigate and obtain additional supporting documentation regarding three claims—an allegation that an individual named Matthew Tolbert was involved in Nelda Henin's murder; an allegation that Evrin Smith had made statements that would negate Carpenter's role in the murder; and a claim that Carpenter and Mandee McBay were married at common law. Pet'r's Mot. Leave File 3–4.

As reasons for counsel's need for additional time, counsel cited his responsibilities in other cases. *Id.* at 4. Counsel also stated that Alley, Carpenter's original state habeas counsel "did not inform [Carpenter] that relief had been denied by the [CCA] and filed no documents within federal court to facilitate the appointment of federal counsel." *Id.* at 2. But the record demonstrates that Alley had been expressly discharged by the state habeas court and replaced by Taylor and Calhoun in April 2001, well before the CCA rendered its decision denying relief. *See* SHCR-01 608 (trial court order dated April 2001). Further, Taylor and Calhoun, who were notified of the CCA's action the same day that court rendered its decision, *see supra* note 8, initiated federal habeas proceedings in the district court in early June 2002 by seeking appointment as Carpenter's federal habeas counsel. Pet'r's Mot. Appointment Counsel *passim*, ECF No. 1.

July 14, 2003, Carpenter filed his first amended federal habeas petition, in which he raised nine claims for relief. 1st Am. Pet. *passim*, ECF No. 15. Those nine claims included an allegation that the state court denied him due process by not conducting a hearing to explore newly discovered evidence that Carpenter's co-defendant, Evrin Smith, allegedly confessed to the murder and exculpated Carpenter.[10] *Id.* at 54–57.

## VI.   Carpenter's Second Round Of State Habeas Proceedings

On July 18, 2003, four days after filing his first amended federal habeas petition, Carpenter filed his second state writ application. SHCR-02 2 (date stamp). Carpenter asserted two grounds for relief, arguing that newly discovered evidence regarding Smith would show that Carpenter was factually innocent of the underlying offense and that the prosecution obtained his conviction through

---

[10]    Taylor and Calhoun, who replaced Carpenter's original writ counsel, sent a Motion For Remand For Factual Development directly to the CCA after the district clerk had already forwarded the record pursuant to Texas Code of Criminal Procedure Article 11.071, § 9(f). The motion bears no file stamp, making it unclear whether this document was ever properly filed. In the motion, Taylor and Calhoun alleged that newly-discovered evidence showed that Smith had recanted. The motion contains only one of the affidavits on which Carpenter now relies, and the motion contained much additional evidence obscuring the alleged importance of this document. It is only when Carpenter's current counsel filed his second state habeas application that he clearly presented the claim regarding Smith to the state courts. *Ex parte Carpenter,* No. 49,656-02. As discussed below, Carpenter filed his second state writ application when his federal writ was pending, and therefore, the CCA dismissed the application on abstention grounds. *See Ex parte Carpenter,* No. 49,656-02, Order (Tex. Crim. App. 2003); *see also Jackson v. Johnson,* 950 F.2d 263, 266 (5th Cir. 1992) (discussing Texas's rule of habeas abstention).

her perjured testimony. *Id.* at 4. The CCA dismissed the application on abstention grounds, noting that Carpenter was then also challenging his conviction by way of a federal petition for writ of habeas corpus in this Court. SHCR-03 52 (Order dated Oct. 1, 2003).

## VII.   The First Stay Of These Federal Habeas Proceedings

Despite the CCA's October 2003 dismissal order advising Carpenter that abstention principles would not permit it to consider his allegations regarding Smith until he chose in which forum he would proceed, *id.*, Carpenter did not move to stay federal habeas proceedings to pursue the Smith claim in state court until April 2004, after the Director filed his January 2004 answer asserting that Carpenter's federal claim regarding Smith was unexhausted, procedurally defaulted, and lacked merit. *See* Resp't's Answer to 1st Am. Pet. & Mot. Summ. J, ECF No. 26 & Resp't's Br. 13–21, 33–37, ECF No. 27; *see also* Pet'r's [1st] Mot. Abate Appl. Relief *passim*, ECF No. 37. The Director did not oppose Carpenter's motion. On April 15, 2004, Magistrate Judge Sanderson entered an order staying these federal proceedings to allow Carpenter to exhaust his federal claim regarding Smith in state court by filing a third state writ application. Order Granting Pet.'s [1st] Mot. Abate *passim*, ECF No. 39. District Judge Sanders thereafter administratively closed the case. Order Directing Administrative Closure *passim*, ECF 43.

## VIII.  Carpenter's Third Round of State Habeas Proceedings

Through his current federal habeas counsel, Carpenter urged two claims regarding Smith in his third state writ application. SHCR-03 2. First, Carpenter argued that his conviction violated his interest in due process because it rested upon Smith's allegedly perjured testimony. *Id.* Carpenter contended that Smith had, following Carpenter's trial, made statements admitting sole responsibility for Nelda Henin's murder and exculpating him. *Id.* Carpenter next alleged that Smith's recantation established that he was actually innocent of the capital murder for which the jury convicted him. *Id.*

The CCA concluded that Carpenter's third writ application met the requirements of Texas Code of Criminal Procedure article 11.071, section 5(a), regarding subsequent writs and remanded it to the trial court for consideration. *Ex parte Carpenter*, No. 49,656-03 (Tex. Crim. App.) (Order dated Sept. 22, 2004). The state habeas court, the Honorable Susan Hawk now presiding, entered findings of fact and conclusions of law recommending that the CCA deny relief. SHCR-03 216–45, SHCR-03 Supp. 59–120, 123.[11]

---

[11]     The state habeas court appointed Anton as Carpenter's writ counsel and additionally appointed an investigator to assist Carpenter. SHCR-03 183. On July 10, 2006, the state habeas court entered findings of fact and conclusions of law recommending that the CCA deny relief. SHCR-03 216–45 (adopting the State's proposed findings of fact and conclusions of law).

The state habeas court then granted Carpenter, who had not submitted proposed factual findings and conclusions of law as previously ordered, SHCR-03 184, an extension of time to file additional affidavits and proposed findings of fact and

After an independent review of the record, the CCA adopted the state habeas court's findings of fact and conclusion of law, except for findings 124–37.[12] *Ex parte Carpenter*, No. 49,656-03 (Tex. Crim. App.) (order dated March 7, 2007). Based upon the state habeas court's findings and conclusions and its own review, the CCA denied relief. *Id.*

## IX. Federal Habeas Proceedings Resume: Carpenter Files His Second Amended Federal Habeas Petition

Following notice of the CCA's disposition of Carpenter's third state writ application, this case was transferred to United States District Judge Jane J. Boyle (hereafter, "the Court") due to District Judge Sanders's transfer to inactive status. *See* Clerk's Docket Entry (March 27, 2007). The Court reinstated the case, directed Carpenter to file an amended petition, and ordered the Director to file a response. *See* Scheduling Order, ECF No. 47. Carpenter then filed a document he entitled a "supplemental application for relief" (i.e., his second amended federal habeas petition). 2d Am. Pet. *passim*, ECF No. 48. Therein,

---

conclusions of law, if any. SHCR-03 Supp. 2. Carpenter filed additional affidavits, SHCR-03 Supp. 52–55, and proposed findings of fact and conclusions of law, SHCR-03 Supp 56–58. The State subsequently filed supplemental proposed findings of fact and conclusions of law and exhibits, SHCR-03 Supp. 59–120. The state habeas court adopted the State's supplemental findings of fact and conclusions of law and again recommended that the CCA deny Carpenter state habeas relief. SHCR-03 Supp. 123.

[12]     In Findings of Fact and Conclusions of Law 124–137, the state habeas court determined that none of Carpenter's habeas evidence raised in his third writ application was newly discovered. SHCR-03 Supp. 71–74.

22

Carpenter rebriefed his federal claim regarding Smith in light of his exhaustion of the claim in the state courts and the state courts' rejection of the claim on the merits. *Id.* In his reply to the Director's answer, Carpenter moved the Court to hold an evidentiary hearing on his federal claim regarding Smith. Pet'r's Reply Br. & Request Hr'g *passim*, ECF No. 56. The Court denied Carpenter's request for an evidentiary hearing. Mem. Op. Den. Mot. Hr'g *passim*, ECF 61. The Court thereafter referred the case to Magistrate Judge Sanderson for a recommendation. Order Referring Case, ECF No. 64.

## X.   The Second Stay Of These Federal Habeas Proceedings

Carpenter's case remained under advisement until the end of 2009, when he moved to stay these habeas proceedings a second time so that he might return to state court to exhaust a previously unexhausted claim or claims concerning Mandee McBay's mental state. Pet'r's [2d] Mot. Stay Proceedings & Hold Abeyance *passim*, ECF No. 65. In a response filed under seal, the Director opposed the second motion to stay on the merits and additionally objected that Carpenter had never moved to amend his second amended petition to include the new allegations involving McBay. Resp't's Resp. Opposition 7 n.5., ECF No. 75. The Court denied Carpenter's second motion to stay without prejudice, granting him leave to depose McBay and subsequently re-urge his second motion to stay

if he desired. Order Mot. Stay & Abate Proceedings 8–9 (Mar. 22, 2010), ECF No. 82.

Carpenter deposed McBay on May 5, 2010, with the Director in attendance through counsel. Oral Dep. Mandee [McBay], ECF No. 98. Following the deposition, the Court referred the case to Magistrate Judge Renee Harris Tolliver. *See* Clerk's Docket Entry (June 28, 2010). Carpenter then filed supplemental briefing in support of his second motion to stay. Supplement, ECF No. 85. The Director filed a supplemental response in opposition under seal, which included rebuttal affidavits from Kim Judin, the lead prosecutor at Carpenter's trial, and Kenneth Penrod, the lead detective on the case. Resp't's Supp. Resp. Opposition, ECF No. 86; *see* Order Granting Leave File Under Seal, ECF. No. 87. Carpenter objected to the Director's submission of Judin's and Penrod's rebuttal affidavits; alternatively, he sought further evidentiary development in federal court. Pet'r's Objections *passim*, ECF No. 88. Magistrate Judge Tolliver recommended that the Court stay the case to allow Carpenter to return to state court, but also recommended that the Court deny Carpenter's objection to Judin and Penrod's affidavits and also deny further evidentiary development in federal court. Findings & Recommendation Stay Proceedings *passim*, ECF No. 91. Over the Director's objection regarding a stay of these proceedings, ECF No. 92, the Court accepted Magistrate Judge Tolliver's

24

recommendation and stayed the case to allow Carpenter to exhaust his claim or claims relating to McBay in state court, Order Accepting Findings & Recommendation & Granting Stay *passim* (Oct. 25, 2010), ECF No. 94.

## XI. Carpenter's Fourth Round of State Habeas Proceedings

Carpenter filed his fourth state writ application and supporting exhibits, which included McBay's May 5, 2010 oral deposition. SHCR-04 1–36 (fourth state writ application), 38–358(exhibits). Carpenter's exhibits did not include prosecutor Judin's or Detective Penrod's rebuttal affidavits. *See* SHCR-04 38–358. The CCA dismissed Carpenter's state writ application concerning McBay as a subsequent application that did not satisfy any of the exceptions to the prohibition against such writs set forth in Texas Code of Criminal Procedure Article 11.071, section 5. *Ex parte Carpenter*, No. 49,656-04 (Tex. Crim. App.) (Order dated May 11, 2011).

## XII. Federal Habeas Proceedings Resume Again: Carpenter Files His Third Amended Federal Habeas Petition

Carpenter notified this Court that the CCA had disposed of his fourth state writ application. Notice Resolution State Claims *passim*, ECF No. 104. A month later, he filed a second motion for an evidentiary hearing. Pet'r's 2d Mot. Evid. Hr'g, ECF No. 106. Therein, Carpenter simply "request[ed] an evidentiary hearing on the issues raised in his writ and request[ed] the opportunity to present evidence in support of his claims." *Id.* at 1.

This Court reopened these federal habeas proceedings and referred the case and Carpenter's second motion for an evidentiary hearing to Magistrate Judge Tolliver. Order Reopening Proceedings & Referring Case, ECF No. 107. The State's response in opposition to Carpenter's second motion for an evidentiary hearing followed. Resp't's Resp. to Pet'r's 2d  Mot. Evid. Hr'g *passim*, ECF No. 106.

To the extent Carpenter asked the Court to revisit its decision denying his first motion for an evidentiary hearing (i.e., his motion concerning the claims contained in his first amended petition filed in 2007), the Director asserted that Carpenter provided no reason to do so, and asked the Court to accordingly deny the motion with prejudice. *Id.* at 2. To the extent Carpenter asked the Court to grant an evidentiary hearing on the allegations that were the subject of his second motion to stay and abate these habeas proceedings, filed in 2009, the Director argued that Carpenter's motion was premature and should be denied without prejudice. *Id.* at 2–3. Specifically, the Director argued that Carpenter had not yet—as Federal Rule of Civil Procedure 15 required—sought and obtained the Court's leave to file a second amended petition for habeas relief, in which he actually pleaded the claim or claims that were the focus of his 2009 motion to stay these proceedings. *Id.* Unless and until Carpenter amended his first amended petition, the Director argued, the allegations that were the

subject of his 2009 motion to stay these proceedings were not actually before the Court; thus, both the Court and the Director were left to guess at the exact nature of his federal claim(s). *Id.* at 3. Further, the Director argued, should Carpenter seek and obtain leave to file another amended petition, the Director should be allowed to file an amended answer and Carpenter should be allowed to reply according to a briefing schedule the Court established. *Id.*

Magistrate Judge Tolliver denied Carpenter's second motion for an evidentiary hearing on the grounds that Carpenter had failed to set forth sufficient grounds to warrant a hearing, but had instead merely asserted the conclusion that the Supreme Court's holding in *Pinholster*, *supra*, did not preclude one. Order Den. Pet'r's [2d] Mot. Evid. Hr'g 1, ECF No. 113. Magistrate Judge Tolliver further noted that "an amended petition is expected and the Court agrees with [the Director] that the instant motion should be denied without prejudice to the refiling of same when the amended petition is filed." *Id.*

The Director thereafter filed a motion requesting the Court to enter his attached proposed scheduling order. Resp't's Mot. Enter Proposed Scheduling Order, ECF No. 116. After a telephonic consultation with the parties, the Court entered the Scheduling Order. Scheduling Order *passim* (Jan. 3, 2012), ECF No. 117. Pursuant to that order, Carpenter filed his third amended petition on

March 2, 2012. 3d Am. Pet. *passim*, ECF No. 119. The Director's Answer
follows.

## THE DIRECTOR'S ANSWER, WITH BRIEF IN SUPPORT

Carpenter, confined pursuant to a state-court judgment, is entitled to
federal habeas relief "only on the ground that he is in custody in violation of the
Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).
Where claims were exhausted in state court, under 28 U.S.C. § 2254(d), a
federal court may not issue a writ of habeas corpus for a defendant convicted
under a state judgment unless the adjudication of the relevant constitutional
claim by the state court, (1) "'was contrary to' federal law then clearly
established in the holdings of' the Supreme Court; or (2) "'involved an
unreasonable application of'" clearly established Supreme Court precedent; or
(3) "'was based on an unreasonable determination of the facts' in light of the
record before the state court." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011)
(quoting *(Terry) Williams v. Taylor,* 529 U.S. 362, 412 (2000)); 28 U.S.C.
§2254(d). The Supreme Court has explained that a state court decision is
"contrary" to established federal law if the state court "applies a rule that
contradicts the governing law set forth in [the Supreme Court's] cases," or
confronts facts that are "materially indistinguishable" from a relevant Supreme

Court precedent, yet reaches an opposite result. *(Terry) Williams*, 529 U.S. at 405–06.

A "run-of-the-mill" state-court decision applying the correct Supreme Court rule to the facts of a particular case is to be reviewed under the "unreasonable application" clause. *Id.* at 406. To this end, a state court unreasonably applies Supreme Court precedent only if it correctly identifies the governing precedent but unreasonably applies it to the facts of a particular case. *Id.* at 407–09. And as the Supreme Court recently described this deferential standard, in order to determine if the state court made an unreasonable application, a federal court "must determine what arguments or theories supported or . . . *could have supported*, the state court's decision; and then it must ask *whether it is possible fairminded jurists could disagree that those arguments* or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 131 S. Ct. at 786 (emphasis added). Indeed, this is the "only question that matters under § 2254(d)(1)." *Id.*

Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the state court's decision. *Richter,* 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Woodford v. Visciotti,* 537 U.S. 19, 27 (2002) (federal habeas relief is merited only where the

state-court decision is both incorrect and objectively unreasonable, "whether or not [this Court] would reach the same conclusion"). Moreover, "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Alvarado*, 541 U.S. at 664; *Renico v. Lett*, 130 S. Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."). This is particularly true when reviewing a state court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), which when analyzed in conjunction with §2254(d) creates a difficult-to-surmount, "doubly" deferential assumption in favor of the state court denial. *Richter*, 131 S. Ct. at 786.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786.

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility fairminded jurists could disagree* that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against *extreme malfunctions* in the state criminal justice systems," *not a substitute for ordinary error correction through appeal.*

*Id.* (emphasis added) (internal citations omitted).

30

Moreover, it is the state court's "ultimate decision" that is to be tested for unreasonableness, and not every jot of its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *Santellan v. Cockrell,* 271 F.3d 190, 193 (5th Cir. 2001); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (". . . we review only the state court's decision, not its reasoning or written opinion . . . ."). Indeed, state courts are presumed to know and follow the law. *Visciotti*, 537 U.S. at 24. And, even where the state court fails to cite to applicable Supreme Court precedent or is unaware of such precedent, AEDPA's deferential standard of review nevertheless applies "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Richter*, 131 S. Ct. at 786.

If the Supreme Court has not "broken sufficient legal ground to establish [a] . . . constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar" under either the contrary to or unreasonable application standard. *(Terry) Williams*, 529 U.S. at 381. Stated differently:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there *was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

31

*Richter*, 131 S. Ct. at 786–87 (emphasis added). And a federal court must be wary of circumstances in which it must "extend a [legal] rationale" of the Supreme Court "before it can apply to the facts at hand" because such a process suggests the proposed rule is not clearly established. *Alvarado,* 541 U.S. at 666.

AEDPA also provides that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001).[13] A reviewing court accords deference to determinations of credibility made by the factfinder; this deference also extends to findings based on "physical or documentary evidence or inferences from other facts." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574(1985).

And except for the narrow exceptions contained in § 2254(e)(2), the evidence upon which a petitioner would challenge a state-court fact finding must have been presented to the state court. *Pinholster*, 131 S. Ct. at 1398. Because a federal habeas court is prohibited from granting relief unless a

---

[13]     Federal courts review questions of law and mixed questions of law and fact under (d)(1) and review questions of fact under (d)(2). *Martin v. Cain,* 246 F.3d 471, 475 (5th Cir. 2001).

decision was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," it follows that demonstrating the incorrectness of a state-court fact finding based upon evidence not presented to the state court would be of no avail to a habeas petitioner. 28 U.S.C. § 2254(d)(2). "It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively de novo. . . . It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Pinholster*, 131 S.Ct. at 1399.

Moreover, where a habeas petitioner has failed to fully develop the factual bases of his claims in state court, he is precluded from further factual development in federal court unless (1) his claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) he establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2). A failure to meet this standard of "diligence" will bar a federal evidentiary hearing in the absence of a convincing claim of actual innocence that can only be established by newly discovered evidence.

33