# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AT DALLAS

---

## 3:02-CV-1145-H

## DAVID LYNN CARPENTER,
**Applicant,**

## VS.

## STATE OF TEXAS,
**Respondent.**

---

## PETITIONER'S REPLY TO RESPONDENT'S ANSWER AND SUPPLEMENTAL BRIEFING AND REQUEST FOR ORAL ARGUMENT

---

MARY MARGARET PENROSE
State Bar No. 00788179

Texas Wesleyan University
School of Law
1515 Commerce Street
Fort Worth, TX 76102
(972) 310-8669
(972) 943 3578 (fax)
mpenrose@law.txwes.edu

BRUCE ANTON
State Bar No. 01274700

SORRELS UDASHEN &ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
(214) 468-8100
(214) 468-8104 (fax)
ba@sualaw.com
Attorneys for Petitioner

## TABLE OF CONTENTS

**TABLE OF CONTENTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**INDEX OF AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-v

**INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**UNDISPUTED FACTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**APPLICATION OF *MARTINEZ V. RYAN*.**. . . . . . . . . . . . . . . . . . . . . . . . . 10

**CARPENTER IS NOW ENTITLED TO DEVELOP A RECORD
TO FURTHER SUPPORT HIS CLAIMS**.. . . . . . . . . . . . . . . . . . . . . . . . . . **45**

**CARPENTER'S COMPLAINT ABOUT MCBAY/CARPENTER'S
MENTAL IMPAIRMENT IS NOT SOLELY COUCHED IN AN
ACTUAL INNOCENCE CLAIM BUT IS PROPERY ADDRESSED
AS A FREESTANDING *BRADY v. MARYLAND* CLAIM OR A
*MARTINEZ v. RYAN* CLAIM**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

**CLAIMS RESCUED BY *MARTINEZ V. RYAN*.**. . . . . . . . . . . . . . . . . . . . . **50**

**APPLICATION OF CULLEN V. PINHOLSTER**. . . . . . . . . . . . . . . . . . . . . 50

**UNREASONABLENESS OF COURT FINDINGS UNDER §2254(d)(2)**. . . . 61

**PRAYER**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

**CERTIFICATE OF SERVICE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

## INDEX OF AUTHORITIES

### Cases

*Aleman v. Sternes*, 320 F.3d 687 (7th Cir. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . 56

*Bone v. State*, 77 S.W.3d 828 (Tex. Crim. App. 2002). . . .   11, 13-14, 18, 20, 23-24

*Brady v. Maryland,* 373 U.S. 83 (1963).  . . . . . . . . . . .   7-8, 18, 37-41, 45-47, 64-65

*Burger v. Kemp*, 483 U.S. 776 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Chambers v. Mississippi*, 410 U.S. 284 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388 (2011).. . . . . . .   2, 50, 54, 56, 58-60

*Ex Parte Torres*, 943 S.W.2d 469 (Tex. Crim. App. 1997).. . . . . .   11-14, 16-21, 24

*Felder v. Johnson,* 180 F.3d 206, 212 (5th Cir.1999). . . . . . . . . . . . . . . . . . . . . . . 46

*Fry v. Pliler*, 551 U.S. 112 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 56-57

*Harrington v. Richter*, 131 S.Ct. 770 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 57, 62

*Hearn v. Ryan*, 2011 WL 1526912 (D. Ariz April 21, 2011). . . . . . . . . . . . . . . . . 58

*Horn v. Banks*, 536 U.S. 266 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Irvin v. Dowd*, 359 U.S. 394 (1959).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Lockyer v. Andrade*, 538 U.S. 63 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

*Lopez v. State*, 343 S.W3d 137 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . 11, 20-21

*Martinez v. Ryan*, 566 U.S. __ (2012). 1-3, 8, 10-12, 24-24, 27, 29-31, 35-36, 48-50

*Mitchell v. State*, 68 S.W3d 640 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . 14

*Morris v. Thaler*, 2011 WL 1886096 (5th Cir. May 18, 2011). . . . . . . . . . . . . . . . 58

*Panetti v. Quarterman*, 551 U.S. 930 (2007). . . . . . . . . . . . . . . . . . . . . 38, 57, 62-63

*Rompilla v. Beard*, 545 U.S. 374 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 25-26

*Rose v. Lee*, 252 F.3d 676 (4th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Scott v. Harris*, 550 U.S. 372 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43-44

*Strickland v. Washington*, 466 U.S. 668 (1984).  . . . . . . . . . . . 27, 29, 32-33, 51, 62

*Thompson v. Texas*, 9 S.W.3d 808
(Tex. Crim. App. 1999). . . . . . . . . . . . . . . . . . . . . . . . . 11, 13-14, 17-18, 20-21, 24

*Trevino v. Thaler* 449 Fed.Appx. 415, 424, 2011 WL 5554816, 7
(5th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*United States v. Erwin*, 277 F.3d 727, 731-32 (5th Cir. 2001). . . . . . . . . . . . . . . . 38

*United States v. Sullivan*, 112 F.3d 180, 183 (5th Cir. 1997). . . . . . . . . . . . . . . . 38
citing *United States v. Agurs*, 427 U.S. 97, 112-13 (1976)

*U.S. v. Wall*, 398 F.3d 457, n. 6 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Snoddy*, 862 F.2d 1154, 1156 (5th Cir. 1989) (quoting *United
States v. Kahn*, 472 F.2d 272, 287 (2d Cir. 1973)). . . . . . . . . . . . . . . . . . . . . . . . 38

*Wiggins v. Smith*, 539 U.S. 510 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . 3, 25-26, 28

*Williams v. Taylor*, 529 U.S. 362 (2000). . . . . . . . . . . . . . . . . . . . . . . . 3, 25-26, 53

*Woodford v. Garceau*, 538 U.S. 202 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

## Codes and Rules

28 U.S.C. § 2241. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

28 U.S.C. § 2254(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52-53

28 U.S.C. § 2254(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53, 57-58

28 U.S.C. § 2254(b)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

28 U.S.C. § 2254(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 51, 54-55

28 U.S.C. § 2254(d)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54-55, 57-60

28 U.S.C. § 2254(d)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 45, 60-62

## Miscellaneous

James S. Liebman & Randy Hertz, 2 Federal Habeas Corpus Practice and
Procedure § 30.1 (5th ed. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AT DALLAS

_____

## 3:02-CV-1145-H


## DAVID LYNN CARPENTER,
**Applicant,**

## VS.

## STATE OF TEXAS,
**Respondent.**
_____

## PETITIONER'S REPLY TO RESPONDENT'S ANSWER AND
## SUPPLEMENTAL BRIEFING
## AND REQUEST FOR ORAL ARGUMENT
_____


COMES NOW, Petitioner David Carpenter ("Carpenter"), by and through his

counsel of record and files this his Reply to Respondent's Answer and Supplemental

Briefing and Request for Hearing and Oral Argument in this case. The main issues

addressed include: (1) the United States Supreme Court's recent decisions in *Martinez

v. Ryan*, 566 U.S. ____ (2012); and, (2) the reasons that *Martinez* and Carpenter's

prior filings empower this Court to grant Carpenter's requested habeas relief. For the

reasons set out below, and the reasons previously urged in this Court, Carpenter

respectfully requests that this Court GRANT his request for habeas relief in all respects.

## INTRODUCTION

Carpenter filed his amended writ on March 1, 2012.  Respondent filed their answer May 1, 2012, arguing, *inter alia*, that all  Carpenter's evidentiary claims are defaulted.  In the interim, however, the United States Supreme Court has issued another relevant and applicable case, *Martinez v. Ryan*, *supra*.  While *Cullen v. Pinholster*, — ___U.S.___, 131 S.Ct. 1388 (2011)  seemingly limits federal courts' ability to consider evidence and materials not evaluated by the state court during its habeas proceedings, *Martinez* permits such consideration where the lack of presentation results directly from the ineffective assistance of counsel during state habeas proceedings.

Because Carpenter received ineffective assistance of counsel during his state habeas proceedings, particularly because state habeas counsel failed to adduce evidence supporting Carpenter's claims and, further, failed to assert viable claims relating to the ineffective assistance of trial counsel, shortcomings in the lone eyewitness testimony – including overly suggestive identification procedures; the third-party perpetrator claim; and, as recently discovered in 2009, the fact that the Prosecution in this case knowingly withheld material, exculpatory evidence regarding

Mandee McBay/Carpenter, this Court should both receive and consider evidence regarding Carpenter's allegations that both trial counsel was and state habeas counsel were constitutionally ineffective.

As this Reply further demonstrates, this Court should consider Carpenter's allegations that trial counsel was constitutionally ineffective for failing to investigate and present mitigation evidence as required by *Williams v. Taylor*, 529 U.S. 362 (2000), *Wiggins v. Smith*, 539 U.S. 510 (2003) and *Rompilla v. Beard*, 545 U.S. 374 (2005). State habeas counsel's failure to properly raise and support this claims, and the others identified herein, with evidence of trial counsel's numerous failings constitutes ineffective assistance during the state habeas proceedings. *Martinez*, as recently decided, provides Carpenter with one real and meaningful opportunity to have his ineffective assistance of trial counsel claims heard in a tier-one review. As state habeas counsel failed to present these claims, and such lapses were the result of constitutionally ineffective assistance of counsel, these Court is not barred from either receiving evidence or resolving these claims in the first instance.

Admittedly, *Martinez* is new precedent and federal courts are still grappling with its many consequences. For this reason, and for the reasons that follow, Carpenter respectfully requests this Court GRANT oral argument to allow him to

properly develop the record in this case.[1]

In addition, state habeas counsel was ineffective in failing to properly raise and support Carpenter's claims that trial counsel was , constitutionally ineffective for failing to properly raise and establish the Due Process violation Carpenter suffered during  trial. State habeas counsel had notice that a third party perpetrator had admitted to the murder, but failed to properly raise and support that claim in the state application.  Throughout these proceedings, Carpenter has continually maintained his factual innocence.  No legitimate reason can be proffered by state habeas counsel for failing to assert claims supporting Carpenter's factual innocence, particularly when a third party confesses to the very crime Carpenter was wrongly convicted of.

Notably, there is no physical evidence connecting Carpenter to the offense. Yet, the crime scene was extremely graphic with a great deal of blood, body fluids and hair strung throughout the scene.  While all these materials were tested, none of them – absolutely none of them – link Carpenter to this crime.  With modern DNA technology aiding law enforcement, it is telling that none of the vast physical evidence

---

[1]Carpenter is not insensitive to Judge Edith Jones' previously indicated displeasure with the seemingly glacial pace that federal habeas cases require.  However, Carpenter respectfully requests that this Court view Carpenter's claim as they are presented, and not allow Judge Jones' comments or directives to influence any right Carpenter might demonstrate to a hearing or further presentation of evidence.  Carpenter's counsel has never sought to delay these proceedings.  Rather, Carpenter's counsel recognizes the vital importance and finality of the ultimate penalty imposed in this case – particularly when counsel believe the evidence proves their client to be factually innocent of this crime.  The wheels of justice do, indeed, move slowly.  But slow, deliberative process is what the Constitution affords all individuals.  As the Supreme Court has reminded, "[o]ur duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case." *Burger v. Kemp*, 483 U.S.

in this case has ever linked Carpenter to the crime. All the blood that was tested – not a match. All the hair samples that were tested – not a match. All the remaining fluids, fingerprints and other physical evidence – no match. Literally no physical evidence even suggests, much less proves, Carpenter's involvement in this crime.

Thus, evidence that the offense was committed by another individual would have undoubtedly resulted in an acquittal, if properly raised and supported at trial. However, trial counsel failed to preserve the error by making a proper objection and failed to adequately investigate the evidence which pointed to Matthew Tolbert as the true perpetrator. Likewise, state habeas counsel did not properly frame the issue as a Due Process violation and utterly failed to investigate the claim. Now, Carpenter finds himself at the edge of execution for a crime that he did not commit, and for a crime that another has confessed to committing. All of this looming despite the remarkable fact that absolutely no physical evidence ties Carpenter to this crime. Despite literally a sea of physical evidence, Respondent has never been able to connect Carpenter to this crime through physical evidence. The only "link" to this crime then becomes the State's vulnerable house of cards that federal habeas counsel have demonstrate tumble easily with any investigative effort.

State habeas counsel was also ineffective in failing to properly challenge the lone eyewitness identification evidence offered at trial. State habeas counsel knew, or

should have known, that the identification procedures utilized by the police were impermissibly suggestive, and that readily available witnesses would have testified that Carpenter did not match the description initially given.   Despite both the importance of this issue and the easy available of evidence on point, state habeas counsel failed to produce any evidence  supporting this claim to the state reviewing court. Had state habeas counsel properly investigated Carpenter's state habeas claims, he would have recognized that this claim, and the third party perpetrator Due Process claim were foundational in dismantling the State's house of cards.

Carpenter was "identified" by a teenager who briefly observed a possible suspect only  while driving in her car.   Her description  grossly fails to resemble Carpenter, whom she was led to identify years later through use of a suggestive photo lineup. With all due respect, Carpenter is – and always has been – a very large man, both from a height and weight perspective.  Yet, the lone eyewitness gave details that misidentified Carpenter's physical appearance (thin) and his physical features (light hair despite Carpenter's dark features).  Given that there is absolutely no physical evidence linking Carpenter to the crime, the jury undoubtedly placed undue emphasis on the purported eyewitness identification, an identification that was inherently suspect and unreliable. Had the improprieties of, and deficiencies in, the identification process been presented to the jury, an acquittal would surely have been obtained.

Finally, state habeas counsel was ineffective in failing to properly raise and support Carpenter's claim that Mandee McBay/Carpenter had significant memory, mental and emotional ailments which impaired her ability to recall the "confession" that Carpenter allegedly made to her. The prosecution was aware of McBay/Carpenter's problems, her use of psychotropic medications and her mental and emotional disabilities. In the alternative, Carpenter alleges these memory, mental and emotional ailments, all of which were known to the prosecution prior to and during Carpenter's trial were not timely disclosed to the defense by the prosecution in violation of *Brady v. Maryland*.

Mandee McBay/Carpenter's impaired testimony, now known to be unreliable, resulted in grave prejudice against Carpenter. At the time of the offense, McBay/Carpenter was suffering from hallucinations. She was taking psychotropic medications to aid her serious mental disability. By the time of trial, due to medication, McBay/Carpenter was also suffering from memory loss, which severely undermined the accuracy of her testimony. Although the prosecutor was fully aware of the serious nature of McBay/Carpenter's mental condition, and even encouraged her testimony despite knowledge of its unreliability, defense counsel was never provided with this exculpatory information in violation of *Brady*. Assuming that this information was discoverable by State habeas counsel, state habeas counsel's failure

to discover and assert this claim has prejudiced Carpenter.

Following *Martinez v. Ryan*, this Court can - and should - receive and review these significant claims defaulted by the unconstitutionally deficient performance of state habeas counsel.  Throughout these proceedings, Respondent has continually argued that most, if not all, of Carpenter's claims are "procedurally defaulted" and should not be considered on the merits by this Court.

*Martinez v. Ryan*, which emphasizes the importance of one fair assessment of the right to the effective assistance of counsel, counteracts the "procedural default" objection so frequently asserted by Respondent Thaler. This Court, following *Martinez*, has the right to hear and resolve Carpenter's claims.  In light of the state record, it becomes painfully clear that Carpenter received far less than even the rudimentary right to counsel both during trial and his state habeas corpus proceedings.

## UNDISPUTED FACTS

1.     There is no physical evidence of  Carpenter's guilt.

2.     There was an enormous amount of blood, body fluids and hair samples at the crime scene, none of which tie Carpenter to this crime.

3.     There were numerous fingerprints at the crime scene obtained by police, none of which tie Carpenter to this crime.

4.     There were several footprints found at the crime scene, none of which link

Carpenter to this crime.

5.   The State evaluated all of the physical evidence from the crime scene and sought to establish a DNA match to Carpenter.  However, none – absolutely none – of the evidence matched or even implicated Carpenter in this murder.

6.   Another individual has confessed to committing this murder.

7.   Carpenter maintains his actual innocence to this crime.

8.   Carpenter was linked to the crime by three witnesses:

   a.   Evrin Smith, an alleged co-conspirator who said she hired  Carpenter to commit the murder;

   b.   Mandee McBay/Carpenter, the mother of Carpenter's children who said that Carpenter "confessed" to her; and,

   c.   Jessica Rainey, a teenager who made a belated, extremely unreliable identification of a tall, skinny light-haired man as being in the neighborhood at the time of the murder.

9.   Trial counsel did not employ a mitigation expert, despite existing ABA and local standards indicating the propriety and advisability of such expert.

10.   State habeas counsel did not challenge trial counsel's failures regarding the problematic, lone eyewitness testimony in this case.

11.   State habeas counsel did not challenge trial counsel's failures regarding the

third party perpetrator.

12.      McBay/Carpenter had severe mental illness and impairments, as demonstrated

through her deposition testimony, prior to and during Carpenter's trial.

13.      McBay/Carpenter testified that the prosecutor knew she required medication.

## APPLICATION OF *MARTINEZ v. RYAN*

I.      **Request for Additional Evidence and Oral Argument on Applicability of** *Martinez v. Ryan*

Carpenter respectfully requests a hearing regarding the applicability of *Martinez*

*v. Ryan* to his case. A logical extension of *Martinez* counsels that this Court should

ignore Respondent Thaler's numerous pleas for "procedural default" of such important

issues as trial counsel's ineffective assistance of counsel for failure to investigate and

support claims for mitigation, claims regarding the third party perpetrator; claims

regarding counsel's failure to properly challenge the sufficiency of the lone

eyewitness testimony; and, the known, and withheld, mental and emotional

incompetence of the state's key witness, McBay/Carpenter.

Carpenter respectfully requests the opportunity to present evidence and oral

argument concerning the actual law and practice in Texas regarding the ability of

death penalty convicts to raise the issue of ineffective assistance of counsel through

a Motion for New Trial or on Direct Appeal, evidence that is critical to *Martinez's*

applicability in this case. Carpenter will present several Board Certified Criminal

Defense Attorneys to prove that the law and practice in Texas is remarkably similar to that addressed in *Martinez v. Ryan*. If this Court is inclined to address *Martinez* and its application to this case, Carpenter respectfully requests a full opportunity to present live witnesses that can be cross-examined on the issue.

The Texas Court of Criminal Appeals has set forth the actual practice in Texas courts regarding ineffective assistance of counsel claims on numerous occasions. *See Ex Parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997); *Thompson v. Texas*, 9 S.W.3d 808, 813-814 (Tex. Crim. App. 1999); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Lopez v. State*, 343 S.W3d 137, 143 (Tex. Crim. App. 2011). Carpenter seeks oral argument to present evidence of Texas practice, particularly as it relates to Texas death penalty litigants challenging trial counsel's duty to investigate and present mitigating evidence and due process claims. Carpenter asserts that the statutory mandate in *Martinez* is nearly identical to the actual practice in Texas.

Carpenter's witnesses can testify to the similarities between the Texas system and the Arizona system and, thus, the applicability of *Martinez v. Ryan*.

## II.    Texas Case Law Demonstrating Applicability of Martinez v. Ryan

The governing standard in Texas, even in ordinary cases, remains that which has been set forth in *Ex Parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997):

> Generally, a claim which was previously raised and rejected on direct appeal is not cognizable on habeas corpus. However, this doctrine should not be applied where direct appeal cannot be expected to provide an adequate record to evaluate the claim in question, and the claim might be substantiated through additional evidence gathering in a habeas corpus proceeding. In most instances, the record on direct appeal is inadequate to develop an ineffective assistance claim. Moreover, the inadequacy of the appellate record in these situations is due to the inherent nature of most ineffective assistance claims. The very ineffectiveness claimed may prevent the record from containing the information necessary to substantiate such a claim. Moreover, the trial record ordinarily does not reflect counsel's reasons for doing or failing to do actions of which the defendant complains. While expansion of the record may be accomplished in a motion for new trial, that vehicle is often inadequate because of time constraints and because the trial record has generally not been transcribed at this point. Further, mounting an ineffective assistance attack in a motion for new trial is inherently unlikely if trial counsel remains counsel during the time required to file such a motion. Hence, in most ineffective assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims.

*Id.* (internal citations omitted).

The *Torres* language is repeated in numerous cases authored by the Texas Court of Criminal Appeals. *See Thompson v. State*, 9 S.W.3d 808, 813-814 (Tex. Crim. App. 1999)(A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. In the majority of instances, the record on direct appeal is simply

undeveloped and cannot adequately reflect the failings of trial counsel"); *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002)("Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional.  As this Court recently explained, rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of a such a serious allegation:  '[i]n the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel.'" (citing *Thompson*, *supra*)).

Carpenter's circumstance is precisely the scenario covered under *Martinez v. Ryan*.  566 U.S. ____ (2012).  In all practicality, the first and only option for a Texas death penalty convict to assert claims of ineffective assistance of trial counsel, specifically the duty to investigate, is through the state writ process.  *See Torres*, 943 S. W. 2d at 475 (reminding that "in most ineffective assistance of counsel claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims"); *see also*, *Thompson*, 9 S.W.3d at 813-814; *Bone*, 77 S.W.3d at 833.  Since most Texas death penalty cases have extensive transcripts, including voir dire, often going into 40 to 50 volumes, there is no possible way that a transcript will be available during the 30-day period for New Trial.  *See Torres*, 943 S. W. 2d

at 475. Likewise, since matters of strategy can never be resolved from the trial transcript standing alone, there is no legitimate way to present these claims prior to a thorough investigation of the record and evaluation of trial counsel's conduct. *Id.*; *see also Mitchell v. State*, 68 S.W3d 640, 642 (Tex. Crim. App. 2002)(reminding that "[t]he reasonableness of counsel's choices often involves facts that do not appear in the appellate record"). This reality negates Carpenter's option to present his ineffective assistance of counsel claims via either Motion for New Trial or on direct appeal. *Torres*, 943 S. W. 2d at 475 (inadequacy of the appellate record is usually a result of ineffectiveness)[2]

Carpenter asserts, similar to *Martinez*, that "[Texas] law, however, did not permit [ Carpenter] to argue on direct appeal that trial counsel was ineffective. . . . " [Texas] instead [for all practical purposes] requires claims of ineffective assistance at

---

[2]The two instances where habeas counsel located capital cases with ineffective assistance claims asserted on direct appeal do not undercut Petitioner's argument. *See Tong v. State*, 25 S.W.3d 707, 714 n. 10 (Tex. Crim. App. 2000)(explaining that "[b]ecause a record focused on the conduct of trial counsel is not typically developed at trial, it is often difficult to review an effective assistance of counsel claim on direct appeal. Hence, these claims are usually better raised in an post-conviction application for a writ of habeas corpus. In such an instance, prior rejection of the claim on direct appeal will not bar relitigation of the claim to the extent that an applicant gathers and introduces evidence not contained in the direct appeal record."); *Scheanette v. State*, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004)(reminding that "rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation [as ineffective assistance of counsel]: 'in the majority of cases, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel.' A reviewing court can frequently speculate on both sides of an issue, but ineffective assistance claims are not built on retrospective speculation; rather, they must 'be firmly founded in the record.'") Both capital cases suggest that truncated review of ineffective assistance claims before a Texas appellate court is disfavored. Petitioner's witnesses he will present during Oral Argument, if granted, will further testify that such review has literally been denied as not ripe for consideration in nearly all instances because the appellate court recognizes that an incomplete record precludes an accurate determination of non-record errors. A good example of this latter approach is *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999), wherein the Court of Criminal Appeals explains that it is "not deciding on this direct appeal, therefore, that appellant did or did not receive the effective assistance of counsel." *Id.*

trial to be reserved for state collateral proceedings." *Martinez*, 132 S. Ct. at 1314.

The *Martinez* Court continues:

> Where, as here, the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim . . . .
>
> Claims of ineffective assistance at trial often require investigative work and an understanding of trial strategy. . . .
>
> While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the record.

*Id.* (internal citations omitted).  Texas, for the very reasons noted by the Supreme Court in *Martinez*, rarely allows resolution of a claim for ineffective assistance of counsel in a Motion for New Trial or on direct appeal.  The undeniable custom, if not policy, of Texas courts is to reserve claims of ineffective assistance of counsel for state habeas review.

In language nearly identical to that used by the Texas Court of Criminal Appeals in *Torres*, the *Martinez* majority explained:

> Ineffective assistance claims often depend on evidence outside the trial record.  Direct appeals, without evidentiary hearings, may not be as effective as other proceedings for developing the factual basis for the claim.  Abbreviated deadlines to expand the record on direct appeal may not allow adequate time for an attorney to investigate the ineffective-assistance claim.  Thus, there are sound reasons for deferring consideration of the ineffective-assistance-of-trial-counsel claims until

> the collateral review stage, but this decision is not without consequences
> for the State's ability to assert a procedural default in later proceedings.

*Id.* at 1318.  Because the Texas and Arizona systems are nearly identical in their practice - Texas routinely disallowing the assertion of ineffective assistance of trial claims in either a Motion for New Trial or on direct appeal, *Martinez* assures Carpenter "that counsel's ineffectiveness in an initial-review collateral proceeding qualifies as cause for a procedural default." *Id.*

The Texas Court of Criminal Appeals has made clear its nearly automatic preference for ineffective assistance claims to be pursued during state habeas or, under *Martinez*, in the initial-review collateral proceeding. *Ex Parte Torres*, 943 S.W.2d at 475. *See also Thompson*, 9 S.W.3d at 813-814; *Bone*, 77 S.W.3d at 833.  This state practice qualifies Carpenter to benefit from the *Martinez* holding regarding procedural default.

Further, Justice Kennedy makes clear that *Martinez* is an equitable rule.  As such, this Court should consider the actual practice and literal application of Texas law - from an equitable perspective wherein the Court assesses a litigant's first real opportunity for first-tier review and not some abstract notion of "opportunity" that is nearly impossible to utilize.

Respondent Thaler has regularly, and vigorously, argued that Carpenter's claims should not be considered on the merits due to "procedural default."  Issues regarding

whether trial counsel performed effectively when trial counsel failed to raise and pursue the third party perpetrator claim: procedural default. Testimony regarding the depth and breadth of trial counsel's so-called "investigation:" procedural default. Issues regarding efficacy of the identification process: procedural default. Issues regarding available witnesses that would have prevented any assertion that Carpenter was ever thin or had light features, ignored by both trial and state habeas counsel: procedural default. Issues that McBay/Carpenter was medically impaired and her testimony unreliable: procedural default. Issues that McBay/Carpenter's known impaired condition violates *Brady v. Maryland:* procedural default. Mitigation evidence that neither trial counsel nor state habeas counsel uncovered: procedural default. Respondent should now have to face the evolution of law that permits litigants, like Carpenter, to actually have the merits of his ineffective assistance of counsel claims considered once on the merits, particularly where state habeas counsel was constitutionally ineffective and created the procedural default.

Under the Texas Court of Criminal Appeals precedent in *Torres* and its progeny, Texas death penalty convicts have only one viable option to assert their ineffective assistance of trial counsel claims - state habeas proceedings under 11.071. *Ex Parte Torres*, 943 S.W.2d at 475. *See also Thompson*, 9 S.W.3d at 813-814; *Bone*, 77 S.W.3d at 833. Texas death penalty convicts face a situation that, for all practical

purposes, is identical to *Martinez*. What Arizona law requires via statute, Texas law requires via practice. *Id.* For these reasons, Carpenter urges this Court to apply *Martinez v. Ryan* to Texas death penalty cases as a logical extension of the Supreme Court's holding regarding first-tier, first-opportunity review. Such application provides Carpenter one - and only one - opportunity to have some court actually review the merits of his habeas allegations. While Respondent Thaler strategically relies on procedural default to avoid merits determinations, *Martinez* has unambiguously altered the use of such tactics during federal habeas review. No longer will the fortuity that state habeas counsel failed to live up to the Sixth Amendment's guarantee of effective counsel result in a procedural decision - one that turns a blind eye to the merits involved in federal habeas determinations.

Carpenter seeks one - and only one - resolution of his constitutional claims on the merits. The incompetence of state habeas counsel who failed to assert significant, substantial and viable habeas claims, and evidence supporting these same claims, prevented Carpenter from receiving his one full and fair resolution at the state court level. *Martinez*, however, offers a narrow opening through the federal door.

The Texas Court of Criminal Appeals noted in *Torres* that the transcripts in Texas death penalty cases are not available for review or consideration under the abbreviated time frames motions for a new trial. *Ex Parte Torres*, 943 S.W.2d at 475.

Without the aid of transcripts, reviewing counsel are rarely able to mount a successful habeas challenge. The reality in Texas is that most death penalty transcripts are not available for review for four to five months after trial.  That reality undermines any claim that either a motion for a new trial or direct appeal offer viable avenues for Carpenter to assert his ineffective assistance claims.  No extra-record claims will be possible to assert.  And, no viable investigation can be conducted in this sharply abbreviated time frame.

The presentation of such motion or challenge may be theoretically possible - but not truly plausible.  Theory, in the academic context, is one thing.  However, the Supreme Court's holding in *Martinez v. Ryan* is not based on an academic reading of theoretically possible options.  Instead, *Martinez* faces the very real situation, identical to that faced by Texas death penalty convicts as articulated in *Torres* and its progeny, that individuals must be permitted one meaningful opportunity to assert their Sixth Amendment right to the effective assistance of counsel claims.  *See Ex Parte Torres*, 943 S. W. 2d at 475; *Thompson*, 9 S. W. 3d at 813-814; *Bone*, 77 S. W. 3d at 833.

*Lopez* reminds that the Texas Court of Criminal Appeals "has repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal *and are more appropriately urged in a hearing on an application for writ of habeas corpus*."  *Lopez*, 343 S. W. 3d at 143 (emphasis added).  The *Lopez* court

further supports Carpenter's argument for the application of *Martinez* to his case where the Texas Court of Criminal Appeals reminds that "[o]n direct appeal, the record is usually inadequately developed and 'cannot adequately reflect the failings of trial counsel' for an appellate court 'to fairly evaluate the merits of such a serious allegation." *Id. Lopez* is but a reassertion of *Torres* and its progeny indicating that the preferred, if not mandatory, course of action for asserting ineffective assistance of counsel claims in Texas is through the state habeas process.

For all practical purposes, Carpenter's case is identical to *Martinez*. The Texas Court of Criminal Appeals has "repeatedly stated" that the record and transcript limitations in Texas cases precludes the assertion of ineffective assistance of trial counsel claims in either Motions for New Trial or on direct appeal. *Id.*; *see also Ex Parte Torres*, 943 S.W.2d at 475; *Thompson*, 9 S.W.3d at 813-814; *Bone*, 77 S.W.3d at 833. These same concerns motivated the *Martinez* court to hold that:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 15.

Carpenter's state habeas counsel failed to raise obvious and substantial habeas challenges that support his claims of actual innocence. State habeas counsel failed to

conduct an adequate investigation into viable claims resulting in the absence of a meaningful state habeas review.  State habeas counsel failed to provide important and readily available evidence supporting Carpenter's many substantial claims, including the issues relating to the third party perpetrator, the dubious lone eyewitness testimony and McBay/Carpenter's impaired testimony.  All of the claims fall under the rubric of ineffective assistance of trial counsel claims and, therefore, squarely within the *Martinez* paradigm.

Without meaning any disrespect, State habeas counsel wholly failed to secure any evidence to identify and expose trial counsel's constitutionally underwhelming representation of Carpenter.  These monumental failures, in a case based solely on circumstantial evidence despite an abundance of available physical evidence not implicating Carpenter, have empowered Respondent to allege "procedural default" at every l consequential turn in order to preclude any consideration of the merits of Carpenter's claims.  Carpenter notes that failure to provide evidentiary support for habeas claims, coming after even the failure to identify easily identifiable habeas claims, falls well below professional norms of practice and ensures denial of habeas relief.  The Supreme Court, noting the equities of such scenarios, provided respite for individuals like Carpenter in the form of *Martinez*.

Because Carpenter has raised numerous substantial ineffective assistance of counsel claims against his trial counsel for failure to pursue the third party perpetrator claims, for failure to properly challenge the lone eyewitness's dubious identification of Carpenter, for failure to discover McBay/Carpenter's mental impairments, and for failure to investigate and present viable mitigating evidence, coupled with his state habeas counsel's failure to investigate, uncover and develop or admit any evidence supporting these claims during the state habeas proceedings, this Court should find *Martinez* applicable to Carpenter's case, excuse any procedural default and GRANT Carpenter's habeas corpus request in all respects.

In the alternative, Carpenter respectfully requests this Court GRANT evidentiary hearing oral argument providing Carpenter an opportunity to admit evidence from Texas Board Certified Criminal Defense attorneys supporting his claims that Texas law and practice is essentially identical, for all practical purposes as *Martinez v. Ryan* as well as evidence developed by undersigned counsel in support of these claims.

Additionally, in light of the proof Carpenter has already submitted to this Court, particularly the proof regarding the prosecution's *Brady* violation, Carpenter further requests this Court grant him funds to further develop readily available evidence in support of his claims set forth herein.

## III.    Ineffective Performance of State Habeas Counsel

## A.    Mitigation

Practically speaking, Carpenter's case is identical to *Martinez v. Ryan*.   The

Texas Court of Criminal Appeals has "repeatedly stated" that the record and transcript

limitations in Texas cases precludes the assertion of ineffective assistance of trial

counsel claims in either Motions for New Trial or on direct appeal.   *Id.; see also Ex*

*Parte Torres*, 943 S.W.2d at 475; *Thompson*, 9 S.W.3d at 813-814; *Bone*, 77 S.W.3d

at 833.   These same concerns motivated the *Martinez* court to hold that:

> Where, under state law, claims of ineffective assistance of trial counsel
> must be raised in an initial-review collateral proceeding, a procedural
> default will not bar a federal habeas court from hearing a substantial
> claim of ineffective assistance at trial if, in the initial-review collateral
> proceeding, there was no counsel or counsel in that proceeding was
> ineffective.

*Martinez*, 566 U.S. at 15.

Carpenter's federal habeas counsel have uncovered vital evidence and expert

opinion pertinent to the question of "future dangerousness."   As clearly established

Federal law has directed, such evidence is critical to capital defendants assuring that

the issue is not resolved by hollow, unsupported prognostication and myopic focus on

the crime itself, but by actual evidence of based on the defendant's individual history.

Although Carpenter had a criminal history, his limited history consisted mostly

of petty crimes, not life-threatening acts of violence. Likewise, his behavior while

incarcerated has not indicated any meaningful risk of future dangerousness. (See Kessner Affidavit, exhibit 10)  Evidence supporting this conclusion was and should have been obvious to both trial and state habeas counsel.  Yet, this issue has not yet been properly addressed nor presented, in any meaningful manner, to a reviewing court for a merits-consideration.

Remarkably, neither trial nor state habeas counsel obtained expert advice or evidence supporting the easily supportable position that Carpenter, particularly when incarcerated did not pose any future danger to any one in society.  Evidence of this record was vital to a finding that Carpenter did not, and does not, pose any future danger to society.

Competent habeas counsel would have recognized that the most fertile area in capital cases during the last decade has been the failure to investigate mitigation evidence based on *Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003); and, *Rompilla v. Beard*, 545 U.S. 374 (2005).  Indeed, these cases continue to set the benchmark in capital cases ensuring that individuals facing execution have received the benefit of the assembly, and presentation, of mitigating evidence.  Such assembly never occurred in this case because trial counsel made little to no effort to conduct an independent mitigation investigation.  Likewise, state habeas counsel failed to conduct such investigation or even address trial counsel's

many lapses in this well-recognized and established area.

It is disconcerting, to be polite, that these glaring omissions were never challenged by state habeas counsel. Reasonably competent habeas counsel at the time would have to be aware of the clearly established law in *Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003); and, *Rompilla v. Beard*, 545 U.S. 374 (2005) and its applicability to Carpenter's case. Reasonably competent counsel would have undoubtedly raised this omnipresent issue in his habeas application as these cases form the backbone of nearly every capital challenge in this country. And, reasonably competent counsel would have recognized the importance of supporting these claims with actual evidence of both deficient performance and the prejudice such deficiencies occasioned.

Reasonably competent habeas counsel would know that mitigation claims are essential in capital cases. Reasonably competent habeas counsel would also know that expert advice and evidentiary support is necessary to prove claims of ineffective assistance of trial counsel. These evidentiary presentation failures caused Carpenter to suffer prejudice because the state habeas court found Carpenter failed, from an evidentiary perspective, to support his claims. Notably, state habeas counsel wholly failed to present any expert testimony regarding Carpenter's custody in TDCJ.

Federal habeas counsel has placed this very expert testimony before this Court via the affidavit of Dr Kessner, an experienced mitigation expert, who could have provided testimony to the jury that Carpenter posed no risk of future dangerousness and that, therefore, the special issue on future dangerousness should have been answered "no."

Respondent Thaler meanwhile, adheres to the pre-*Martinez* position that, because this affidavit was not submitted to the state court, the federal courts cannot consider it. (Answer at 164 n.70,165)  Further, Respondent surmises that trial counsel must have had a strategy in failing to utilize an expert witness, even though the record is devoid of any such explanation. This Court should not credit trial counsel with strategic decisions when the record belies such deliberative tactics.  In fact, clearly established Federal law requires actual proof of strategy.  *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*, reviewing courts must consider the "reasonableness" of the underlying investigation if they are to approve, constitutionally, the tactical motives proffered by counsel.  *Id.* at 690-91.  *Strickland* requires courts to actually assess the *basis* for the strategic decisions:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the

limitations on investigation.

*Id.*

Respondent Thaler's presumptive approach – one that presumes tactical reasons despite a lack of evidence regarding tactical decisions – ignores this standard. Without evaluating trial counsel's underlying investigation for its inherent "reasonableness," no court can credit trial counsel with strategic decisions that occurred – if at all – prior to any independent or reasonable investigation. Respondent Thaler proffers no evidence regarding the reasons supporting any alleged strategic decision, either via affidavit or other documentary evidence.

The record is devoid of any reasons for trial counsel's abbreviated investigation and failure to adduce mitigating evidence. There are literally no reasons given by Respondent. Hence, without a sound justification for truncating the mitigation investigation, any decision crediting trial counsel with a "tactical decision" to simply rely on the prosecution's materials involves an "unreasonable application" of clearly established federal law.

The teachings of *Wiggins* further confirm the unreasonable nature of Respondent Thaler's response deferring to trial counsel's supposed tactical decisions:

> Indeed, counsel uncovered no evidence in their investigation to suggest that a mitigation case, in its own right, would have been counterproductive, or that further investigation would have been fruitless; this case is therefore distinguishable from our precedents in

which we have found limited investigations into mitigating evidence to
be reasonable.

The record of the actual sentencing proceedings underscores the unreasonableness of
counsel's conduct by suggesting that their failure to investigate thoroughly resulted
from inattention, not reasoned strategic judgment.
When viewed in this [proper] light, the "strategic decision" the state courts and
respondents all invoke to justify counsel's limited pursuit of mitigating evidence
resembles more a *post hoc* rationalization of counsel's conduct than an accurate
description of their deliberations prior to sentencing.

*Id.* at 526-27.

It is apparent that the commands of *Strickland* and its progeny were not heeded

in this case.  Rather, Respondent encourages this Court to indiscriminately defer to

trial counsel regarding "strategy" in the most hospitable light possible.  Yet, *Wiggins*

requires such testimony be actually scrutinized to ensure that the so-called strategy be

true strategy and not merely a "*post hoc* rationalization." *Id.* at 527.

Most likely, the reason that trial counsel has no explanation for his inaction is

because state habeas counsel failed to obtain an affidavit or an evidentiary hearing on

this claim–another deficiency which will be rectified by application of the *Martinez*

case.  Following *Martinez v. Ryan*, Carpenter should be permitted to raise and pursue

these substantial mitigation issues in federal court without suffering any procedural

bar to their consideration.  In this regard, Carpenter respectfully seeks permission to

AMEND his habeas Petition and to introduce evidence regarding trial counsel's

constitutionally deficient investigation, the numerous witnesses that were available

and willing to testify but were never contacted, and the prejudice such failings caused Carpenter.  But for Respondent Thaler's prior claims of procedural default, Carpenter would have already presented these claims to this Court for proper consideration. *Martinez v. Ryan* suggests that these claims are now ripe for federal review.

## B.    Eyewitness testimony

The eyewitness identification provided by Tessica Rainey is patently unreliable. Her initial description was of a 6' to 6'2" individual with light brown, ratty hair, who was skinny.  (R.23:76)  Carpenter, in contrast, has always been very large, heavy and had light features at the time.  Rainey did not identify Carpenter until years later, and then based upon an unduly suggestive line-up. Rainey's dubious idenfication testimony, along with the testimony of the mentally impaired McBay/Carpenter, was the only evidence that effectively corroborated Evrin Smith's contention that Carpenter committed the murder.  All in all, the circumstantial evidence in this case clings vulnerably together like a house of cards.  Once one falls, they all reveal the tenuous nature of this case – a case where the abundant physical evidence completely clears Carpenter of any involvement.  While there was plenty of DNA evidence on hand, not a shred of physical evidence ties Carpenter to this crime.  Only the threadbare testimony from three porous witnesses holds this case together – one a convict, the second mentally and emotionally disabled and the third one presenting an

unreliable description of the person she claims was Carpenter on the day of the murder.

Although identification was a key issue at trial, defense counsel failed to develop evidence that Rainey's original description of the perpetrator did not remotely match Carpenter– who was heavy set and had blonde hair at the time. (R.23:90) Based upon the affidavit of state habeas counsel's own investigator, Fred Pendergraff, state habeas counsel was aware that the identification procedures were unduly suggestive and that the identification was improper. Trial counsel failed to interview any of Carpenter's family in an effort to establish that the identification was incorrect. These failings have continually allowed Respondent to unfairly inflate the strength of Rainey's identification. Of course, the affidavits that were presented in state court were done so untimely, allowing Respondent to urge against their proper consideration.   (Answer at 154). As set forth above, however, *Martinez* provides a remedy for this Court to allow Carpenter his first, and only, bite at the habeas apple, one where he receives the benefit of constitutionally effective counsel.

But for trial counsel's many failings regarding Rainey's testimony, the jury would not have been able to place Carpenter near the crime scene on the day of the murder.  Reasonably competent counsel would have ensured that the description given by the lone eyewitness was accurate.  Reasonably competent counsel would have

vigorously challenged the credibility of the lone witness when their identification drew such stark contrasts between the perpetrator, a tall, lanky dark-haired individual and Carpenter, a large, rotund man with blonde hair. Had counsel pressed this issue, as constitutionally competent counsel would have, Rainey's hollow assertions would have been revealed as unsupportable and her place in the house of cards would have fallen away.

Had trial counsel actually pursued this claim, there is a reasonable probability that Carpenter, a man with no DNA connection to a very bloody and evidentiary generous crime scene, would have been acquitted for the murder he maintains he did not commit. Without Rainey placing Carpenter near the murder scene, there is a reasonable probability that the lack of any physical evidence connecting Carpenter to the murder would have generated an acquittal. *See Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome").

This case is devoid of any physical connection with Carpenter to the crime scene. Thus, in reviewing the case under *Strickland* and its progeny, this Court should evaluate only the error-free circumstantial evidence, which Carpenter asserts is minimal – at best, to assess whether Carpenter had demonstrated a reasonable probability that he would have been acquitted of these charges. The loss of Rainey's

eyewitness claim regarding Carpenter, due to its dubious accuracy, certainly undermines confidence in the outcome of this case.  Id.

## C.    Third Party Perpetrator

At trial, defense counsel unsuccessfully attempted to show that Matthew Tolbert had actually committed the murder. Tolbert had confessed the killing to Karen Kedroski who in turn informed the police. (R.27:61, 62, 64). By the time of trial, and due to a seizure, Kedroski had no independent knowledge of the confession, but could swear that her recorded statement to the police was truthful when given. The trial court disallowed the evidence because it was not sufficiently specific.

Post trial, the required specificity has been established. Through research of crime data, it is now clear that there was only one home invasion involving the stabbing of a woman–the Henin murder. *See* Trollinger affidavit, and supporting documents. The inescapable conclusion is that Tolbert was referring to only one person when he confessed–the deceased Nelda Henin.

The threshold for the admission of evidence of a third party perpetrator is extremely lax.  Admissibility is strongly favored if any thread tying the third party to the offense can be established.   That thread was readily apparent in this case.

This evidence could easily have been adduced by subpoena, or by questioning of Detective Sparks, who investigated the Henin murder, and was aware of the

suspects in the case. (R.27:42-50). The defense did not attempt to corroborate the Tolbert statement, but simply proffered the prior statement, which in substance, was comprised of only three lines.

Despite the importance of this issue, and the lack of any physical evidence linking Carpenter to this crime, state habeas counsel failed to pursue this claim. Without any explanation, state habeas counsel failed to conduct an investigation of this issue – one that undersigned counsel in fact easily conducted which would have led state habeas counsel to be able to mount a successful state habeas challenge on Carpenter's behalf.

Rather than address the merits of this complaint, Respondent once again relies on procedural default issues:

1.    That state habeas counsel did not raise the correct legal challenge (Answer at 35-42, ) and

2.    That the information provided the federal court cannot be considered because state habeas counsel failed to provide it to the state court. (Answer at 61-62)

It is clear that, given the posture of the evidence developed by undersigned counsel. Carpenter's jury was improperly denied the opportunity to hear that another likely suspect had confessed to the murder. The Due Process clause requires the

admission of such testimony See *Chambers v. Mississippi*, 410 U.S. 284 (1973)

Carpenter incorporates by reference the extensive authority on this issue set out in his

application under Claim I §D[3].  This legal analysis  is so persuasive that it remains

unrefuted by Respondent. Instead, Respondent Thaler focuses on the inadequacy of

the state trial record and seeks procedural default of this claim. (Answer at 60-62,80).

As set out herein, *Martinez* now provides Carpenter a remedy for the careless issue

presentation by state habeas counsel in the state courts.  Since this claim, and the

others raised by Carpenter, present substantial issues meriting habeas relief, *Martinez*

enables this Court to evaluate these claims on the merits rather than dispose of them

on a purely procedural basis.

Following *Martinez v. Ryan*, Carpenter should be permitted to raise and pursue

these substantial evidentiary issues in federal court without suffering any procedural

bar to their consideration.  In this regard, Carpenter respectfully seeks permission to

AMEND his habeas Petition and to introduce evidence regarding trial counsel's

constitutionally deficient approach to the third party perpetrator issue and the

prejudice such failings caused Carpenter.  But for Respondent Thaler's prior claims

---

[3]Third party confessions are never, by definition, merely impeachment evidence, contrary to finding of fact 86. Newly discovered evidence is merely impeaching when there is no exculpatory connection between it and the underlying case.  New evidence that calls into question the validity of Carpenter's guilt is by definition not merely impeachment. *United States v. Saada*, 212 F.3d 210, 216 (3rd Cir. 2000); *Carmichael, supra* at 598. By the same token, third party confessions are not inadmissible hearsay.  Compare tr. finding of fact number 9.

of procedural default, Carpenter would have already presented these claims to this Court for proper consideration. *Martinez v. Ryan* suggests that these claims are now ripe for federal review.

## D.     The McBay/Carpenter Claims

In Claims V and VI, Carpenter advanced evidence not discovered until 2009: that McBay/Carpenter, the mother of Carpenter's children, was suffering from memory problems, emotional disability and hallucinations. These problems existed both at the time of the offense and at the time she testified at trial.  Further, and most relevant to these proceedings, the prosecution was aware of these serious medical problems and failed to advise Carpenter of their existence.  Carpenter tried for several years to contact and interview McBay/Carpenter.  Not until 2009, despite Carpenter's repeated and vigilant efforts, did he uncover the fact that the prosecution hid McBay/Carpenter's known disability from him.  Carpenter has proven, through unrefuted deposition testimony, that McBay/Carpenter's medical limitations and issues were unknown to him until 2009.

There is no denying that McBay/Carpenter's testimony was crucial in this case. Except for the testimony of Evrin Smith, which required corroboration, McBay/Carpenter's testimony was the sole evidence at trial linking Carpenter to the actual crime: she said  Carpenter came home that day with blood on his knife and

shoes. Therefore, had the jury known that her recollections were extremely unreliable, if not spurious, the State would have lost this critical witness and, in all probability, their case. Based on these new discoveries proving a *Brady* violation, Carpenter is requesting a new trial.

Following discovery of these claims in 2009, Carpenter submitted his *Brady* challenge to the Texas courts. When these claims were submitted to the Court of Criminal Appeals–the highest Texas state court--they were rejected without comment. Carpenter claims that this action was contrary to clearly established federal law and now permits a *de novo* federal review. "When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007); *see also Fry v. Pliler*, 551 U.S. at 119 (§ 2254(d) is unrelated to when a petitioner is entitled to relief).

Respondent Thaler grossly misrepresents Carpenter's claims relating to the McBay/Carpenter testimony. Respondent suggests that Carpenter has only argued that the claims rest on "newly discovered" evidence under 5(a) (1) without reference to 5(a) (2) the prejudice established by the new evidence[4]. Throughout his application,

---

[4](2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

Carpenter argues that withholding the evidence of McBay/Carpenter's mental condition was a violation of *Brady v. Maryland,* 373 U.S. 83 (1963). Throughout the application, Carpenter argues that McBay/Carpenter's undisclosed mental conditions deprived him of "Due Process of Law" contrary to the *Berry* rule, citing *United States v. Erwin*, 277 F.3d 727, 731-32 (5th Cir. 2001); *United States v. Sullivan*, 112 F.3d 180, 183 (5th Cir. 1997). In fact, Carpenter repeatedly argues that this new evidence would likely result in an acquittal, citing *United States v. Agurs*, 427 U.S. 97, 112-13 (1976); *United States v. Erwin*, 277 F.3d 727, 731-32 (5th Cir. 2001); *United States v. Sullivan*, 112 F.3d 180, 183 (5th Cir. 1997) ; *U.S. v. Wall*, 398 F.3d 457, n. 6 (5th Cir. 2004); *United States v. Snoddy*, 862 F.2d 1154, 1156 (5th Cir. 1989) (quoting *United States v. Kahn*, 472 F.2d 272, 287 (2d Cir. 1973)). Therefore, Respondent's assertion that the claims have not been asserted with reference to 5(a)(2) is. unfounded.

In addition, Respondent Thaler asserts that this claim, too, has been procedurally defaulted by Carpenter. The procedural default argument primarily advanced by Respondent is that Carpenter failed to establish the basis for his claims was not previously available, or, that this is not newly discovered evidence. This argument rests, in turn, on the speculation, wholly unsupported by any evidence in the record, that since Carpenter lived with McBay/Carpenter, he should have known of

her hallucinations and memory lapses.

The actual evidence in this case directly refutes Respondent's position. McBay/Carpenter, when confronted with this premise during her deposition, specifically denied every discussing these issues with Carpenter. (Depo.at 8,10-11[5]). She was subjected to cross-examintion on this issue and did not waver.   Therefore, the actual evidentiary record is devoid of any proofthat establishes  these claims were available before 2009, when McBay/Carpenter first chose to disclose them. The only other proof of these claims resided with the prosecutor, who failure to reveal this evidence serves as the basis for Carpenter's *Brady* claim.   To the extent that Respondent now argues that the State Court findings appropriately found Carpenter knew of this evidence sooner, that argument is foreclosed by § 2254(d)(2) as an unreasonable factual determination based on the record presented to the state court. See 28 U.S.C. 2254§(d)(2)

The pertinent provisions of 28 U.S.C.A. § 2254 (d) are:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–...

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

---

[5]Significantly, Respondent never even questioned McBay/Carpenter about this assumption during the deposition, although given every opportunity to do so.

Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The appropriate test is to look at the claims raised and the arguments advanced to determine if the dismissal was merits based. Carpenter advanced two clear violations of clearly established Federal law: a *Brady* violation and a Due Process violation founded upon McBay/Carpenter's undisclosed mental illness, memory problems and hallucinations. Therefore, the Court of Criminal Appeals could not have found the lack of a constitutional basis for Carpenter's claims under 5(a)(2). Of course, this determination would be a merits-based decision, entitling Carpenter to review in federal court under U.S.C.§2254 (d).

The Texas Court of Criminal Appeals summarily dismissed Carpenter's habeas application raising the McBay/Carpenter *Brady* issue. The only reason for the summary dismissal would be a determination that the evidence was not "newly discovered" under 5(a)(1). As set out above, that determination would run afoul of 2254 (d)(2) because the unrefuted evidence in this record establishes that Carpenter did not learn of this issue until 2009. As Respondent has not provided any evidence proving this to be inaccurate, the Texas Court of Criminal Appeals decision is an unreasonable determination of facts in light of the record before the state court. Therefore that determination is also subject to federal review. To the extent that

Respondent asserts that a state court's determination that evidence is not "newly discovered" is not subject to reviewable, that argument is baseless and unprecedented and suggests an unconstitutional suspension of the writ of habeas corpus.

Carpenter has clearly and unequivocally raised a *Brady v. Maryland* claim that the prosecution's deliberate withholding of information relating to McBay/Carpenter's known mental disabilities constitutionally violated his right to receive all exculpatory evidence. *Brady* claims are routinely evaluated by federal courts under §2254 habeas corpus petitions. Were this Court to deny Carpenter the right to challenge the prosecution's withholding of exculpatory evidence, such denial would qualify as an unconstitutional suspension of the writ. Despite Respondent Thaler's suggestion that this Court has the power to deprive Carpenter of federal review on his *Brady* claim, that argument is simply untenable.

Moving to the adequacy of the state record, Respondent argues that Carpenter should have raised his claims earlier because:

1.      Everyone knew Mc/Bay Carpenter was a "neat freak"–an obsessively clean person, (Response at 129). How that personal characteristic would inevitably lead someone to deduce that McBay/Carpenter was hallucinating and suffering memory lapses in not explained. Frankly, that nexus can never be explained–it is a *non sequiter*. More importantly, Respondent offers absolutely no evidence

demonstrating that individuals with obsessive-compulsive symptoms such as excessive cleaning, etc., regularly have other mental ailments such as hallucinations and memory lapses.

There is no allegation that Carpenter is a physician or trained therapist and his knowledge regarding mental impairments has not been established by anything other than speculation.   What Carpenter knew or did not know could have only been established by record evidence, such as a deposition taken by Respondent.  Absent any admissible evidence on this point, the unrefuted evidence proffered by Carpenter stands as the sole evidence supporting the issue of newly discovered evidence.

2.      Carpenter wrote a letter to McBay/Carpenter before trial stating "as long as you don't know anything they can't say you do." (Response at 129-130) Respondent distorts that comment into an admission that   Carpenter knew McBay/Carpenter had a memory problem. Obviously, that comment suggests nothing of the kind–it is instead a plea by Carpenter to McBay/Carpenter not to be a witness. A contrary reading is patently unreasonable.

Respectfully, Carpenter asserts that Respondent's characterization of the evidence addressing whether the *Brady* materials are newly discovered evidence is nothing short of legal fiction.  While raised in a different context, the Supreme Court considered a similar issue regarding "competing" evidence when evaluating a

summary judgment motion.  In *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme

Court did not simply accept the litigant's contention, without supporting evidence,

that their adversary's evidence was legally insufficient.

Much like *Scott*, this is a case where the competing evidence is not truly

competing.  With all due respect, Carpenter has revealed that McBay/Carpenter was

mentally disabled prior to and during his trial.  For years, literally, Carpenter sought

to interview McBay/Carpenter and evaluate her testimony.   After deposing

McBay/Carpenter, federal habeas counsel first learned that she was impaired prior to

and during her trial testimony *and* that this impairment was known by the State.

Respondent's currently unsupported "version of events (unsurprisingly) differs

substantially from [Carpenter's] version."  *Id.* at 378 (emphasis in original).

> There is, however, an added wrinkle in this case:  the existence in the record
> of [undisputed contrary evidence] capturing the events in question.
> . . .
> [Carpenter's evidence] quite clearly contradicts the version of the
> story told by . . . [Respondent Thaler] and adopted by the [state courts]. . . .
>
> When opposing parties tell two different stories, one of which is blatantly
> contradicted by the record, so that no reasonable jury could believe it, a court
> should not adopt that version of the facts for purposes of ruling on a motion for
> summary judgment. . . . [Reviewing courts] should not have relied on such
> visible fiction, [they] should have viewed the facts in the light depicted by [the
> facially more reliable evidence].

*Id.* at 378-86.  Respondent has not challenged any component of McBay/Carpenter's

deposition testimony as unreliable.  In fact, Respondent used his opportunity to cross-

examine McBay/Carpenter on these issues and was unable to demonstrate any knowledge on the part of Carpenter prior to 2009. With all due respect, any claim that Carpenter should have known about McBay/Carpenter's mental impairments because she was hyper-vigilant regarding cleaning is unfounded if not pure "fiction." *Id.* Likewise, the interpretation of Carpenter's letter to McBay/Carpenter that his request was coded language regarding a known disability is not only unsupported, it is unsupportable.

With these two equivocal bases for claiming that Carpenter knew that McBay/Carpenter suffered from mental illness, hallucinations and memory lapses, the only reasonable determination possible under 2254(d)(2) is that the evidence was "newly discovered" when McBay/Carpenter first revealed it in 2009. McBay/Carpenter's unrefuted deposition testimony meets the requirement set forth in §2254(d)(2).

## CARPENTER IS NOW ENTITLED TO DEVELOP A RECORD TO FURTHER SUPPORT HIS CLAIMS

Prior to the abatement order, this court allowed Carpenter limited access to discovery–the deposition of McBay/Carpenter. Aside from this deposition, the court has not allowed Carpenter to develop any further evidence in support of his significant and substantial habeas claims. Carpenter duly filed an Application for Habeas Relief in the state courts of Texas, but that Application was summarily and unreasonably

dismissed before Carpenter was allowed any opportunity for further investigation and factual development.

Respondent would decide Carpenter's *Brady* claim solely upon the self-serving affidavit of the trial prosecutor that she did nothing wrong and did not know of McBay/Carpenter's mental problems[6].   Carpenter has never been given the opportunity to review the prosecution file, presumably complied by more members of law enforcement than Ms. Judin, (the prosecutor)  to depose members of the prosecution team. Access to all of this information would be necessary to fairly resolve Carpenter's *Brady* claim.

Therefore, Respondent's contention that McBay/Carpenter's use of Zoloft, without more, is not sufficiently material to merit relief is premature. However, there are additional problems with  Respondent's limited view. A *Brady* violation also entails an analysis of what information competent counsel could have gleaned from the disclosure. Had counsel known that the witness was taking anti-depressants with severe side effects, an inquiry into the reasons for that medication would have lead to the disclosure of her hallucinations and memory lapses, just as discovered by undersigned counsel. Compare *Kyles supra* at 443.(Disclosure would have lead defense counsel to additional attacks on police investigation of case) *Trevino v. Thaler*

---

[6]Respondent does not explain how the prosecutor failed to notice the readily observable signs of mental impairment that Petitioner was charged with knowing.

449 Fed.Appx. 415, 424, 2011 WL 5554816, 7. (5th Cir. 2011) (inadmissible evidence may be material under *Brady* if it somehow leads to other exculpatory evidence; the key is still "whether the disclosure of the evidence would have created a reasonable probability that the result of the proceeding would have been different"citing *Felder v. Johnson,* 180 F.3d 206, 212 (5th Cir.1999).   Thus, the disclosure of the use of Zoloft would have provided a wealth of admissible impeachment material. Zoloft and the reasons for using Zoloft would have been obvious to competent trial counsel and the intentional withholding of this information qualifies as a *Brady* violation.

Still, the record for relief, as it currently stands, is much stronger than Respondent contends. McBay specifically stated that she was taking medications and suffering memory losses at the time of trial. (Depo. Pages 12-13[7]) While Respondent contends that McBay/Carpenter's recollections are unimpaired and consistent, McBay/Carpenter, in her deposition, specifically stated that her recollections of the day were unclear and unreal (Depo at 64,66) and that her account did not seem possible because, if true, Carpenter should have been covered in blood. (Depo at 80) Respondent has not, in any manner, refuted this evidence.

Any merits based disposition of the *Brady* and Due Process claims on this record  are clearly unreasonable within the meaning of 2254 (d)(2) regardless of the

---

[7]Contrary to Respondent's misstatement that her recall at the time of trial was unimpaired.(Answer at 137,142)

traditional AEDPA deference afforded.

## CARPENTER'S COMPLAINT ABOUT MCBAY/CARPENTER'S MENTAL IMPAIRMENT IS NOT SOLELY COUCHED IN AN ACTUAL INNOCENCE CLAIM BUT IS PROPERY ADDRESSED AS A FREESTANDING *BRADY v. MARYLAND* CLAIM OR A *MARTINEZ v. RYAN* CLAIM

Respondent alternatively argues that McBay/Carpenter's pervasive mental illness was readily known by the time of the first writ and is not "newly discovered." While Carpenter, as set out above, vigorously disputes that conclusion, if that were true, Carpenter would still be entitled to relief under *Martinez v. Ryan*, supra, because state habeas counsel did not raise a clear "Due Process" violation and ineffective assistance of trial counsel claim. Failing to bring McBay/Carpenter's serious mental condition, if known, to the attention of the state courts in inexcusable. Knowing this, Respondent seemingly ignores Carpenter's precise claim to this effect (See Answer at 134 n.58), and instead chooses to mischaracterize the complaint as an "actual innocence" claim. (Answer at 139 n.62).

Nowhere in Claim VI does Carpenter use the "actual innocence" standard. Respondent is boxed in on this issue by the repeated (although undocumented) assertion that, by the time of the initial state writ, state habeas counsel should have been aware of McBay/Carpenter's mental illness. If that assertion is adopted, then a clear *Martinez v. Ryan* violation has occurred, for the reasons set out ante regarding Carpenter's other *Martinez* claims.

-46-

## Prejudice

The failings of state habeas counsel resulted in Carpenter forfeiting numerous claims, as described above. State habeas counsel's many failings precluded Carpenter from supporting his claims with admissible evidence. State habeas counsel's many failings guaranteed that Carpenter would not have his most viable claims considered: (1) the third party perpetrator claim; (2) the lone eyewitness identification challenged; (3) mitigation investigation and evidence considered; and, if the Court finds that Carpenter had prior knowledge of McBay/Carpenter's serious mental illness and hallucinations, then (4) the failure to challenge McBay/Carpenter's unreliable testimony. To date, these issues have not been resolved by any Court. Carpenter has not had his exculpatory evidence, including the third party perpetrator, the dubious eyewitness identification and McBay/Carpenter's impaired testimony considered in any context - either at trial or on state habeas. *Martinez v. Ryan*, however, saves Carpenter from state habeas counsel's failings where those failing cause prejudice and the underlying claims are substantial.

Because Carpenter has raised a substantial ineffective assistance of counsel claim against his trial counsel for failure to investigate and present mitigating and exculpatory evidence, failure to argue a third party perpetrator, failure to challenge the lone eyewitness identification despite its patent unreliability, failure to challenge

McBay/Carpenter's mental impairments during testimony and his state habeas counsel failed   to develop or admit any evidence supporting these claims during the state habeas proceedings, this Court should find *Martinez v. Ryan* applicable to his case, excuse any procedural default and GRANT Carpenter's habeas corpus request in all respects.   In the alternative, Carpenter respectfully requests this Court GRANT Oral Argument providing Carpenter an opportunity to admit evidence from Texas Board Certified Criminal Defense attorneys supporting his claims that Texas law and practice is essentially identical, for all practical purposes as *Martinez v. Ryan*.

## CLAIMS RESCUED BY *MARTINEZ V. RYAN*

Following *Martinez v. Ryan*, Carpenter should be permitted to raise and pursue these substantial mitigation issues in federal court without suffering any procedural bar to their consideration.   In this regard, Carpenter respectfully seeks permission to AMEND his habeas Petition and to introduce evidence regarding trial counsel's constitutionally deficient investigation, the numerous witnesses that were available and willing to testify but were never contacted, and the prejudice such failings caused Carpenter.   But for Respondent Thaler's prior claims of procedural default, Carpenter would have already presented these claims to this Court for proper consideration. *Martinez* suggests that these claims are now ripe for federal review.

## APPLICATION OF *CULLEN v. PINHOLSTER*

For the reasons described below, Carpenter asserts *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011) has no effect on this case or this Court's ability to grant either habeas relief, oral argument or an evidentiary hearing in this case. Carpenter has pled and briefed several meritorious claims for relief under *Strickland v. Washington*, 466 U.S. 668 (1984), and a meritorious claim for relief under *Brady v. Maryland* Carpenter has also demonstrated that any one of the numerous unreasonable applications of *Strickland* and unreasonable determinations of fact in light of the record before the state court satisfy 28 U.S.C. § 2254(d).

*Pinholster's* prohibition on the consideration of new evidence is limited strictly to the § 2254(d) analysis. Because § 2254(d) is satisfied in this case, there is no bar to granting relief and this Court may decide whether Carpenter is in custody in violation of the Constitution. Further, the Court's consideration of Carpenter's supplemental evidence when deciding the merits of the *Strickland* and *Brady* claims are controlled by § 2254(b)(1)(A), i.e. the traditional exhaustion inquiry.

Thus, this Court may consider the supplemental evidence when assessing whether Carpenter has demonstrated *Strickland* error or a *Brady* violation.

**I.      28 U.S.C. § 2254(d) is Not a Standard for Assessing the Merits of a Claim, it is a Limitation on Relief that Once Satisfied-Like the Exhaustion Requirement- is Irrelevant to this Court's Consideration of Carpenter's Claim.**

This Court's authority to issue a writ of habeas corpus is derived from 28 U.S.C. § 2241.  Section 2241 is the subsequent codification of the Act of February 5, 1867, which "greatly expanded the habeas corpus jurisdiction of the federal courts to embrace 'all cases where any person may be restrained of his . . . liberty in violation of the constitution, or of any treaty or law of the United States . . . .'" *Irvin v. Dowd*, 359 U.S. 394, 404 (1959).  Section 2241 states:

(a)    Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

\* \* \*

(c)    The writ of habeas corpus shall not extend to a prisoner unless -

\* \* \*

(3)    He is in custody in violation of the Constitution or laws or treaties of the United States; or

28 U.S.C. § 2241.

Section 2254, entitled "State custody; remedies in Federal Courts," limits the authority of federal courts to provide a remedy for a prisoner unconstitutionally restrained by a state court judgment.  Before 1996, § 2254 contained only two

limitations on court's power to grant a remedy. Section 2254(a) limited the scope of remediable claims: "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). Section 2254(b), the exhaustion requirement[8], prohibited federal courts-except in very rare circumstances-from granting relief on an unexhausted claim.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA). The AEDPA left intact the core habeas requirement that a Carpenter prove his confinement violates the laws of the United States, but proving illegal confinement and satisfying the exhaustion requirement[3] are no longer enough to secure a remedy. The AEDPA's amendment of § 2254(d) "place[d] a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

As amended by AEDPA, § 2254(d) provides,

An application for a writ of habeas corpus on behalf of a person in custody

---

[8] *See* 28 U.S.C. § 2254(b) (West 1994) ("An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.")

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Understanding the function of § 2254(d) in habeas corpus cases is critical because *Pinholster* "[l]imit[ed] § 2254(d)(1) review to the state court record," 131 S. Ct. at 1399, it did not limit federal habeas corpus review to the state court record. Amended § 2254(d) is sometimes confused with a standard of review somehow applicable to the merits of a claim.  It is not.  The provision is an additional § 2254 limitation on a federal court's authority to remedy a constitutional violation.  The

Supreme Court has repeatedly described § 2254(d) as a limitation on relief[9][10]  and

*Pinholster* unambiguously explained the provision in these terms:

> As amended by AEDPA, 28 U.S.C. § 2254 *sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner.*  Section 2254(a) permits a federal court to entertain only those applications alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  Sections 2254(b) and (c) provide that a federal court may not grant such applications unless, with certain exceptions, the applicant has exhausted state remedies.
>
> If an application includes a claim that has been "adjudicated on the merits in State court proceedings," § 2254(d), an additional restriction applies.

*Pinholster*, 131 S.Ct. at 1398 (emphasis added).

Section 2254(d) speaks not in terms of when constitutional error may be found,

but of the circumstances under which a remedy for constitutional error may be

granted.  Indeed, § 2254(d)'s central mandate is that "a writ of habeas corpus . . . shall

---

[9]*See* 28 U.S.C. § 2254(b) (West 1994) ("An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.")

[10]*See, e.g.*, *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (Section 2254(d) is "a *condition* for obtaining habeas corpus from a federal court.") (emphasis added); *Fry v. Pliler*, 551 U.S. 112, 119 (2007) (§2254(d) "sets forth a precondition to the grant of habeas relief"); *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (explaining that §2254(d) must be satisfied before "federal habeas relief may be granted"); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) ("Relief may not be granted unless" §2254(d) is satisfied); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("The requirements for habeas *relief* established by 28 U.S.C. §2254(d) are thus satisfied") (emphasis added); *Bell v. Cone*, 535 U.S. 685, 694 n.2 (2002) (referring to §2254(d) as a "statutory provision governing respondent's ability to obtain federal habeas relief"); *Williams v. Taylor*, 529 U.S. at 412 (§2254(d) "places a new constraint on the power of a federal habeas court *to grant* a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court") (emphasis added).

not be granted" unless certain conditions are present.  Where Section 2254(d) applies-

i.e., where there has been an "adjudication on the merits" in state court-it operates as

a limitation on the power of a federal court to grant relief in those cases in which the

court has found constitutional error.  James S. Liebman & Randy Hertz, 2 Federal

Habeas Corpus Practice and Procedure § 30.1, at 1357 (5th ed. 2005); Richter, 131

S.Ct. at 786 (§ 2254(d) is "a condition for obtaining habeas corpus from a federal

court.")[11].

The § 2254(d) restriction on relief was not intended to cover exactly the same

ground as the § 2254(a) analysis.  Each provision performs a separate function, and

federal courts have made clear that both must be satisfied before relief can be granted.

*See, e.g.*, *Fry v. Pliler*, 551 U.S. at 119 (§ 2254(d) "sets forth a *precondition* to the

grant of habeas relief . . . not an entitlement to it") (emphasis added); *Horn v. Banks*,

536 U.S. 266, 272 (2002) (per curiam) ("While it is of course a necessary prerequisite

to federal habeas relief that a prisoner satisfy the AEDPA standard of review set forth

in 28 U.S.C. § 2254(d) . . ., none of our post-AEDPA cases have suggested that a writ

---

[11]Several courts of appeals have also recognized the §2254(d)'s focus on the availability of a remedy, rather than on the existence of constitutional error.  *See, e.g.*, *Evans v. Thompson*, ___F.3d___, 2008 WL 344208 (1st Cir. Feb. 8, 2008) ("There is no impairment of lower federal courts' independent interpretative authority: such courts still have authority to decide whether a state court decision is wrong, and whether the decision is, in addition, unreasonably so. Section 2254(d) only limits the ability of the lower federal courts to grant relief when they conclude, in exercising independent judgment, that even in case of error a state court did not unreasonably apply Supreme Court precedent"); *Jiminez v. Walker*, 458 F.3d 130, 135 n.2 (2nd Cir. 2006) ("As we have noted, § 2254(d) may more accurately be called a "limitation on relief" than a deferential "standard of review" (citing Cotto v. Herbert, 331 F.3d 217, 229 n. 4 (2d Cir.2003)); *Green v. French*, 143 F.3d 865, 875 (4th Cir.1998) ("Under the AEDPA, we are free, if we choose, to decide whether a habeas petitioner's conviction and sentence violate any constitutional rights. Section 2254(d) only places an additional restriction upon the scope of the habeas remedy in certain circumstances").

of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard"); *Rose v. Lee*, 252 F.3d 676, 691 (4th Cir. 2001) ("[Section] 2254(d)(1) must be read in conjunction with the purpose of the writ, as outlined in § 2254(a), which is to protect a prisoner from being held in violation of federal law"); *Aleman v. Sternes*, 320 F.3d 687, 690-691 (7th Cir. 2003) (even where petitioner can satisfy §2254(d), he "still must establish an entitlement to the relief he seeks, and it is §2254(a), not §2254(d), that sets the standard . . . .").

Structurally, § 2254(d) is no different from § 2254(b)'s exhaustion requirement:

Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions.   Under the exhaustion requirement, a habeas petitioner challenging a state conviction must first attempt to present his claim in state court.  28 U.S.C. § 2254(b).  If the state court rejects the claim on procedural grounds, the claim is barred in federal court unless one of the exceptions to the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 82 84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), applies.  And if the state court denies the claim on the merits, the claim is barred in federal court unless one of the exceptions to § 2254(d) set out in §§ 2254(d)(1) and (2) applies. Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding, *see id.*, at 90, 97 S.Ct. 2497.

*Richter*, 131 S.Ct. at 787.

Like the exhaustion requirement, § 2254(d) falls away once satisfied and has no bearing on the determination of whether the petitioner has demonstrated a constitutional violation: "When a state court's adjudication of a claim is dependent on

an antecedent unreasonable application of federal law, the requirement set forth in §
2254(d)(1) is satisfied.   A federal court must then resolve the claim without the
deference AEDPA otherwise requires." *Panetti v. Quarterman*, 551 U.S. 930, 953
(2007); *see also Fry v. Pliler*, 551 U.S. at 119 (§ 2254(d) is unrelated to when a
petitioner is entitled to relief).

Once a petitioner satisfies § 2254(d), or in those cases in which it does not
apply, he may adduce-and the federal court may consider-additional evidence in
support of his claims subject only to the restrictions in §§ 2254(b)-(c); (e). *Pinholster*,
131 S.Ct. at 1401 ("Section 2254(e)(2) continues to have force where § 2254(d)(1)
does not bar federal habeas relief."); *id.* at 1412 (Breyer, J., concurring) ("If the
federal habeas court finds that the state court decision fails [§ 2254](d)'s test (or if (d)
does not apply), then an (e) hearing may be needed."); *Morris v. Thaler*, 2011 WL
1886096, slip op. at *9 n.1 (5th Cir. May 18, 2011) (unpublished) (an evidentiary
hearing is permissible, and appropriate, after determining that § 2254(d)(1) is
satisfied); *Hearn v. Ryan*, 2011 WL 1526912, slip op. at *2 (D. Ariz April 21, 2011)
(denying State's motion, in light of *Pinholster*, to reconsider granting evidentiary
hearing because, "[h]aving determined Carpenter's Faretta claim satisfied §
2254(d)(1), it fell to this Court to resolve the claim").

Thus, a habeas petitioner must show (1) illegal confinement to be entitled to habeas relief; and, (2) satisfaction of 2254(d), when applicable, to be granted habeas relief.[12]

**II.    *Pinholster* Held Only that Federal Courts Applying the § 2254(d)(1) Limitation on Relief Look to the State Court Decision and the Evidence Before the State Court.  *Pinholster* Did Not Bar Consideration of Evidence Properly Presented to the Federal Courts for the First Time On Claims Such as the McBay/Carpenter Claim, in Which the Carpenter has Satisfied the § 2254(d)(1) Limitation by Demonstrating the Unreasonableness of the State Court Decision in Light of the State Court Record.**

In *Pinholster*, the district court erroneously concluded that AEDPA did not apply to *Pinholster's* application and granted an evidentiary hearing and, subsequently, relief.  131 S.Ct. at 1397.  After *Woodford v. Garceau*, 538 U.S. 202 (2003), corrected the district court's erroneous beliefs about the applicability of the AEDPA, the court amended its order but not its conclusion.  *Pinholster*, 131 S.Ct. at 1397.  A panel of the Ninth Circuit reversed the grant of relief but the en banc court reinstated it.  The Ninth Circuit explicitly based its determination that § 2254(d)(1) did not bar relief on the evidence developed during the federal evidentiary hearing. *Id.*

---

[12]As to the order in which a federal court addresses the merits and the section 2254(d) determination, "AEDPA does not require a federal habeas court to adopt any one methodology." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). Lockyer reviewed a Ninth Circuit decision that required a federal court to determine entitlement to relief before determining whether the federal court was precluded by Section 2254(d) from granting relief.  The Supreme Court reversed, disagreeing that the AEDPA required any particular ordering of determinations on the relevant legal questions.  Id.

The narrow question before the *Pinholster* Court was whether federal courts may consider evidence presented for the first time during federal habeas proceedings when deciding whether § 2254(d)(1) bars relief, i.e. when deciding whether the state court decision "was contrary to, or involved an unreasonable application of, clearly established federal law." *Pinholster* did not allege that the state court process prevented or impeded his development of facts in support of his claims. Under such circumstances, the Court observed that "[o]ur cases emphasize that review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399. The Court held that "evidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court." *Id.* at 1400.

*Pinholster* confined itself to interpreting §2254(d)(1) not (d)(2). Carpenter's § 2254(d)(2) arguments highlight the manner in which the State Court Dicision was "contrary to" clearly established Federal law. Carpenter's § 2254(d) arguments are not predicated on any additional evidence presented before this Court but, rather, on the unreasonable conclusions of the state courts in light of the record before them. Second, even if Carpenter for some reason needed to rely on evidence adduced here for the first time to satisfy § 2254(d)(1)Carpenter also satisfied § 2254(d)(2) which

remains unaffected by *Pinholster* because it already explicitly focused on the state court record.

Because the Texas Court of Criminal Appeals decisions findings against Carpenter are decisions on the merits of his claim, §2254(d) applies to his case. However, since the Texas state court findings are unreasonable under §2254(d)(2), this Court is entitled to provide *Carpenter* with *de novo* review in assessing the merits of his claims.

## UNREASONABLENESS OF STATE COURT FINDINGS UNDER §2254(d)(2)

_____28 U.S.C. § 2254(d) reminds that:

An application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a state court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings

unless the adjudication of the claim -

(2)     resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in a State court proceeding.

28 U.S.C. § 2254(d)(2).

Carpenter asserts that his federal habeas corpus should, in all respects, be GRANTED because the state habeas dismissal by the Texas Court of Criminal Appeals, "resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented" during the state court proceedings.  *Id.*

## Unreasonable Decision

Accordingly, under § 2254(d)(2) this Court has the ability to conduct a *de novo* review of this issue and, GRANT Carpenter's request for habeas corpus.

## Carpenter is Entitled to *De Novo* Review

Carpenter reasserts his initial habeas claim that evidence of McBay/Carpenter's severe mental illness was newly discovered by Carpenter in 2009.  If this Court were to find in Carpenter's favor under 28 U.S.C. § 2254(d)(2) that the Texas state court findings to the contrary are unreasonable in light of the evidence presented during the state court proceedings this Court can perform independent *de novo* review.  Under *de novo* review, this Court is not constrained under *Harrington v. Richter*'s doubly-deferential review.  Instead, this Court simply need undertake a traditional *Brady* and Due Process analysis.

If this Court were to find in Carpenter's favor under 28 U.S.C. § 2254(d)(2), the Court can perform independent *de novo* review.  Under *de novo* review, this Court is not constrained under *Harrington v. Richter*'s doubly-deferential review.  Instead, this Court simply need undertake a traditional *Strickland v. Washinton* analysis.  *Panetti*, 551 U.S. ___, 127 S.Ct. at 2859.

*Panetti* unequivocally articulates the applicable standard once a Petitioner surmounts §2254(d)'s restrictive language:

> When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires. See *Wiggins v. Smith,* 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (performing the analysis required under *Strickland's* second prong without deferring to the state court's decision because the state court's resolution of *Strickland's* first prong involved an unreasonable application of law); *id.,* at 527-529, 123 S.Ct. 2527 (confirming that the state 2859*2859 court's ultimate decision to reject the prisoner's ineffective-assistance-of-counsel claim was based on the first prong and not the second). See also *Williams, supra,* at 395-397, 120 S.Ct. 1495; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam)* (indicating that § 2254 does not preclude relief if either "the reasoning [or] the result of the state-court decision contradicts [our cases]"). Here, due to the state court's unreasonable application of *Ford,* the factfinding procedures upon which the court relied were "not adequate for reaching reasonably correct results" or, at a minimum, resulted in a process that appeared to be "seriously inadequate for the ascertainment of the truth." 477 U.S., at 423-424, 106 S.Ct. 2595 (Powell, J., concurring in part and concurring in judgment) (internal quotation marks omitted). We therefore consider petitioner's claim on the merits and without deferring to the state court's finding of competency.

*Id*.

As this Court conducts its *de novo* review required under *Panetti*, Carpenter asserts he has demonstrated, once again, his entitlement to federal habeas by both the law and evidence. Trial counsel's mitigation investigation and presentation was constitutionally deficient and fell far below reasonable professional norms; trial counsel's failure to assert a third party perpetrator claim was constitutionally deficient

and fell far below reasonable professional norms; trial counsel's failure to challenge the lone eyewitness's dubious identification of Carpenter fell far below reasonable professional norms; and, trial counsel's failure to challenge the serious mental illness plaguing McBay/Carpenter at the time of trial fell far below reasonable professional norms. Further, these deficiency prejudiced Carpenter in that had counsel introduced the abundance of mitigating evidence that existed on Carpenter's behalf and properly challenged the specious circumstantial evidence lodged against Carpenter, there is a reasonable probability that Carpenter would have been acquitted. Had a reasonable jury been presented with the enormous amount of physical evidence in this case, none of which linked Carpenter to the crime, while simultaneously having been advised of the weak circumstantial evidence allegedly tying Carpenter to this crime, there is a reasonable probability that Carpenter would be a free man.

The crime scene in this case was horrible. There were an abundance of fingerprints, none of which match Carpenter. There was an extremely large amount of blood at the scene, none of which match Carpenter's DNA. There were footprints outside the house, none of which match Carpenter or any of the shoes he owned. In short, the physical evidence solidly supports Carpenter's claim that he did not commit this murder. Had a jury been properly exposed to the limitations in the prosecution's case, there is a reasonable probability that Carpenter would have been acquitted.

Finally, because the Texas state courts improperly found that Carpenter did not present "newly discovered" evidence regarding his *Brady* claim, a decision that is unreasonable in light of the evidence presented to the state courts, this Court has the authority to conduct *de novo* review of this claim and can permit additional evidentiary development of the claims.   Carpenter respectfully requests such opportunity or, in the alternative, that this Court simply GRANT his federal habeas request based on *Brady v. Maryland*.

For these reasons, and all the reasons previously asserted in this Court – including all the affidavit testimony and the evidence adduced during the deposition– Carpenter maintains he is entitled to federal habeas relief.   The Texas Court of Criminal Appeals' refusal to grant habeas relief in this case constitutes a decision that is "unreasonable determination" of the facts. As such, this Court need not provide any deference to these findings and may conduct *de novo* review of all of Carpenter's claims.   Under such review,   Carpenter asserts he has shown himself entitled to receive federal habeas review based on the ineffectiveness of his trial counsel and the prosecution's violation of *Brady v. Maryland*.

## PRAYER

For the foregoing reasons and the reasons set forth in Carpenter's initial briefing, Carpenter  respectfully requests that this Court GRANT his request for habeas relief in all respects or, in the alternative, GRANT his request for Oral Argument.

Respectfully submitted,


/s/Bruce Anton                    
BRUCE ANTON
State Bar No. 01274700

SORRELS UDASHEN &ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
(214) 468-8100
(214) 468-8104 (fax)
ba@sualaw.com

MARY MARGARET PENROSE
State Bar No. 00788179

Texas Wesleyan University
School of Law
1515 Commerce Street
Fort Worth, TX 76102
(972) 310-8669
(972) 943 3578 (fax)
mpenrose@law.txwes.edu

## <u>CERTIFICATE OF SERVICE</u>

I, Bruce Anton, hereby certify that a true and correct copy of the above and foregoing Petitioner's Supplemental Brief and Request for Oral Argument was mailed by United States Mail to, Assistant Attorney General, PO Box 12548, Capitol Station, Austin, TX 78711-2548, on this 29th day of May 2012.

/s/ Bruce Anton
BRUCE ANTON