IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID LYNN CARPENTER, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:02-CV-1145-B |
| | § | ECF |
| RICK THALER, | § | |
| Director, Texas Department of | § | **CAPITAL CASE** |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | **Referred to Mag. Judge Toliver** |
| Respondent. | § | |

**RESPONDENT'S SUR-REPLY TO PETITIONER'S THIRD AMENDED PETITION FOR A WRIT OF HABEAS CORPUS**

Pursuant to the Court's Scheduling Order, *see* ECF No. 117, Petitioner David Lynn Carpenter filed his third amended federal habeas petition. 3d Am. Pet., ECF No. 119. Respondent Rick Thaler (the Director) answered. Resp't's Answer 3d Am. Pet. ("Answer"), ECF Nos. 120–22. Carpenter's "Reply To Respondent's Answer And Supplemental Briefing and Request For Oral Argument" (Reply) followed. Pet'r's Reply Resp't's Answer, Supp. Br., & Mot. Oral Arg. ("Reply"), ECF No. 123. Therein, for the first time, Carpenter requests oral argument and an evidentiary hearing concerning the applicability of the Supreme Court's recent decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), to his procedurally defaulted federal habeas claims; seeks Court funding to further

develop his procedurally defaulted claims; advances a misguided reading of *Cullen v. Pinholster*, 131 S. Ct. 1388 (2012), and 28 U.S.C. § 2254; and seeks to amend his petition.

The Director files this sur-reply to register his opposition to Carpenter's request for oral argument and an evidentiary hearing regarding *Martinez*'s impact on his case; any grant of funding to further develop his procedurally defaulted and procedurally barred claims; and to amend his petition—yet again—at this late date. The Director moreover addresses Carpenter's misreading of *Pinholster* and § 2254, as well as various other incorrect assertions found throughout his Reply.[1]

I. **Carpenter's Emphasis On The Lack Of Physical Evidence Linking Him To Nelda Henin's Capital Murder Is Misplaced; Moreover, His Assertion Of "Undisputed Facts" And Representation That The Director Has Relied Entirely On An Assertion Of Procedural Bars As A Basis For Denying Federal Habeas Relief Are Inaccurate.**

   A. **Carpenter's emphasis on the lack of physical evidence is misplaced.**

Throughout his Reply, Carpenter repeatedly emphasizes that no physical evidence ties him to Nelda Henin's capital murder. Reply, 4–6, 8–9, 21, 29, 31, 33, 42. To the extent Carpenter is suggesting that the evidence was legally insufficient to sustain his conviction because the State presented no physical evidence connecting him to Henin's murder, he misapprehends the applicable

---

[1] In an effort to limit the length of this sur-reply, it is non-exhaustive.

law. *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) ("Because circumstantial evidence alone may sustain a conviction, physical evidence is not a prerequisite to sustaining a conviction.") (internal quotations and alterations omitted); *Peters v. Whitley*, 942 F.2d 937, 941 (5th Cir. 1991) (acknowledging that no physical evidence established that forced sexual intercourse had occurred and tests to determine the presence of seminal fluid or spermatoazoa were inconclusive, but rejecting the petitioner's argument that the evidence was insufficient to support his rape conviction; the victim's testimony and identifications of petitioner were sufficient).

Further, Carpenter's insistence that the State's case against him rested "solely on circumstantial evidence," Reply 31, is inaccurate. As Carpenter himself concedes, *see id.* at 9, three witnesses (at least) linked him to the crime: Evrin Smith, Mandee McBay, and Tessica Rainey. Smith testified that she hired Carpenter to kill Henin; that Carpenter agreed to commit the murder; when Smith had second thoughts and called off Henin's murder, he would not acquiesce because he needed the money; and within hours of Henin's death, told Smith that he had committed the murder and demanded payment. McBay testified that Carpenter told her before Henin's murder that Smith wanted him to kill Henin; that the morning of the murder, Carpenter confessed to her that he had cut Henin's throat; and that Carpenter had her clean blood from his buck

knife and tennis shoes. Rainey identified Carpenter in court as the man she saw fleeing the scene of Henin's murder. Of these three witnesses' trial testimony, only Rainey's, which placed Carpenter at the scene of the crime at the time of the murder, constitutes circumstantial evidence of his guilt. Smith's and McBay's testimony regarding Carpenter's two separate confessions clearly constituted *direct* evidence—not circumstantial evidence, as Carpenter erroneously characterizes it. *See id.* at 9, 29, 31, 62.

And to the extent Carpenter implies that circumstantial evidence is entitled to less weight than direct evidence or physical evidence, he again misapprehends the applicable law. Both Texas and federal courts afford direct and circumstantial evidence the same weight. *Holland v. United States*, 348 U.S. 121, 140 (1954); *Graham*, 622 F.3d at 448; *United States v. Stokes*, 471 F.2d 1318, 1321 (5th Cir. 1973); *Hankins v. State*, 646 S.W.2d 191, 198–99 (Tex. Crim. App. 1983).

Moreover, Carpenter's emphasis on the lack of physical evidence linking him to Henin's murder is disingenuous given his insistence that a third party actually committed the crime. As discussed above, Carpenter stresses the lack of physical evidence tying him to the crime as seemingly dispositive on the issue of guilt; his (erroneous) theory is apparently that if there is no physical evidence connecting him to Henin's murder, then he cannot possibly be guilty. Carpenter

4

then points to either Smith or Matthew Tolbert as the real killer in an effort to satisfy the actual innocence exception to the procedural bar (or to raise a noncognizable freestanding claim of actual innocence).

Carpenter, however, ignores the fact that no physical evidence links Smith or Tolbert to Henin's murder either. Carpenter's own logic thus undermines his attempt to establish actual innocence by alleging that someone else committed the murder; under Carpenter's theory, the lack of physical evidence linking either Smith nor Tolbert to Henin's murder necessarily means that neither one can possibly have committed the crime.[2] If neither one could have committed the crime, then the "new evidence" Carpenter offers regarding Smith and Tolbert—evidence which is incredible, incompetent, does not establish a link to Henin's murder, or all of the above—in an effort to demonstrate that he falls within the actual innocence exception is unavailing. The evidence does not present a picture of innocence so compelling that not even one rational juror could have found Carpenter guilty beyond a reasonable doubt. See *Schlup v.*

---

[2] In his petition, Carpenter appears to fault the State, or alternatively, trial counsel or state habeas counsel for not performing DNA testing on hairs found on Henin's body, to determine whether they belong to Tolbert. 3d Am. Pet. 69. As the Director noted in his Answer, Carpenter presently has and has had an available remedy in Chapter 64 of the Texas Code of Criminal Procedure, and no stay of federal habeas proceedings is necessary for him to pursue such DNA testing in state court. Answer, 70–71. It is also disingenuous of Carpenter to suggest that it was important to conduct DNA testing of the hairs found on Henin's body to ascertain whether they belong to Tolbert when Carpenter himself has not pursued such DNA testing through a state remedy available to him.

*Delo*, 513 U.S. 298, 329 (1995).

### B. Carpenter's assertion of "undisputed facts" is inaccurate.

In addition, Carpenter's assertion of "undisputed facts," Reply 8–10, is inaccurate in the following respects. Carpenter states that it is undisputed that "[a]nother individual has confessed to committing this murder." *Id.* at 9. To the extent Carpenter refers to either Smith's or Tolbert's putative confessions, which are the subject of Carpenter's first, fourth, and twelfth claims for federal habeas relief, *see* 3d Am. Pet. 62–71 (Claim I), 109–41 (Claims IV(A) & IV(B)), 280–84 (Claim XII), the Director entirely disputes this representation, for the reasons he has previously discussed at length, Answer, 34–84, 100–19, 205. The Director moreover disputes Carpenter's assertion that McBay "had severe mental illness and impairments . . . prior to and during [his] trial" and that McBay testified at her deposition that "the prosecutor knew [that McBay] required medication."[3] Reply 10; *see* Answer, 132–47.

### C. Carpenter's Representation, That The Director Has Improperly And Entirely Relied On Procedural Defenses As A Basis For Denying Federal Habeas Relief, Is Inaccurate.

Carpenter seems to imply that the Director has somehow acted improperly

---

[3] McBay testified that she told Kim Judin, the lead prosecutor, that she was "on medication." Even assuming that McBay's testimony is true in this respect—which Judin credibly disputes and, for the reasons detailed in Exhibit C to the Director's Answer and related briefing, *see* Answer, 140–42, is an extremely dubious proposition—being told that an individual is "on medication" is not equivalent to knowing that an individual "requires medication."

6

in raising procedural bar defenses. *See* Reply, 17–19. But any such suggestion is misplaced. The Director is entitled to raise procedural bar defenses and indeed, must do so in these proceedings or risk waiving them. *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999) ("A state waives a procedural bar defense by failing to raise the defense in the district court.").

Carpenter further appears to imply that the Director has relied entirely on procedural grounds as a basis for denying relief. But any such assertion is similarly misplaced. In each instance in which the Director has asserted a procedural bar to federal review of Carpenter's claims or argued that certain of his claims are not cognizable in federal habeas proceedings, he has also argued that the claims alternatively fail on the merits. *See* Answer 56–62 & 72–84 (Claim I), 95–100 (Claim III), 105–19 (Claims IV(A) & IV(B)), 132–47 (Claims V & VI), 151–66 (Claim VII), 187–90 (Claim VIII(D)), 205 (Claim XII).

II. **Carpenter's Reliance On *Martinez* To Overcome The Procedural Bar To Federal Review Of His Procedurally Defaulted Claims Is Unavailing; Moreover, In Attempting To Establish That State Habeas Counsel Rendered Ineffective Assistance, Carpenter Improperly Attempts To Shift His Burden Under *Strickland*[4] To The Director.**

   A. **Carpenter's reliance on *Martinez* is misplaced.**

In *Martinez,* the Supreme Court held that

> Where, *under state law*, claims of ineffective assistance of trial counsel *must be raised in an initial-review collateral proceeding*, a

---

[4]   *Strickland v. Washington*, 466 U.S. 668 (1984).

> procedural default will not bar a federal habeas court from hearing a substantial claim of *ineffective assistance at trial* if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

132 S. Ct. at 1320 (emphasis added). Its holding does not provide Carpenter with a means of overcoming the procedural bar to federal review of his procedurally defaulted claims.

    **1.   By its express language, *Martinez*'s holding only applies to procedurally defaulted ineffective assistance of trial counsel claims.**

*Martinez*'s narrow holding, set forth above, expressly applies only to procedurally defaulted ineffective assistance of trial counsel claims. 132 S. Ct. at 1320. Thus, even if the Court were to find that *Martinez* applies to Texas criminal convictions—which, for the reasons discussed at length in the Director's Answer, 49–53, it does not—*Martinez* cannot provide Carpenter with an avenue for showing "cause" for his state procedural default of: (1) Claim I, a record-based claim alleging that the trial court denied him due process when it applied a "higher standard or relevancy than is required for third-party perpetrator evidence," 3d Am. Pet. 69–70; (2) Claim III, a record-based claim alleging charge error at the punishment phase, *id.* at 92–109; (3) Claim V, a claim alleging prosecutorial error under *Brady*,[5] *id.* at 141–56; (4) Claim VI, Carpenter's thinly-veiled, freestanding actual innocence claim concerning Mandee McBay's mental

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

state, *id.* at 157–71; Claim VIII(D), another record-based claim of charge error at the punishment phase, *id.* at 246–48.

### 2. Carpenter's emphasis on alleged "practical" similarities between Texas and Arizona law regarding the litigation of ineffective assistance of trial counsel claims is misplaced.

*Martinez* only applies to states that—unlike Texas—"*require[]* a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding." 132 S. Ct. at 1320 (emphasis added). *Martinez*'s holding, by its express language, applies only to jurisdictions imposing categorical bars to the litigation of ineffective assistance of trial counsel claims earlier than collateral proceedings; it does not extend to jurisdictions in which it may be preferable, in defense counsel's estimation, to defer litigation of an ineffective assistance of trial counsel claim until collateral review. *Id.* As briefed at length in the Director's Answer, Texas law does not impose such a categorical restraint. Answer 50–53. And Texas defendants can and do raise ineffective assistance of trial counsel claims on direct appeal and receive adjudications on the merits. *See Holberg v. State*, No. 73,127, slip op. at *25–45 (Tex. Crim. App. Nov. 29, 2000) (appended to this sur-reply as Attachment A).

Carpenter's reliance on *Ex parte Torres*, 943 S.W.2d 469 (Tex. Crim. App. 1997), is also misplaced. The question before the CCA in that case was whether, regarding ineffective assistance of counsel claims, the CCA should create an

9

exception to the general rule that claims raised and rejected on direct appeal may not be relitigated in state habeas proceedings. *Torres*, 943 S.W.2d at 475. In *Torres*, although the CCA recognized certain difficulties in litigating some kinds of ineffective assistance of trial counsel claims earlier than state habeas proceedings, it did *not* hold that defendants challenging their criminal convictions may not do so in a motion for new trial or on direct appeal.

> **3. The burden of establishing both prongs of *Strickland*'s test for ineffective assistance of counsel is and always remains on Carpenter.**

Even if this Court were to determine that *Martinez* affords Carpenter an avenue for establishing cause for procedurally defaulting his claims, he still cannot evade the procedural bar to federal review. If *Martinez* applies, its holding would nonetheless require Carpenter to demonstrate that his state habeas counsel was actually ineffective under the *Strickland* standard as a prerequisite to establishing cause for his procedural default. 132 S. Ct. at 1318–19. This Carpenter cannot do.

In his Reply, in an effort to show cause under the cause-and-prejudice test, Carpenter attempts to establish that state habeas counsel rendered ineffective assistance by not raising his procedurally defaulted claims in his initial state writ application. *See* Reply 23–35. As part of that effort, Carpenter suggests that it is incumbent upon the Director to prove that state habeas counsel and trial

counsel did *not* perform deficiently and that the alleged deficient performance did *not* prejudice him. *Id.* at 26–28. But this suggestion, if followed, would turn *Strickland* on its head, because it would impermissibly shift Carpenter's burden to the Director. Under *Strickland*, which strongly presumes that counsel's representation fell within reasonable professional norms, the burden always remains on the petitioner to affirmatively prove both deficient performance and prejudice. *Harrington v. Richter*, 131 S. Ct. 770, 787(2011) (stating that to prevail under *Strickland*, the *petitioner* must establish both that counsel's performance was constitutionally deficient and that the deficiency prejudiced his defense).

III. **Carpenter's Reading Of Pinholster And 28 U.S.C. § 2254 Is Erroneous.**

The Director understands Carpenter, relying on *Pinholster*, to contend that the Court must first apply 28 U.S.C. § 2254(a) to determine whether a constitutional violation occurred. Only after making that determination, Carpenter asserts, may the Court apply §2254(d).

But Carpenter's reliance on *Pinholster* is misplaced. *Pinholster* clarifies that § 2254(a) represents a jurisdictional requirement:

> As amended by AEDPA, 28 U.S.C. § 2254 . . . limits . . . the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. *Section 2254(a) permits a federal court to entertain only those applications alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."*

11

131 S. Ct. at 1398 (emphasis added). Subsection (a)'s inquiry is merely whether the applicant alleges a violation of federal law—not whether the applicant actually establishes the violation he asserts. *See id.*

To the extent Carpenter additionally argues that section 2254(e)(1) cannot apply to claims seeking relief under section 2254(d)(2), he is incorrect. *Pinholster* states that both subsections (d)(1) and (d)(2) are limited to the record before the state court. 131 S. Ct. at 1400. Thus, any attempt to interpret subsection (e)(1) by distinguishing between (d)(1) and (d)(2) by arguing that one applies to the state court record (i.e., (d)(2)) and the other does not (i.e., (d)(1)) cannot stand.

IV. **Carpenter's Request For Oral Argument Or An Evidentiary Hearing Or Both Regarding *Martinez*'s Applicability To His Procedurally Defaulted Claims Lacks Merit And Should Be Denied; His Requests To Amend His Petition Yet Again And For Court Funding To Develop His Procedurally Defaulted, Procedurally Barred, and Meritless Claims Likwise Lack Merit And Should Be Denied.**

  A. **Because they possess no merit, the Court should deny Carpenter's requests for oral argument and an evidentiary hearing regarding *Martinez*'s applicability to his claims.**

To the extent Carpenter asks the Court to grant oral argument "to allow him to properly develop the record in this case," Reply 3–4, his request misapprehends the purpose of oral argument, which is to advocate the parties' legal positions and not to develop the record, which concerns facts. Further, Carpenter has not shown, nor can he, that the parties's briefing is inadequate to apprise the Court of their respective positions and the legal authorities

supporting them. The Supreme Court routinely releases new decisions; the fact that *Martinez* is recently released is not sufficient by itself to justify the expenditure of resources that attend oral argument. In short, to the extent Carpenter request oral argument, the request is meritless and would lead to an inefficient use of judicial resources. The Court should therefore deny the request.

To the extent Carpenter requests an "oral evidentiary hearing," his request is also without merit and should be denied. Carpenter proposes to call defense attorneys to testify about the alleged practical difficulties they face in litigating ineffective assistance of counsel claims before state habeas proceedings. Reply 10–11, 22. Initially, it is not apparent what persuasive value such testimony would hold. The witnesses in question, as defense attorneys, would necessarily have a great professional stake in an outcome of any decision regarding *Martinez*'s applicability to jurisdictions such as Texas. No matter how unintentionally or unconsciously done, the temptation to exaggerate their testimony in Carpenter's favor would render it less than credible. Further, the legal value of such testimony would be nil, as it is Texas courts, rather than Texas defense attorneys, who decide what the law in Texas is. As discussed in the Director's Answer and Part II(A)(2), *supra*, of this sur-reply, the CCA does not bar defendants from raising and litigating ineffective assistance of trial counsel claims before state habeas proceedings, and in fact, Texas law provides

13

two avenues for doing so, a motion for new trial and direct appeal. Moreover, *Martinez* itself makes no exception for jurisdictions in which litigants encounter some practical difficulties in litigating ineffective assistance of trial counsel claims before state habeas proceedings. *Martinez*'s holding is limited only to jurisdictions that, unlike Texas, categorically bar defendants from raising such claims before state habeas proceedings. For these reasons, an evidentiary hearing as Carpenter proposes would lead to an inefficient use of the Court's resources and should be denied.

> B. **Because they have no merit, the Court should deny Carpenter's requests to amend his petition and for funding to develop his procedurally defaulted, procedurally barred, and meritless claims.**

Carpenter seeks the Court's leave to amend aspects of Claim VII of his petition. *See* Reply 28–29, 34–35, 48. But as discussed below, the ground on which he seeks leave to amend lacks merit.

Carpenter specifically wishes to amend his allegation that trial counsel rendered ineffective assistance by failing to investigate and present mitigating evidence and expert opinion on his future dangerousness, namely the report of Dr. Kessner. *Id.* at 23, 26. He also wishes to amend his allegation that trial counsel rendered ineffective assistance because he did not manage to introduce evidence of a third-party perpetrator, Matthew Tolbert. *Id.* at 34–35.

Regarding the mitigation issue, Carpenter appears to seek amendment of

14

his petition so that he can present Dr. Kessner's report or affidavits from witnesses who state that they were available to testify on his behalf; raise new, identified claims of ineffective assistance by trial counsel; or both. *Id.* at 28. Regarding the third-party perpetrator issue, Carpenter apparently wishes to amend his petition so that he may offer the affidavit summarizing the result of his December 2002 Freedom of Information Act (FOIA) request to the Dallas Police Department. *Id.* at 32–33. Regarding both allegations, he asserts that "[b]ut for [the Director's] prior claims of procedural default, Carpenter would have already presented these claims to this Court for proper consideration. *Id.* at 29, *see also id.* at 34–35.

But Carpenter has already offered Kessner's report in support of his claim, as well as various affidavits from witnesses who contend they were available to testify at trial. He had also already offered the results of his FOIA request. There is no need for Carpenter to amend his petition to offer evidence that he has already presented. Rather, the issue before the Court is whether it may consider the aforementioned evidence if it reaches the merits of his underlying claims. And as to any new claims of ineffectiveness by trial counsel, Carpenter's contention—that the Director's assertion of procedural defenses is somehow to blame for his failure to raise the claims before now—is baseless. The Director's assertion of procedural defenses has no bearing on what particular claims

15

Carpenter chooses to plead and how he chooses to plead them. The Director's assertion of procedural defenses in fact depends on Carpenter's pleadings—not the other way around.

Carpenter's request for Court funding to develop evidence in support of his claims similarly lacks merit. Regarding Carpenter's claims that the state courts adjudicated on the merits, *Pinholster* limits the Court's evaluation of the reasonableness of the adjudication to the record that was before the state court. 131 S. Ct. at 1398. Concerning Carpenter's procedurally defaulted claims, for the reasons discussed at length in the Director's Answer, the claims are procedurally barred from federal review, and in addition, lack merit. It would therefore constitute an abuse of discretion to grant Carpenter additional funding to develop them further.

## CONCLUSION

For the reasons discussed in the Director's Answer and this sur-reply, the Court should deny Carpenter federal habeas relief in all things.

    Respectfully submitted,

    GREG ABBOTT
    Attorney General of Texas

    DANIEL T. HODGE
    First Assistant Attorney General

    DON CLEMMER
    Deputy Attorney General

|  |  |
|---|---|
|  | for Criminal Justice |
|  | EDWARD L. MARSHALL<br>Chief, Postconviction Litigation Division |
| *Lead Counsel | s/ Leslie K. Kuykendall<br>LESLIE K. KUYKENDALL*<br>Assistant Attorney General<br>Texas State Bar No. 24029673 |
|  | P. O. Box 12548, Capitol Station<br>Austin, Texas 78711<br>(512) 936-1400<br>(512) 320-8132 (FAX)<br>ATTORNEYS FOR RESPONDENT |

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2012, I electronically filed the foregoing sur-reply (as an attachment to a motion seeking the Court's leave to file it) with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorneys of record, who consented in writing to accept this Notice as service of this document by electronic means:

Mr. Bruce Anton
Sorrels Udashen & Anton
2301 Cedar Springs Rd., Suite 250
Dallas, TX 7520
ba@sualaw

and

Ms. Mary Margaret Penrose
Texas Weslyan School of Law
1515 Commerce St.
Fort Worth, TX 76102
mpenrose@law.txwes.edu

                                                s/ Leslie K. Kuykendall
                                                LESLIE K. KUYKENDALL
                                                Assistant Attorney General